## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SARA WEXLER, on behalf of herself and all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 1:06 CV 01917 |
| v. ) ) | Judge Gladys Kessler |
| UNITED AIR LINES, INC. (a Delaware Corporation), and UAL Corporation (a Delaware Corporation), ) ) ) ) ) | |
| Defendants. ) | |

## DEFENDANTS UNITED AIR LINES, INC. AND UAL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Defendants, United Air Lines, Inc., and UAL Corporation (collectively "UAL"), by and through their attorneys, hereby move the Court to dismiss plaintiff's Complaint and the relief sought therein pursuant to Fed. R. Civ. P. 12(b)(6). In support of its Motion, UAL offers its Memorandum of Points and Authorities In Support of Motion to Dismiss and states as follows:

(1)     Plaintiff brings claims on behalf of herself and a nationwide class. On June 19, 2006, plaintiff purchased a $283.09 nonrefundable, coach-class ticket on the Orbitz web site for a round trip on UAL departing from Dulles and arriving in Chicago on July 21, 2006, and returning on July 23, 2006. (Compl., ¶ 15). Plaintiff skipped the first leg and took alternative transport to Chicago, but she did not cancel her ticketed flight, reschedule, or otherwise notify UAL. (Id., ¶ 16). Because plaintiff failed to check in or occupy her reserved space, UAL cancelled her entire reservation and itinerary and resold her ticket. (Id., ¶¶ 17-18). Plaintiff

alleges that she purchased a second full-fare ticket for $917 at the Chicago airport because her reservation and original nonrefundable ticket had no value.  (Id., ¶¶ 15-19).

(2)      Based on these facts, plaintiff asserts five Counts:  (1) violation of the District of Columbia Consumer Protection Procedures Act ("DC Consumer Act") (id., ¶¶ 20-29); (2) fraud (id., ¶¶ 30-34); (3) negligent misrepresentation (id., ¶¶ 35-38); (4) breach of contract (id., ¶¶ 39-42); and (5) quasi-contract/unjust enrichment (id., ¶¶ 43-48).

(3)      Plaintiff seeks, on behalf of herself and a nationwide class, a full refund of all money collected by UAL due to its cancellation policy; compensatory damages; statutory damages (including treble damages); injunctive and declaratory relief; punitive damages; and attorneys' fees.  (Id., ¶¶ 28, 48 and Wherefore Clause).

## LEGAL STANDARD

(4)      In considering a motion to dismiss for failure to state a claim, the Court must treat all the Complaint's allegations as true and construe them in the light most favorable to plaintiff. Nix v. Hoke, 62 F. Supp. 2d 110, 113-14 (D.D.C. 1999).  The Court need not, however, accept "legal conclusions cast in the form of factual allegations."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Dismissal is proper only if it "appears beyond a doubt that the plaintiffs can prove no set of facts in support of his claim that would entitle him to relief."  Weiss v. El Al Israel Airlines, Ltd., 433 F. Supp. 2d 361, 364 (S.D.N.Y. 2006).  Plaintiff fails to state a claim upon which relief can be granted, because Section 105 of the Airline Deregulation Act of 1978 (the "ADA"), 49 U.S.C. § 41713(b)(1), preempts her claims.

## PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS PREEMPTED UNDER THE ADA.

(5)      Section 105 of the ADA provides as follows:

[A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law <u>related to a price, route, or service</u> of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). When Congress deregulated the airline industry, it included this provision so that "[s]tates would not undo federal deregulation with regulation of their own." <u>Morales v. Trans World Airlines</u>, 504 U.S. 374, 378 (1992). Under the ADA, a claim is expressly preempted if (1) it derives from an enactment or enforcement of state law; and (2) it "relates to" airline ticket prices, routes, or services. <u>See</u> 49 U.S. § 41713(b)(1); <u>Am. Airlines, Inc. v. Wolens</u>, 513 U.S. 219, 226 (1995); <u>Morales</u>, 504 U.S at 383-4. The ADA should be applied broadly in favor of preemption. <u>See Morales</u>, 504 U.S. at 383 (The words of the preemption provision "express a broad pre-emptive purpose.").

(6)     Each of plaintiff's causes of actions derive from state statutory or common law. Thus, plaintiff seeks to enact and enforce state law claims.

(7)     Moreover, each of plaintiff's claims relates to "prices" and "services" under the ADA. "Fares" are prices, so a claim seeking a refund of ticket charges relates to prices. <u>See Wolens</u>, 513 U.S. at 226 (stating that regulation of "charges" is preempted); <u>Statland v. Am. Airlines, Inc.</u>, 998 F.2d 539, 541-42 (7th Cir. 1993) ("[C]anceled ticket refunds relate to rates.").

(8)     Plaintiff attempts to apply the DC Consumer Act and common law to UAL's alleged "false advertising" and "extensive marketing scheme." (Compl., ¶¶ 22, 23). The Supreme Court has held that such claims relate to "prices." <u>See Wolens</u>, 513 U.S. at 228 (claim based on Illinois consumer fraud statute preempted by ADA); <u>Morales</u>, 504 U.S. at 378, 383, 386-90 (attempt to apply state's general consumer protection statute to airline advertising preempted by ADA).

(9)    Plaintiff's allegations and claims also unequivocally relate to "services." Plaintiff alleges that UAL "contracted to provide airplane flights and services to Plaintiff." (Compl., ¶ 40) (emphasis added). She makes allegations regarding her "reservation" and her inability to "check-in," and she alleges that her "coach-class ticket" was resold and her flight was "cancelled" or "effectively eliminated." (Id., ¶¶ 9, 17, 18 and 41). The Supreme Court has ruled that "access to flights" relates to "services." Wolens, 513 U.S. at 226. The Fifth Circuit's commonly-cited definition of "services," which this Court adopted, also clearly encompasses plaintiff's claims: "services" include "ticketing [and] boarding procedures . . . in addition to the transportation itself." Cruz v. Am. Airlines, Inc., No. 96-CV-2817, 1997 WL 33441909, at *11 (quoting Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995)). Federal and state courts have held uniformly that the ADA preempts, as related to "services," claims similar to those asserted here. See, e.g., Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998) (an airline's refusal to allow a passenger to board and boarding procedures "undoubtedly" relate to an airline's service). Accordingly, each of the Counts of plaintiff's Complaint are preempted and should be dismissed with prejudice.

**WHEREFORE**, for the reasons stated herein and in the accompanying Memorandum of Points and Authorities, Defendants United Air Lines, Inc., and UAL Corporation respectfully move that this Court dismiss with prejudice the claims and requested relief in the Complaint in their entirety for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Edward S. Scheideman (D.C. Bar No. 475128)
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
(202) 861-3900
(202) 223-2085 (fax)

Counsel for Defendants United Air Lines, Inc.
and UAL Corporation

Of Counsel:

Lawrence A. Wojcik (not yet admitted pro hac vice)
Raj N. Shah (not yet admitted pro hac vice)
DLA Piper US LLP
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293
(312) 368-4000
(312) 236- 7516 (fax)

## REQUEST FOR ORAL HEARING

Defendants hereby request an oral hearing on Defendants' Motion to Dismiss pursuant to

Local Civil Rule 7(f).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA WEXLER, on behalf of herself and all others similarly situated, )<br><br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED AIR LINES, INC. (a Delaware Corporation), and UAL Corporation (a Delaware Corporation), )<br>)<br>)<br>)<br>Defendants. )<br>) | Case No. 1:06 CV 01917<br><br>Judge Gladys Kessler |

## DEFENDANTS UNITED AIR LINES, INC. AND UAL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

THE COMPLAINT ............................................................................................ 2

ARGUMENT ..................................................................................................... 4

I.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE AIRLINE
      DEREGULATION ACT OF 1978 ............................................................ 4

      A.  Plaintiff's Claims Constitute An Enactment or Enforcement of State Law ... 5

      B.  Plaintiff's Claims Relate to Prices and Services Under the ADA ................. 5

          1.  Plaintiff's state law claims are related to "price" under the ADA ............. 6

              a.  State law claims seeking refunds of fares are preempted ...................... 7

              b.  State law claims challenging or regulating UAL's advertising relate
                  to price and are preempted ................................................................ 8

          2.  Plaintiff's state law claims are related to a "service" under the ADA ....... 9

      C.  Counts I-V of Plaintiff's Complaint Are Preempted ................................... 11

          1.  Count I for violation of the DC Consumer Act is preempted ................. 11

          2.  Counts II, III, IV and V under D.C. common law are preempted ........... 12

CONCLUSION .................................................................................................. 16

ORDER ............................................................................................................. 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

\* Am. Airlines, Inc. v. Wolens, 513 U.S. 219 (1995) ......................................passim

Breitling U.S.A., Inc. v. Fed. Express Corp., 45 F. Supp. 2d 179 (D. Conn. 1999).....................13

Chukwu v. Board of Directors British Airways, 889 F. Supp. 12 (D. Mass. 1995).....................10

\* Cruz v. Am. Airlines, Inc., No. 96-CV-2817, 1997 WL 33441909
    (D.D.C. Oct. 24, 1997) ......................................................................9, 11

Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc., 972 F. Supp. 665
    (N.D. Ga. 1997) ...........................................................................14, 16

Dugan v. FedEx Corp., No. CV 02-1234-JFWFMOX, 2002 WL 31305208
    (C.D. Cal. Sept. 27, 2002) ...............................................................13, 16

Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir. 1995) (en banc) ................4, 6, 10

In re Northwest Airlines Privacy Litig., No. Civ. 04-126 (PAM/JSM),
    2004 WL 1278459 (D. Minn. June 06, 2004) .........................................13

Lehman v. USAIR Group, Inc., 930 F. Supp. 912 (S.D.N.Y. 1996)............................16

\* Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992) ..........................4, 5, 6, 9, 11, 15

Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244 (6th Cir. 1996) ................13

Nazarian v. Compagnie Nationale Air France, 989 F. Supp. 504 (S.D.N.Y 1998).....................10

Northwest Airlines, Inc. v. Duncan, 531 U.S. 1058 (2000) (denial of cert.)
    (O'Connor, J., dissenting).................................................................11

O'Callaghan v. AMR Corp., No. 04 C 4005, 2005 WL 1498870 (N.D. Ill. June 8, 2005) ...........13

Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391 (S.D.N.Y. 2004)..............................10

Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922 (5th Cir. 1997)..............................12

\* Smith v. Comair, Inc., 134 F.3d 254 (4th Cir. 1998) ......................................10, 15

Somes v. United Airlines, Inc., 33 F. Supp. 2d 78 (D. Mass. 1999) ..............................11

\* Statland v. Am. Airlines, Inc., 998 F.2d 539 (7th Cir. 1993) ......................7, 8, 10, 12

Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423
    (7th Cir. 1996) ...........................................................................14

United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605 (7th Cir. 2000)..........................13

Wagman v. Fed. Express Corp., No. 94-1422, 1995 WL 81686, 47 F.3d 1166 (table)
    (4th Cir. Feb. 17, 1995) ...................................................................12

Weber v. U.S. Airways, Inc., 11 Fed. Appx. 56 (4th Cir. 2001) .................................13

Witty v. Delta Air Lines, Inc., 366 F.3d 380 (5th Cir. 2004) ....................................4, 6

## STATE CASES

Blackner v. Continental Airlines, Inc., 709 A.2d 258 (N.J. Super. Ct. App. Div. 1998)................8

Boon Ins. Agency, Inc. v. Am. Airlines, Inc., 17 S.W.3d 52 (Tex. App. 2000) ...................4, 7, 8

Delta Air Lines, Inc. v. Black, 116 S.W.3d 745 (Tex. 2003)....................................12, 13, 14, 15

El-Menshawy v. Egypt Air, 647 A.2d 491 (N.J. Super. Ct. Law Div. 1994)............................11

Howell v. Alaska Airlines, Inc., 994 P.2d 901 (Wash. Ct. App. 2000).............................8, 16

Leonard v. Northwest Airlines, Inc., 605 N.W.2d 425 (Minn. Ct. App. 2000).......................8, 15

Odoemene v. World Airways, Inc., Nos. SC-622-04, SC-561-04, 2005 WL 2994129
    (N.J. Super. Ct. App. Div. Nov. 9, 2005) ...............................................11

Strategic Risk Mgmt., Inc. v. Fed. Express Corp., 253 A.D.2d 167
   (N.Y. App. Div. 1999)........................................................................12
Vail v. Pan Am Corp., 616 A.2d 523 (N.J. Super. Ct. App. Div. 1992) .........................8, 9, 10, 13

**FEDERAL STATUTES**
49 U.S.C. § 41713 (§ 105 of the Airline Deregulation Act of 1978) .....................................passim
Pub. L. 103-272, § 1(a), 108 Stat. 745...................................................................4
Pub. L. No, 95-504, 92 Stat. 1705 ........................................................................4

**STATE STATUTES**
D.C. Code § 28-3901 ......................................................................................12
815 Ill. Comp. Stat. 505/2.................................................................................12

**OTHER AUTHORITIES**
14 C.F.R. § 253.1.......................................................................................15, 16
14 C.F.R. §§ 253.4, 253.6, 253.7, 253.8.................................................................15
Notice of Department of Transportation Office of Aviation Enforcement and Proceedings
   Regarding Disclosure of Additional Fees, Charges and Restrictions on Air Fares in
   Advertisements, Including "Free" Airfares, September 4, 2003 ................................15
Spirit Airlines Inc. Violations of 49 U.S.C. § 41712 and 14 C.F.R. 399.84,
   Order 2003-12-26, 2003 DOT Av. LEXIS 1107 (Dec. 30, 2003)...........................................15

\* indicates cases on which defendants chiefly rely

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARA WEXLER, on behalf of herself and all others similarly situated, | ) ) ) ) | Case No. 1:06 CV 01917 |
| Plaintiffs, | ) ) | Judge Gladys Kessler |
| v. | ) ) |  |
| UNITED AIR LINES, INC. (a Delaware Corporation), and UAL Corporation (a Delaware Corporation), | ) ) ) ) |  |
| Defendants. | ) ) ) |  |

## DEFENDANTS UNITED AIR LINES, INC. AND UAL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Defendants United Air Lines, Inc. and UAL Corporation (collectively referred to as "UAL") operate one of the largest commercial passenger airline services in the United States. As a commercial airline, UAL was and remains subject to the Airline Deregulation Act of 1978 ("ADA"). That act and a preemption provision contained therein (49 U.S.C. § 41713 et seq.) preempt all private claims if they seek to enforce state statutes, regulations or common law related to a "price, route, or service" of an airline. The Motion to Dismiss and this supporting Memorandum demonstrate that federal preemption doctrine under the ADA preempts all of plaintiff's claims.

Taking the facts as alleged in the Complaint, plaintiff, Sara Wexler, purchased a nonrefundable, restricted, coach-class fare from the Orbitz web site to fly a round trip on UAL from Dulles International Airport ("Dulles") located in Virginia to Chicago O'Hare International

Airport, and later back to Dulles. Plaintiff admittedly skipped the first leg of her flight without notifying UAL prior to her departure, but now she complains that UAL negligently, fraudulently, and falsely applied a policy canceling the remaining portion of her nonrefundable fare, ticket and itinerary thereby preventing her from boarding the return UAL flight to Dulles. She seeks a refund of the price she paid for her first ticket and the $917 she paid for a second ticket, as well as penalties, punitive damages, attorneys' fees, and injunctive and declaratory relief.[1]

The basis for this motion is simple—the Supreme Court has held that any claims seeking to enforce state laws that are "related to" airlines' "prices, routes or services" are preempted by the ADA. Relying on Supreme Court precedent, federal and state courts consistently have preempted, inter alia, the following types of claims or requested relief, which are applicable here:

- Challenges to fares, restrictions or penalties of nonrefundable fares;

- Requests for refund of any portion of a fare;

- Consumer Protection Act claims seeking to regulate airline "advertising";

- Challenges to provision of "services," including challenges to a refusal to board or transport, ticketing, reservations, or check-in; and

- Common law claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment.

## THE COMPLAINT

The facts giving rise to this action as alleged are quite straightforward and are assumed true for purposes of this motion. On June 19, 2006, plaintiff purchased a $283.09 nonrefundable, coach-class ticket on the Orbitz web site to fly a round trip on UAL departing from Dulles and arriving in Chicago on July 21, 2006, and returning on July 23, 2006. (Compl., ¶ 15). Prior to

---

[1]    This action was filed on October 20, 2006 in the Superior Court of the District of Columbia, Civil Division, Case No. 0007789-06 and was removed to this Court on November 9, 2006.

her scheduled departure time on July 21, 2006, plaintiff decided to skip the first leg of her flight without canceling her ticketed flight or otherwise notifying UAL to reschedule. (Id., ¶ 16). Plaintiff used alternative transport to Chicago. (Id.) Her failure to occupy her reserved space and to timely check in for the first leg of her flight led to the cancellation of her entire reservation and itinerary without refund and the resale of her ticket. (Id., ¶¶ 17-18). Upon attempting to then board the return leg of her original itinerary, plaintiff alleges that she was forced to purchase a second full-fare ticket for $917 at the airport because of the cancellation and because her reservation and her original nonrefundable ticket had no value. (Id., ¶¶ 17-19).

The foregoing facts are the genesis of each of plaintiff's claims. Count I is brought pursuant to the District of Columbia Consumer Protection Procedures Act ("DC Consumer Act"). Plaintiff asserts UAL "engaged in false advertising" as part of an "extensive marketing scheme" that has had a "broad impact" on airline passengers and resulted in UAL collecting "substantial fares." (Compl., ¶¶ 20-29). In Count II for fraud, plaintiff asserts that UAL concealed its cancellation policy (id., ¶¶ 30-34), and in Count III (negligent misrepresentation), plaintiff alleges that UAL negligently failed to disclose its cancellation policy (id., ¶¶ 35-38). In Count IV, plaintiff alleges that UAL breached its contract "to provide airplane flights and services" by "eliminat[ing] paying passengers' flights without notice." (Id. ¶¶ 39-42) (emphasis added). Finally, in Count V, plaintiff makes a claim for "quasi-contract/unjust enrichment." (Id., ¶¶ 43-48). Based on these claims, plaintiff seeks, on behalf of herself and a nationwide class, a refund of all money collected by UAL from the cancellation policy; compensatory damages; statutory damages (including treble damages); injunctive relief; punitive damages; and attorneys' fees. (Id., ¶¶ 28, 48, Wherefore Clause).

3

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE AIRLINE DEREGULATION ACT OF 1978.

The claims and relief asserted in plaintiff's complaint are preempted by Section 105 of

the ADA, 49 U.S.C. § 41713(b)(1), and therefore should he dismissed.  The ADA deregulated

the airline industry by eliminating most federal regulation of airline prices, routes, and services.

As the Supreme Court has recognized, Congress – in deregulating the airline industry – enacted

the ADA preemption provision so that "[s]tates would not undo federal deregulation with

regulation of their own . . . ."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992).

ADA deregulation and preemption were designed to allow the airline industry to be subject only

to the pressures of a competitive marketplace.  Id.; see also Hodges v. Delta Airlines, Inc., 44

F.3d 334, 335 (5th Cir. 1995) (en banc) ("Congress enacted the ADA to . . . prevent the states

from frustrating the goals of deregulation by establishing or maintaining economic regulations of

their own . . . .").  Another policy behind preemption was to avoid potential conflicts and

inconsistent regulations of the airline industry by different states.  Boon Ins. Agency, Inc. v. Am.

Airlines, Inc., 17 S.W.3d 52, 58 (Tex. App. 2000) (ADA was enacted to "eliminate the

possibility of any conflicting state regulation") (internal citations omitted).

Accordingly, Section 105 of the ADA provides as follows:

> [A] State, political subdivision of a State, or political authority of at least 2 States
> may not enact or enforce a law, regulation, or other provision having the force and
> effect of law related to a price, route, or service of an air carrier that may provide
> air transportation under this subpart.[2]

---

[2]    The original version of the preemption provision in Section 105 read: "[N]o state . . . shall enact or enforce
any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or
services of any kind."  Pub. L. No, 95-504, 92 Stat. 1705 (1978).  When Congress reenacted U.S.C. Title 49 in 1994,
it made several minor alterations to the wording of the preemption provision, now codified at 49 U.S.C.A. § 41713.
Congress intended this amendment to make no substantive change.  Pub. L. 103-272, § 1(a), 108 Stat. 745; see Am.
Airlines, Inc. v. Wolens, 513 U.S. 219, 223 n.1 (1995) ("Congress intended the revision to make no substantive
change.").  The preemption provision was recodified and the language changed slightly in 1994 and 1997, but the
changes were not substantive.  Witty v. Delta Air Lines, Inc., 366 F.3d 380, 382 n.1 (5th Cir. 2004).

49 U.S.C. § 41713(b)(1) (emphasis added).

Under the ADA, a claim is expressly preempted if (1) it derives from an enactment or enforcement of state law; and (2) it "relates to" airline ticket prices, routes, or services. See 49 U.S.C. § 41713(b)(1); Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 226 (1995); Morales, 504 U.S at 383-84. The Supreme Court instructs that the ADA be applied broadly in favor of preemption. See Morales, 504 U.S. at 383 (The words of the preemption provision "express a broad pre-emptive purpose.").

A.    **Plaintiff's Claims Constitute An Enactment or Enforcement of State Law.**

Under the ADA, the District of Columbia is expressly classified as a State for purposes of preemption. 49 U.S.C. § 41713(a). As set forth below, Count I is brought under the DC Consumer Act and thus derives from state law. Count I is substantially identical to the state consumer protection law claim that the United States Supreme Court held preempted in Wolens, 513 U.S. at 228. The remaining Counts are attempts to enforce state common-law principles. Courts throughout the country have preempted common-law claims for fraud, negligent misrepresentation, breach of contract, and unjust enrichment similar to those set forth in Counts II, III, IV, and V. As demonstrated below, state statutory and common law claims similar to those raised by plaintiff repeatedly have been preempted when they relate to any of the prohibited elements under § 41713: UAL's prices, routes, and services.

B.    **Plaintiff's Claims Relate to Prices and Services Under the ADA.**

The Supreme Court has recognized that Congress intended the ADA's "related to" preemption language to be construed very expansively. Morales, 504 U.S. at 383 (the "key phrase" is "relat[ed] to."). "The ordinary meaning of these words is a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or

connection with,' . . . – and the words thus express a broad pre-emptive purpose." Id. (quoting

BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)). In Morales, the Court concluded that "[s]tate

enforcement actions having a connection with or reference to airline 'rates, routes or services'

are pre-empted. . ." Id. at 384 (emphasis added).

The Supreme Court also has instructed that laws of general applicability – like those at

issue here – are preempted when they have the prohibited effect. Id. at 386 (specifically

rejecting the notion that only "state laws specifically addressed to the airline industry are pre-

empted, whereas the ADA imposes no constraints on laws of general applicability."). State laws

are preempted whenever the federal deregulatory scheme is "[a]ffected by the particularized

application of a general statute." Id.[3] Simply put, under the ADA, state law claims are

preempted if they relate either to airline services or prices. Plaintiff's claims are related to both.

> 1.    Plaintiff's state law claims are related to "price" under the ADA.

Plaintiff's claims are preempted because they are "related to" airline ticket "price[s]." In

Witty v. Delta Air Lines, Inc., 366 F.3d 380 (5th Cir. 2004), the Fifth Circuit held that a personal

injury claim against an airline "relat[ed] to a price" insofar as it was premised on a claim that the

airline should have provided more leg room between seats, was preempted because such a

requirement would have a significant effect on prices. Id. at 383. The Court explained that the

ADA "not only preempts the direct regulation of prices by states, but also preempts indirect

regulation 'relating to' prices that have 'the forbidden significant effect' on such prices." Id.

(citing Morales, 504 U.S. at 385, 388).

Plaintiff's claims would have a similar prohibited economic impact on airline pricing. By

her own admission, plaintiff purchased a restricted coach-class fare, and then purchased a higher-

---

[3]    See, e.g., Hodges, 44 F.3d at 336 ("Laws of general applicability, even those consistent with federal law, are preempted if they have the 'forbidden significant effect' on rates, routes or services.") (internal citation omitted).

fare first class ticket because she failed to comply with the terms of her lower fare. (Compl., ¶¶ 16, 18). If the class is allowed to circumvent the restrictions of lower fares and get refunds of fares, pricing would be impacted. "An economy class ticket is available for a lower price because it is subject to conditions that a full-price, fully refundable ticket is not, including fees associated with changing the terms of travel." Boon, 17 S.W.3d at 55. Plaintiff's claims thus relate to pricing and are preempted.

### a.    State law claims seeking refunds of fares are preempted.

This dispute and the request for refund unquestionably relate to price and are thus preempted. The "cancellation policy" repeatedly challenged in the Complaint relates to fare conditions and restrictions associated with plaintiff's purchase of a nonrefundable ticket. (Compl., ¶¶ 17-18). Plaintiff failed to travel as ticketed, thereby subjecting herself to the nonrefundable fare restrictions that apply when a passenger fails to notify UAL of a cancellation prior to the passenger's scheduled departure. (Id., ¶¶ 15-16). Plaintiff's nonrefundable fare had no value and, accordingly, she received no refund. She now asks the Court to order UAL to refund fares on behalf of the class. (Id., ¶¶ 18, 28(e), 48 and Wherefore Clause (iii)).

The charge for a ticket is obviously a price. See Wolens, 513 U.S. at 226 (stating that regulation of "charges" falls under the preemption provision). Correspondingly, a claim seeking refund of charges for a ticket also relate to price. Statland v. Am. Airlines, Inc., 998 F.2d 539, 541-42 (7th Cir. 1993) ("We think it obvious that canceled ticket refunds relate to rates."). In Statland, plaintiff, on behalf of thousands of consumers, sought refunds recovering 10% withholding taxes that the airline kept when tickets were canceled. According to the plaintiff, this 10% withholding policy gave rise to state statutory and common law causes of action. Id. On appeal, the Seventh Circuit Court of Appeals affirmed the district court's finding that each of

the claims was preempted under the ADA because they related to rates. Id. Like the Seventh

Circuit in Statland, other courts repeatedly have held that purported class actions based on state

law claims seeking any refund or otherwise challenging fare terms and conditions are preempted

because they relate to "price." See Boon, 17 S.W.3d at 55-58 (purported class action—state law

claims challenging "potential forfeiture of the full ticket price and the reissue fee imposed upon a

passenger who fails to travel according to the ticket's terms" are related to price and preempted);

Howell v. Alaska Airlines, Inc., 994 P.2d 901, 905 (Wash. Ct. App. 2000) (purported class

action--"we conclude that the appellants' challenge to Alaska's refusal to refund the price of a

nonrefundable ticket is preempted by the ADA."); Leonard v. Northwest Airlines, Inc., 605

N.W.2d 425, 430-31 (Minn. Ct. App. 2000) (purported class action—state law claims seeking

refund of $75 reissue fee charged by airline when rebooking a canceled nonrefundable ticket

related to price); Blackner v. Continental Airlines, Inc., 709 A.2d 258, 260 (N.J. Super. Ct. App.

Div. 1998) (purported class action—preempting state law claims seeking refund of $60

surcharge by airline to replace lost ticket relates to rates); Vail v. Pan Am Corp., 616 A.2d 523,

526-27 (N.J. Super. Ct. App. Div. 1992) (purported class action—preempting state law claims

seeking to compel refund to customers of $5 surcharges). Like the class claims in those cases,

the class claims here are preempted because they relate to UAL's prices.

### b. State law claims challenging or regulating UAL's advertising relate to price and are preempted.

Plaintiff also alleges that UAL "engaged in false advertising" and that UAL's alleged bad

acts were "directed at consumers and involved an extensive marketing scheme that had a broad

impact on consumers at large." (Compl., ¶¶ 22, 23) (emphasis added). This scheme allegedly

violated the DC Consumer Act, and plaintiff seeks the refund of fares, penalties, injunctive relief,

and punitive damages because of this alleged unlawful advertising.

In <u>Wolens</u>, the Supreme Court held that the Illinois Consumer Fraud statute "serve[d] as a means to guide and police the marketing practices of the airlines" and thus claims based on that statute were preempted by the ADA.  513 U.S. at 228; <u>see</u> <u>Morales</u>, 504 U.S. at 378, 386-90 (attempt to apply state's general consumer protection statute to airline was preempted by ADA); <u>Cruz v. Am. Airlines, Inc.</u>, No. 96-CV-2817, 1997 WL 33441909, at *10 (D.D.C. Oct. 24, 1997)[4] (quoting <u>Wolens</u>, 513 U.S. at 228).  This is because state laws make airline advertising more difficult and costly when they require particular disclosures or attempt to regulate the form of advertisements.  <u>Morales</u>, 504 U.S. at 389-90.  Indeed, the Supreme Court has found "as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares."  <u>Id.</u> at 388.  Attempts at regulating airline advertising also create a real risk of "multiple and potentially conflicting" application of different states advertising laws.  <u>Vail</u>, 616 A.2d at 526.  For these reasons, state laws concerning advertising have a "significant impact upon the fares [airlines] charge" and are preempted.  <u>Morales</u>, 504 U.S. at 390.

Like in <u>Wolens</u> and <u>Morales</u>, plaintiff here seeks to use a state consumer protection act (the DC Consumer Act) to regulate and enjoin UAL's advertising related to prices.  (Compl., ¶¶ 20-29).  And like the statutory consumer protection claim in <u>Wolens</u> and <u>Morales</u>, the claim here should be preempted.[5]

      2.     <u>Plaintiff's state law claims are related to a "service" under the ADA.</u>

Plaintiff's allegations and claims unequivocally relate to "services."  Indeed, she alleges that UAL "contracted to provide airplane flights and <u>services</u> to Plaintiff."  (Compl., ¶ 40)

---

[4]      For the Court's convenience, a copy of all unreported opinions are included in the accompanying Addendum.

[5]      The Supreme Court also noted that there was a remedy for deceptive advertising—the DOT could prohibit such advertisements.  <u>Morales</u>, 504 U.S. at 390-91.  "The conclusion is inescapable that Congress intended to reject the dual enforcement of state law claims relating to rates and services, and to vest the federal Department of Transportation with the exclusive authority to regulate and adjudicate allegations of deceptive and fraudulent

(emphasis added). Her dispute concerns her alleged "reservation," her inability to "check-in," and she alleges that her "coach-class ticket" was resold and that her flight was "cancelled" or "effectively eliminated." (Id., ¶¶ 9, 17, 18, 41).

The Supreme Court in Wolens held that "access to flights and class-of-service upgrades" related to "services." Wolens, 513 U.S. at 226. The Fifth Circuit also has provided an oft-quoted definition of "services" in Hodges, 44 F.3d at 336, which this Court adopted in Cruz, 1997 WL 33441909, at *11 (apparently the only time this Court has interpreted this provision). "Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." Hodges, 44 F.3d at 336. As demonstrated below, federal and state courts have held uniformly that the ADA preempts claims related to "services" similar to those asserted here.

For example, the Fourth Circuit Court of Appeals in Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998), held that boarding procedures and an airline's refusal to allow a passenger to board "[u]ndoubtedly" related to the airline's service. See also Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 399 (S.D.N.Y. 2004) ("[T]ort claims based on 'access to flights,' and/or decision or actions taken by air carriers in connection therewith, are preempted by the 1978 Act."); Nazarian v. Compagnie Nationale Air France, 989 F. Supp. 504, 510 (S.D.N.Y. 1998) ("[C]ases that involve ticketing, boarding . . . or the implementation of airline policies, such as 'bumping' of passengers [and] denial of boarding, . . . relate to services and are preempted."); Chukwu v. Board of Directors British Airways, 889 F. Supp. 12, 13 (D. Mass. 1995) ("Claims involving services provided by individual airline employees directly to passengers, such as ticketing, boarding, in-flight service, and the like, are related to airline 'services' . . . , and

---

advertising and practices in the airline industry." Vail, 616 A.2d at 527. The "DOT, not private parties, will enforce consumer protection rules against the airlines." Statland, 998 F.2d at 541.

therefore preempted.") (quotation omitted); <u>Odoemene v. World Airways, Inc.</u>, Nos. SC-622-04,
SC-561-04, 2005 WL 2994129, at *3 (N.J. Super. Ct. App. Div. Nov. 9, 2005) ("[P]roviding
return travel on an air carrier constitutes 'service' as preempted by the ADA."); <u>see generally</u>
<u>Cruz</u>, 1997 WL 33441909, at *12 (holding that transportation of luggage is a "service").[6]

In <u>El-Menshawy v. Egypt Air</u>, 647 A.2d 491 (N.J. Super. Ct. Law Div. 1994), a court
held that a plaintiff's claim that an airline "failed to honor an allegedly confirmed reservation—
beyond a shadow of a doubt 'relates to' airline services." <u>Id.</u> at 492-93 (Any analysis that
concludes that an airline's failure or refusal to board a ticketed passenger is not a "service"
shows "stunning indifference" to the Supreme Court's opinion in <u>Morales</u>).  Similarly, plaintiff
here alleges that UAL failed to honor a confirmed reservation.  Just like the plaintiff in <u>Egypt</u>
<u>Air</u>, her claims relate to "services" under the ADA and are preempted.

### C.    <u>Counts I-V of Plaintiff's Complaint Are Preempted.</u>

#### 1.    <u>Count I for violation of the DC Consumer Act is preempted.</u>

In <u>Wolens</u>, the Supreme Court held that the ADA preempted a challenge brought under
Illinois' Consumer Fraud and Deceptive Business Practices Act.  513 U.S. at 226-28.  The Court
found that "[i]n light of the full text of the preemption clause, and of the ADA's purpose to leave
largely to the airlines themselves, and not at all to States, the selection and design of marketing
mechanisms appropriate to the furnishing of air transportation services, we conclude that § [105]
preempts plaintiffs' claims under the Consumer Fraud Act." <u>Id.</u> at 228.  Noting "the potential for

---

[6]    Some courts in other circuits apply a narrower definition of "service." <u>See</u> <u>Northwest Airlines, Inc. v.</u>
<u>Duncan</u>, 531 U.S. 1058, 1058 (2000) (denial of cert.) (O'Connor, J., dissenting) (noting that the Ninth and Third
Circuits apply a narrower definition than the First, Fourth, Fifth, and Seventh Circuits).  This Court adopts the
broader definition.  In <u>Cruz</u>, the only case in this District interpreting this statutory provision, this Court considered
the definition of "services" under § 41713 and applied the broader definition adopted by the Fifth and Seventh
Circuits.  1997 WL 33441909, at *11-12 (citations omitted).  Regardless, all circuits' definitions of "service"
include a denial of boarding or refusal to transport.  <u>See</u> <u>Somes v. United Airlines, Inc.</u>, 33 F. Supp. 2d 78, 85 (D.
Mass. 1999) (stating that "the denial of boarding and the refusal to transport a particular passenger . . . without

intrusive regulation of airline business practices inherent in state consumer protection legislation typified by the Consumer Fraud Act," the Court found that this was the type of state regulation that was subject to ADA preemption when applied to airlines. Id. at 227-28.

Adjudication of Count I would constitute the precise type of "intrusive regulation of airline business practices inherent in state consumer protection legislation" that the Court found impermissible in Wolens. Compare D.C. Code § 28-3901(b) ("The purposes of this chapter are to . . . assure that a just mechanism exists to remedy all improper trade practices . . . ."), with 815 Ill. Comp. Stat. 505/2 (declaring unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices") (quoted in Wolens, 513 U.S. at 227). Here, as in Wolens, plaintiff is invoking a state consumer protection law to challenge an airline's advertising and marketing policies and, as in Wolens, plaintiff's claims are preempted. Wolens, 513 U.S. at 224-28.[7]

2.    Counts II, III, IV and V under D.C. common law are preempted.

Plaintiff's common law claims in Counts II, III, IV and V for fraud, negligent misrepresentation, breach of contract, and quasi-contract/unjust enrichment, respectively, are also all preempted as they, too, would all entail enforcement of state common law. See, e.g., Statland, 998 F.2d at 541-42 (ruling that state law claims for breach of fiduciary duty, violation of the Illinois Consumer Fraud and Deceptive Practices Act, conversion, and breach of contract were preempted). State tort claims such as fraud and negligent misrepresentation claims are also "state enforcement." Delta Air Lines, Inc. v. Black, 116 S.W.3d 745, 756-57 (Tex. 2003)

---

question are at the heart of the 'services' that airlines provide," whether under the Fifth or Ninth Circuit's definitions). As such, plaintiff's claims in the instant case would be preempted under either definition.

[7]    Indeed, numerous other courts have followed Wolens in consistently holding that claims against air carriers based on general state consumer protection laws are preempted. See, e.g., Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922, 931 (5th Cir. 1997); Wagman v. Fed. Express Corp., No. 94-1422, 1995 WL 81686, at *2 (4th Cir. Feb. 17, 1995), 47 F.3d 1166 (table); Strategic Risk Mgmt., Inc. v. Fed. Express Corp., 253 A.D.2d 167, 172 (N.Y. App. Div. 1999).

(rejecting a lower court's ruling that only requirements imposed by the state legislature can be preempted).

Indeed, numerous federal and state courts have uniformly found that fraud claims, like those in Count II, fall under the ADA's preemption when they relate to airline prices or services. See Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1251 (6th Cir. 1996) ("State law fraud claims are preempted . . . because Congress intended [the Department of Transportation] to be the sole legal control on possible advertising fraud by air carriers."); see, e.g., Weber v. U.S. Airways, Inc., 11 Fed. Appx. 56, 57-58 (4th Cir. 2001) (motion to dismiss granted, dismissing fraud claim as preempted by the ADA); O'Callaghan v. AMR Corp., No. 04 C 4005, 2005 WL 1498870, at *1 (N.D. Ill. June 8, 2005) (fraud claim dismissed on preemption grounds); Black, 116 S.W.3d at 757 (summary judgment granted, fraud claims preempted); Vail, 616 A.2d at 524 (affirming summary judgment due to preemption of fraud, consumer fraud, and breach of contract claims); see also United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 607-11 (7th Cir. 2000) (affirming a judgment on the pleadings dismissing fraud and other claims as preempted by the ADA).

Similarly, a multitude of courts have preempted negligent misrepresentation claims similar to those alleged in Count III. See, e.g., In re Northwest Airlines Privacy Litig., No. Civ. 04-126 (PAM/JSM), 2004 WL 1278459, at *3-4 (D. Minn. June 06, 2004) (claim for negligent misrepresentation preempted by ADA); Dugan v. FedEx Corp., No. CV 02-1234-JFWFMOX, 2002 WL 31305208, at *3 (C.D. Cal. Sept. 27, 2002) (state law claims, including claims for negligent misrepresentation and unjust enrichment preempted by the ADA); Breitling U.S.A., Inc. v. Fed. Express Corp., 45 F. Supp. 2d 179, 182-84 (D. Conn. 1999) (granting summary judgment, finding preemption of negligence, unjust enrichment, breach of contract, and statutory

13

consumer protection act claims); Black, 116 S.W.3d at 757 (negligent misrepresentation claim preempted); see also Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc., 972 F. Supp. 665, 672-73 (N.D. Ga. 1997) (applying the ADA preemption standard in the context of the Federal Aviation Act and granting a motion to dismiss fraud, statutory fraud, negligence, gross negligence, unjust enrichment, constructive trust, and claims for punitive damages and injunctive relief as preempted).

Plaintiff's breach of contract claim, Count IV, is preempted as well. When, as in Count IV, a common law breach of contract claim "can only be adjudicated by reference to law and policies external to the parties' bargain . . . [the claim] is preempted." Smith, 134 F.3d at 258.[8] Under this rule, plaintiff's breach of contract claim is preempted for three independent reasons. First, plaintiff incorporates by reference each of the allegations from her DC Consumer Act, fraud, and negligent misrepresentation claims into the breach of contract claim. (Compl., ¶ 39). Thus, for the reasons identified directly above, resolution of the breach of contract claim requires examination of preempted state law claims external to the contract claim. Second, the incorporated allegations include a request for punitive damages and injunctive relief. (Id., ¶ 28). "Rather than merely holding parties to the terms of a bargain, punitive damages represent an 'enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement.'" Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (quoting Wolens, 513 U.S. at 233 n.8). Count IV should be dismissed on these grounds.

---

[8]    In Wolens, the Supreme Court recognized a narrow exception to preemption holding that breach of contract actions are not preempted under the ADA where the claimant does not rely on "state-imposed obligations, but seek[s] recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Id. at 228. However, the Court limited its exception to actions confined to the terms of the parties' agreement "with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 233.

The third, and most compelling, independent reason that Count IV should be preempted is that it requires the Court to look beyond the self-imposed undertakings of the parties to resolve the claim. In circumstances like this, courts have held breach of contract claims preempted. Smith, 134 F.3d at 258 ("Because Comair invokes defenses provided by federal law, Smith's contract claim can only be adjudicated by reference to law and policies external to the parties' bargain and, therefore, is preempted under the ADA."); see Black, 116 S.W.2d at 756 (preempting breach of contract claim because adjudication of the claim required reference to federal regulations external to the contract). In Black, 116 S.W.3d at 745, the court noted that the Department of Transportation has promulgated extensive regulations under the ADA, including regulations concerning an airline's boarding and seating procedures. Id. at 756. The court held that resolution of the breach of contract claim at issue would require the court to analyze federal regulations outside the contract and, thus, the claim was preempted. Id. Here, plaintiff's allegation that she did not receive "notice" of the cancellation policy (Compl., ¶ 41) requires the Court to examine Department of Transportation regulations which govern the sufficiency of publication, notice, and incorporation by reference of the terms of a "contract of carriage" into the transaction. See 14 C.F.R. §§ 253.1, 253.4, 253.6, 253.7, 253.8.[9] Indeed,

---

[9]      The DOT has extensive regulations which are more than sufficient to handle this dispute. For example, the DOT has regulations concerning notice of fares and restrictions over the internet. See Notice of Department of Transportation Office of Aviation Enforcement and Proceedings Regarding Disclosure of Additional Fees, Charges and Restrictions on Air Fares in Advertisements, Including "Free" Airfares, September 4, 2003, available at http://airconsumer.ost.dot.gov/rules/20030904.pdf (noting that "to accommodate the emergence of the Internet in the sale of air transportation, the Department has permitted a full explanation of taxes, fees and conditions to be provided by hyperlinks"); see also Spirit Airlines Inc. Violations of 49 U.S.C. § 41712 and 14 C.F.R. 399.84, Order 2003-12-26, 2003 DOT Av. LEXIS 1107, at *4 (Dec. 30, 2003) (providing that a "full explanation of the nature and amount of all additional fees and significant restrictions . . . may be linked to the fare by a single hyperlink"). "Although the DOT has chosen only to require conspicuous notice of the fees, it could also choose to regulate the amounts. [Plaintiff] can take her grievances to the DOT and ask it to take action." Leonard, 605 N.W.2d at 432 (citing Wolens, 513 U.S. at 228 n.4). The DOT operates a website with detailed instructions on how to file a claim. See, e.g., http://airconsumer.ost.dot.gov/problems.htm. Thus, plaintiff can pursue her complaints in front of the DOT, the mandated forum.

these federal regulations expressly "preempt any State requirements on the same subject." 14 C.F.R. § 253.1. For these reasons, the breach of contract claim is preempted.

Finally, claims such as those asserted by plaintiff in Count V for unjust enrichment have consistently been preempted by courts. See, e.g., Lehman v. USAIR Group, Inc., 930 F. Supp. 912, 915-16 (S.D.N.Y. 1996) (state law claim for unjust enrichment preempted); Howell, 994 P.2d at 905 (affirming dismissal of unjust enrichment and contract claims and defenses as preempted); see also Dugan, 2002 WL 31305208, at *3 (state law claims, including unjust enrichment and negligent misrepresentation, preempted by ADA); Deerskin, 972 F. Supp. at 672-73 (unjust enrichment claim preempted). Accordingly, plaintiff's common law claims are clearly preempted and should be dismissed.

## CONCLUSION

For all the reasons stated herein and in the accompanying Motion to Dismiss and Addendum, defendants United Air Lines, Inc., and UAL Corporation respectfully request that the Court dismiss each of plaintiff's individual and class claims asserted in the Complaint and the requested relief therein with prejudice as preempted under the Airline Deregulation Act of 1978.

Respectfully submitted,

Edward S. Scheideman (D.C. Bar No. 475128)
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
(202) 861-3900
(202) 223-2085 (fax)

Counsel for Defendants United Air Lines, Inc.
and UAL Corporation

Of Counsel:

Lawrence A. Wojcik (not yet admitted pro hac vice)
Raj N. Shah (not yet admitted pro hac vice)

16

DLA Piper US LLP
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293
(312) 368-4000
(312) 236- 7516 (fax)

## REQUEST FOR ORAL HEARING

Defendants hereby request an oral hearing on Defendants' Motion to Dismiss pursuant to

Local Civil Rule 7(f).

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2006, a true and correct copy of the foregoing Defendants United Air Lines, Inc. and UAL Corporation's Motion to Dismiss Plaintiff's Complaint, Memorandum in support thereof and proposed Order was served by electronic filing to the following:

> Nat N. Polito, Esquire
> Law Offices of Nat N. Polito, P.C.
> 1776 K Street, N.W.
> Suite 200
> Washington, D.C. 20006-2333
>
> Attorneys for Plaintiffs

and by first-class, postage prepaid mail to the following:

> Peter D. Morgenstern, Esquire
> Eric B. Fisher, Esquire
> Laura J. Lefkowitz, Esquire
> Morgenstern Jacobs & Blue, LLC
> 885 Third Avenue,
> New York, New York 10022
>
> Of Counsel for Plaintiffs

Edward S. Scheideman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------
                                    )
SARA WEXLER, on behalf of herself   )
and all others similarly situated,  )
                                    )        Case No. 1:06 CV 01917
                Plaintiffs,         )
                                    )        Judge Gladys Kessler
        v.                          )
                                    )
UNITED AIR LINES, INC. (a Delaware  )
Corporation), and UAL Corporation (a Delaware )
Corporation),                       )
                                    )
                Defendants.         )
                                    )
-----------------------------------
```

## DEFENDANTS, UNITED AIR LINES, INC. AND UAL CORPORATION'S ADDENDUM OF UNREPORTED CASES CITED IN MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

| CASES | TAB |
|---|---|
| Cruz v. Am. Airlines, Inc., No. 96-CV-2817, 1997 WL 33441909, at *1 (D.D.C. Oct. 24, 1997) | 1 |
| Dugan v. FedEx Corp., No. CV 02-1234-JFWFMOX, 2002 WL 31305208, at *1 (C.D. Cal. Sept. 27, 2002) | 2 |
| In re Northwest Airlines Privacy Litig., No. Civ. 04-126, 2004 WL 1278459, at *1 (D. Minn. June 06, 2004) | 3 |
| O'Callaghan v. AMR Corp., No. 04 C 4005, 2005 WL 1498870, at *1 (N.D. Ill. June 8, 2005) | 4 |
| Odoemene v. World Airways, Inc., No. SC-622-04; SC-561-042005, WL 2994129, at *1 (N.J. Super. Ct. App. Div., Nov. 9, 2005) | 5 |
| Spirit Airlines, Inc. Violations of 49 U.S.C. § 41712 and 14 CFR 399.84, Order 2003-12-26, 2003 DOT Av. LEXIS 1107, at *1 (Dec. 30, 2003) | 6 |

**CASES**                                                                     **TAB**

Wagman v. Federal Exp. Corp., No. 94-1422, 1995 WL 81686, at *1 (4th Cir. Feb. 17,     7
1995), 47 F.3d 1166 (table)


Weber v. U.S. Airways, Inc., 11 Fed. Appx. 56 (4th Cir. 2001)                       8

**TAB 1**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

**H**
Briefs and Other Related Documents
Cruz v. American Airlines, Inc.D.D.C.,1997.Only the
Westlaw citation is currently available.
United States District Court, District of Columbia.
Maria V. CRUZ, et al., Plaintiffs,
v.
AMERICAN AIRLINES, Defendant.
No. 96-CV-2817.

Oct. 24, 1997.

## MEMORANDUM OPINION

KOLLAR-KOTELLY, J.

*1 This matter is before the Court on the Defendant's
Motion for Partial Summary Judgment, the Plaintiffs'
Opposition, and the Defendant's Reply. The
Plaintiffs' claims arise out of the loss of their luggage
during an international flight and the processing of
their claims for the loss of that luggage. They have
filed a complaint seeking compensatory and punitive
damages, and declaratory and injunctive relief. The
Defendant has moved for partial summary judgment,
relying on the Warsaw Convention, the Airline
Deregulation Act of 1978, and the theory of primary
jurisdiction. On September 15, 1997, the Court held a
hearing on the Defendant's Motion for Partial
Summary Judgment. Upon consideration of
pleadings, the arguments at the hearing, the entire
record herein, and the relevant law, the Court will
grant the Defendant's Motion for Partial Summary
Judgment as to Claim I, will dismiss Claim II, and
will grant Summary Judgment as to Claim III.

## FACTUAL BACKGROUND

The following undisputed material facts are deduced
from the Plaintiffs' Amended Complaint
("Complaint"), the Defendant's Answer to Amended
Complaint ("Answer"), the Defendant's Rule 108(h)
statement of undisputed materials facts ("Rule
108(h)"), and the Defendant's Motion for Partial
Summary Judgment ("Deft.'s Mot. for Partial Summ.
J."). On December 21, 1995, Plaintiffs Maria V.
Cruz, Gustavo Cruz, Joaquin Rodriguez, Beato Cruz,
and Yovary Polanco [FN1] checked their luggage with
Defendant American Airlines and received baggage
claim stubs for each piece of luggage. (Complaint ¶
4; Answer ¶ 4; Rule 108(h) ¶ 1). The Defendant

weighed approximately half of the bags that the
Plaintiffs tendered to the Defendant, (Complaint ¶ 4;
Rule 108(h) ¶ 4), and because some of the luggage
was overweight, Maria Cruz paid $135.00 in
overweight charges. (Complaint ¶ 4; Rule 108(h) ¶
5; Deft.'s Mot. for Partial Summ. J. at 5-6 & n. 4, 9).
The baggage claim stubs did not state the weight of
the bags. (Complaint ¶ 4; Rule 108(h) ¶ 5).

FN1. Both Gustavo Cruz and Joaquin
Rodriguez are minors, and Maria Cruz
brings the action on their behalf. Similarly,
Yovary Polanco is a minor, and Sandra
Maria Cruz brings this action on his behalf.

On December 22, 1995, when the Plaintiffs arrived at
their destination of Santo Domingo, they discovered
that five pieces of their luggage had not been
delivered. (Complaint ¶¶ 5, 6; Answer ¶¶ 4, 5;
Rule 108(h) ¶ 7). That same day, they filled out and
submitted to the Defendant a missing property report.
(Complaint ¶ 6; Plaintiffs' Missing Property Report
in Deft.'s Mot. for Partial Summ. J., Attachment III;
Rule 108(h) ¶ 8). One bag was returned eventually,
although it was damaged and empty. (Complaint ¶ 6;
Answer ¶¶ 4, 5; Rule 108(h) ¶¶ 2, 7). As to three of
the lost pieces of luggage, the Plaintiffs paid excess
weight fees. (Plaintiffs' Declaration of Lost Property
in Deft.'s Mot. for Partial Summ. J., Attachment III;
Deft.'s Mot. for Partial Summ. J. at 5 n. 4, 9).[FN2]

FN2. Plaintiffs claim that after filing the
missing property report on December 22,
1995, they also filed a declaration of lost
property on January 9, 1996, January 26,
1996, and February 7, 1996. The Defendant
admits only that the Plaintiffs filed a
declaration on or about February 7, 1996.
See Answer at ¶ 7. The dispute about
whether or not the Plaintiffs filed
declarations on January 9, 1996 and January
26, 1996, is not material in light of the
Court's ruling with respect to Claims II and
III, and is irrelevant as to Claim I because
the Defendant has accepted the claims for
lost luggage based on the missing property
report that the Plaintiffs filed on or about
December 22, 1995.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Thereafter, the Defendant rejected the Plaintiffs' lost luggage claims because the Plaintiffs did not file the declaration of lost property within 30 days of their loss. (Complaint ¶ 9; Answer ¶ 7; Rule 108(h) ¶ 12). This 30 day limitation for filing a written claim is encompassed in Condition 12 of the Defendant's Conditions of Carriage ("Condition 12"). *See* Ex. A of Plaintiffs' Requested Submission.

*\*2* The Plaintiffs filed a Complaint, and then an Amended Complaint, seeking damages for the value of the luggage that they allege the Defendant lost during their international flight. They also seek a declaratory judgment that the Defendant unlawfully applied Condition 12 and unlawfully required the Plaintiffs to complete a declaration of lost property,[FN3] and they seek to enjoin the Defendant from "publishing, applying or enforcing such rules in foreign air transportation." Finally, the Plaintiffs request compensatory and punitive damages for fraud and deceit, which they claim the Defendant committed when applying Condition 12 to their lost baggage claims.

> FN3. The parties explained to the Court at the hearing that a declaration of lost property is a detailed claim form, whereas a missing property report does not require such specificity.

## DISCUSSION

Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 if
the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Thereafter, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " 477 U.S. at 324.

In deciding a motion for summary judgment, the court must believe all of the evidence produced by the non-movant, and must draw all favorable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 255, 255 (1986). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 477 U.S. at 251.

## CLAIM I

In Claim I, the Plaintiffs seek to recover the value of the contents of their lost luggage. As to this claim, the Defendant moves for partial summary judgment as to all claims that are in excess of the limitation of liability set forth in Article 22(2) of the Warsaw Convention. The Defendant argues that the Plaintiffs are not entitled to recover the value of their luggage because Article 22(2) of the Warsaw Convention (Convention) [FN4] limits their recovery to $ 9.07 per pound of their checked luggage.

> FN4. Convention for the Unification Of Certain Rule Relating to International Transportation By Air With Additional Protocol, Oct. 12, 1929, 49 U.S. Stat. 3000, T.S. 876 (1934), *reprinted in* 49 U.S.C.App. § 1502 note (commonly known as "Warsaw Convention").

The Warsaw Convention "appl[ies] to all international transportation of persons, baggage, or goods performed by aircraft for hire." Article 1. Article 4 of the Convention sets forth particulars that must be included on a baggage check when a passenger checks baggage with a carrier. One such particular is the number and weight of the packages. *See* Article 4(2)(f). Subsection (4) of Article 4 provides that "if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d),[FN5] (f),[FN6] and (h) [FN7] above, the carrier shall not be entitled to avail himself of those provisions of the convention that exclude or limit his liability." Article 22(2) of the Convention establishes one such limitation on the liability of the carrier:

> FN5. "The number of the passenger ticket." Article 4(2)(d).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

FN6. "The number and weight of the packages." Article 4(2)(f).

FN7. "A statement that the transportation is subject to the rules relating to liability established by this convention." Article 4(2)(h).

*3 In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram [or $9.07 per pound], unless the consignor has made at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that sum is greater than the actual value to the consignor at delivery.
Article 22(2).

The Plaintiffs' position is that because the Defendant failed to include the weight of their luggage on their baggage claim stubs as required in Article 4(2)(f), the Defendant is precluded by Article 4(4) from availing itself of the limited liability provision in Article 22(2). In support of this claim, the Plaintiffs rely on several decisions from courts outside this circuit that have held that a carrier is not entitled to limited liability if the weight is not included on the baggage check stub. *See e.g. Da Rosa v. Tap Air Portugal, 796 F.Supp. 1508 (S.D.Fla.1992); Vekris v. People's Express Airlines, 707 F.Supp. 675 (S.D.N.Y.1988); Gill v. Lufthansa German Airlines, 620 F.Supp. 1453, 1455-56 (S.D.N.Y.1985).*

The Defendant, in opposition, relies largely on *Martin v. Pan American World Airways, 563 F.Supp. 135 (D.D.C.1983),* in which Judge Thomas A. Flannery held that the omission of the weight from the baggage check did not lift the limited liability in Article 22(2). *563 F.Supp. at 140-41.* Specifically, *Martin* held that "the failure to record the weight of [the] luggage is a technical and insubstantial omission." *Martin, 563 F.Supp. at 141; see also Republic National Bank of New York v. Eastern Airlines, 815 F.2d 232 (2d Cir.1987); Abba v. Pan American World Airways, 673 F.Supp. 991 (D.Minn.1987).*[FN8]

FN8. The Defendant also cites cases that interpret Articles 8 and 9 of the Convention. *See Brinks v. South African Airways, 93*

*F.2d 1022 (2d Cir.1996); Exim v. Pan American, 754 F.2d 106 (2d Cir.1985); Distribuidora Dimsa v. Linea Aerea Del Cobre S.A., 976 F.2d 90 (2d Cir.1992).* Article 8, like Article 4, requires certain particulars to be included in a waybill. *See* Article 8. Article 9 precludes limited liability if certain particulars are omitted from the waybill. *See* Article 9. The cases cited by the Defendant hold that the omission of certain particulars set out in Article 8 will not preclude the limited liability unless the particular has "practical significance." *See Exim v. Pan American, 754 F.2d 106 (2d Cir.1985); see also Brinks v. South African Airways, 93 F.2d 1022 (2d Cir.1996); Distribuidora Dimsa v. Linea Aerea Del Cobre S.A., 976 F.2d 90 (2d Cir.1992).*

The Plaintiffs argue that the Supreme Court decision in *Chan v. Korean Air Lines, Ltd., 109 S.Ct. 1676 (1989)* rejected the *Martin* rationale. In *Chan,* the Court interpreted Article 3(2) of the Warsaw Convention, which provides that if a carrier fails to deliver a ticket to a passenger, then the carrier is not able to avail itself of the limited liability provisions in the Convention. *Id.* at 1679. The *Chan* Court considered whether the carrier would be precluded from availing itself of the limited liability provisions where the ticket is delivered, but one of the particulars in the ticket is irregular. Applying the clear language of Article 3(2), the Court found no basis in the provision for holding that the irregularity of a particular in the ticket could preclude limited liability. The Court held that "where the text is clear ... we have no power to insert an amendment." *Id.* at 1683 (footnote omitted). The Court therefore declined to undertake an interpretative analysis of the language.

The Plaintiffs argue that in light of *Chan's* disapproval of the interpretive approach in cases where the language is clear and unambiguous, the *Martin* decision is incorrect because Martin did not apply the clear, unambiguous text of Article 4(4), which according to the Plaintiffs, precludes limited liability if the weight is omitted. The Plaintiffs therefore urge this Court to reject *Martin* by following the plain meaning of Article 4, and thus to find that liability is not limited under Article 22(2).

*4 This Court agrees that *Chan* held:
"[w]e must thus be governed by the text-solemnly adopted by the governments of many separate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

nations-whatever conclusion might be drawn from the intricate drafting history [of the Convention]. The latter may of course be consulted to elucidate a text that is ambiguous.... But where the text is clear ... we have no power to insert an amendment."

*Id.* Accordingly, the Court's analysis must begin by determining whether Article 4(4) is clear or ambiguous. Article 4(4) directs that "if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability." Article 4(4) (emphasis added). The Court notes that the provision employs the conjunction "and" rather than "or." In the ordinary case, the word "and" should retain its conjunctive meaning, and because the words "or" and "and" are not generally interchangeable, the word "and" may be construed as "or" only in rare circumstances. *See Nichols v. Board of Trustees of the Asbestos Workers Local 24 Pension Plan,* 835 F.2d 881, 890 n. 79 (D.C.Cir.1987). Considering the conjunctive meaning of the word "and", the plain language of this provision directs that liability is lifted only if all three particulars are missing. Thus, the Court concludes that the Defendant is entitled to avail itself of the limited liability in Article 22(2) because only one of the particulars, namely the weight, was missing from the baggage claim stub.

Alternatively, the Court notes that it appears that no other courts have read Article 4(4) in the conjunctive. Rather, all Courts appear to have construed the language as disjunctive. Given this fact, the Court recognizes that the language in Article 4(4) may not be unambiguous. Where the language of the text is ambiguous, "the plain meaning rule does not apply and [the Court] is free to employ traditional interpretive methods." *Maritime Insurance Co. Limited v. Emery Air Freight Corp.,* 983 F.2d 437, 440 (2d Cir.1993).

In determining whether the absence of the weight alone on the claim stub should prevent the Defendant from availing itself of the limited liability provisions, the Court is guided by Judge Flannery's considerations in *Martin* regarding the two-fold purpose of the weight requirements. The first purpose is "to fix the amount of liability if the baggage is lost, and to afford a definite basis for passengers to recover damages." *Martin,* 563 F.Supp. at 140. The second purpose is to "ensure that a passenger is aware of the weight of the baggage, so that she may determine whether she should purchase additional insurance." *Id.*

The first purpose of the weight requirement is met in this case notwithstanding the absence of the weight on the baggage claim stub. The Defendant's tariff fixes the weight at the maximum allowable free weight (70 pounds) if the weight is not indicated. *See* Ex.. 1 to Attachment V of Def. Mot. for Partial Summ. J., Tariff AA-66. Thus, the Plaintiffs have a fixed basis for recovery, and the Defendant has a fixed amount of liability.

*5 The Plaintiffs argue that the Defendant may not rely on the "maximum free weight allowance" tariff because it is contrary to Article 4(4) provision that precludes the carrier from limiting its liability to $9.07 per pound if weight is missing from the baggage check. The Convention provides only that the liability is limited to $9.07 per pound, and does not indicate how the weight is to be determined. The maximum free weight allowance tariff does not act to limit the $9.07 per pound liability as provided in the Convention; rather it only provides a fixed weight in the event that the baggage check does not indicate the weight of the baggage. This tariff "supplements Convention Article 4, and represents an appropriate accommodation of the need to preserve limited liability for property damage, and the need to ensure some means of fixing the amount of liability." *Martin,* 563 F.Supp. at 140; *see also Thompson v. British Airways,* 1989 WL 43997, *3 (D.D.C. April 18, 1989)* (finding that the maximum allowable weight tariff does not conflict with a provision of the Convention, and following *Martin's* conclusion that the tariff supplements the Convention and is consistent with the purpose of the convention).

The Court also finds that the failure to provide the weight in the instant case does not frustrate the second purpose of the weight requirement. The Plaintiffs in the instant case allege that the value of each lost bag was approximately $5,000. The Plaintiffs knew the value of the contents of the bags, and knew that if the weight was not indicated on the luggage, then each bag is deemed to weigh 70 pounds. The Plaintiffs claim that they paid $135.00 in excess baggage fees for their lost luggage. The Defendant has accepted this fact. *See* Deft.'s Mot. for Partial Summ. J. at 5 n. 4. The Defendant's Tariff, AA-110-E, provides that where a bag is overweight by 35 pounds or less, the passenger must pay $35.00. For a bag 35 to 70 pounds overweight, the passenger must pay $50.00. Plaintiffs argue that they paid $135.00 in excess weight fees. Thus it follows that one of the Plaintiffs bags was overweight by at most 35 pounds, and two bags were overweight by at most

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

50 pounds each. The Defendant does not dispute these facts. *See* Deft.'s Mot. for Partial Summ. J. at 9 ("For purposes of this Motion, Defendant American is also adding 35 pounds for one bag and 70 pounds for each of the other two bags plaintiff alleges were weighed and for which they paid $135....."

Given that three bags were weighed, and the Plaintiffs were charged excess baggage fees, Plaintiffs were on notice that as to three of the lost pieces of luggage, their recovery would be limited to $9.07 per pound at 105 pounds for one bag; and to $9.07 per pound at 140 pounds for two bags. Furthermore, they were on notice that if their baggage check did not include a weight, the bag is deemed to weigh 70 pounds. Therefore, Plaintiffs had sufficient information to "make a rational decision concerning [the] need of insurance." *Martin*, 563 F.Supp. 140. The Plaintiffs should have realized that in order to recover approximately $5,000 per bag, their bags would have to weigh approximately 333 pounds each. Thus, it is obvious that the Plaintiffs should have known that despite the absence of the weight notation, their recovery would have been "far less than the value of the contents of the lost luggage." *Id.* at 141; *see also Republic National Bank of New York v. Eastern Airlines, Inc.*, 815 F.2d 232 (2d Cir.1987) ("A passenger need only multiply the amount recoverable per pound under the Convention ($9.07) by the weight of his baggage to arrive at [the amount of their recovery]."). The Plaintiffs had sufficient notice and opportunity to make an informed decision about whether to purchase additional insurance, so that the second purpose of the weight requirement was not undermined. *Id.*

*6 The Court finds that the failure of the Defendant to include the weight of the luggage on the baggage stub does not prejudice the Plaintiffs. Thus, as to whether the absence of the weight alone should act to preclude the Defendant from the limited liability, the Court finds that the purpose of the weight requirement coupled with the facts of this case dictate that the Defendant is entitled to avail themselves of the limited liability in Article 22(2).

The Warsaw Convention's limitations of liability apply in this case because the language in Article 4(h) unambiguously precludes liability only if all three specified particulars are missing from the baggage check. Alternatively, the absence of the weight from the baggage check in this case did not prejudice the Plaintiffs because the absence did not frustrate the purpose of the weight particular. Therefore, the Defendant's Motion for Partial

Summary Judgment is granted.

An additional issue must be addressed. The Defendant does not dispute that four pieces of luggage were not delivered to the Plaintiffs, and that one additional piece of luggage, which initially was not missing, eventually was returned damaged and empty. *See* Deft.'s Mot. for Partial Summ. J. at 5 n. 4. The Defendant does not dispute that two pieces of the luggage at issue weighed approximately 140 pounds each, and that one piece weighed approximately 105 pounds. *Id.* at 9. Furthermore, the Defendant does not dispute that Plaintiff Maria Cruz paid $135 in excess baggage fees for that luggage. *Id.* at 5 n. 4.

In its Motion, however, the Defendant claims that the Plaintiffs should be required to "prove the value and specific loss of property for all claims less than the limitation of liability under the Warsaw Convention." *See* Deft.'s Mot. for Partial Summ. J. at 6. In addition, the Defendant states that "plaintiffs should be required to prove the items of property loss with respect to any claim viable within the Warsaw Convention of limitation of liability ." *Id.* at 7. Based on the fact that the Defendant has conceded both the number of missing/delayed pieces of luggage and the approximate weights thereof, and in light of the Court's foregoing conclusion that the weight of the luggage not the value is the measure of recovery, the issue of the value of the contents of the luggage is irrelevant.

In the Court's opinion the material facts as to the Defendant's liability for the lost luggage are not in dispute. Notably, the Defendant admits that it checked the Plaintiffs' luggage; that five pieces were either never delivered or were delayed in delivery. Furthermore, it is either an undisputed and/or uncontested fact that two bags weighed 140 pounds each, one bag weighed 105 pounds, and two bags are deemed to weigh 70 pounds each. Based on these facts the Court would conclude that the Plaintiffs are entitled to judgment in the amount of $4,761.75.[FN9]

FN9. The total weight of the missing luggage is 525 pounds. Thus, at $9.07 per pound, the Plaintiffs would recover $4,761.75.

At this time, however, neither party has filed a motion requesting final judgment. Thus, pursuant to an accompanying Order, the parties will have until October 30, 1997 to file additional dispositive motions; if none are filed within that time, then the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

parties shall appear before the Court for a status hearing on November 7, 1997, at 10:30 a.m.

## CLAIM II

*7 In claim II, the Plaintiffs allege that the Defendant unlawfully applied the Conditions governing lost baggage claims for domestic travel to the Plaintiffs' claims for lost baggage arising from international travel. Specifically, the Plaintiffs claim that the Defendant should not have required the Plaintiffs to complete a declaration of lost property, and should not have applied the 30 day rule in Condition 12 because these conditions apply only to domestic travel.

Furthermore, the Plaintiffs claim that the Defendant must publish in its tariffs, and give notice of, the rules and practices governing its performance of foreign air transport. The Plaintiffs conclude that the Defendant has violated this publication and notice requirement by applying the 30 day requirement in Condition 12 and the declaration requirement to international travel. The Plaintiffs seek a declaration that the application of Rule 12 to foreign travel is unlawful. Furthermore, the Plaintiffs seek a permanent injunction prohibiting the Defendant from "publishing, applying or enforcing such rules in foreign air transportation" because they claim that it conflicts with Article 26 of the Convention.

As to these claims, the Defendant proffered in its Motion to Dismiss several bases for summary judgment, namely that the claims are precluded by the Warsaw Convention or the theory of primary jurisdiction. At the time of the hearing, the Court sua sponte raised an issue about the viability of Claim II. Specifically, the Court, for the following reasons, asked the parties whether there was an issue to adjudicate in Claim II: the Defendant had conceded that it had misapplied Condition 12 and incorrectly required a detailed declaration before processing the claim; [FN10] the parties had agreed that the Warsaw Convention dictates the procedures for filing claims of lost luggage; and the Defendant had accepted the Plaintiffs' claims for lost luggage as properly filed.

> FN10. The parties did not provide the Court with the specific cite of this Condition.

At the hearing, the Defendant pursued the Court's approach on the issue of whether Claim II was justiciable, and argued that no justiciable issue existed any longer because the parties were in agreement that only the conditions of domestic travel require a detailed declaration of the loss. In essence, the Defendant argued that there was no present case or controversy. At the hearing, the Plaintiffs recognized that their own claims had been resolved, and acknowledged that the Defendant had conceded that the wrong rules were applied to the claims of the Plaintiffs. The Plaintiffs, however, focused on the issue of mootness, and argued that the case was not moot because it was capable of repetition. Counsel for the Plaintiffs argued that if the Plaintiffs' pending motion to amend the complaint to assert a class action was granted, then this claim clearly would present a justiciable controversy.[FN11] Upon consideration of the Amended Complaint, the Motions for Partial Summary Judgment, Opposition, and Reply, as well as the arguments made during the hearing on September 15, 1997, the Court finds that the Plaintiffs do not have standing to assert the claims for declaratory and injunctive relief.[FN12]

> FN11. Following the hearing, the Defendant submitted a "Notice of Authorities," citing cases on the issues of whether the Plaintiffs could seek relief on behalf of third parties not before the Court and whether a justiciable controversy existed. The Plaintiffs then moved to strike the Notice of Authorities on the ground that it was filed out of time allowed in the Court's scheduling order, and because it raised new grounds for dismissal that were not raised in the Motion for Partial Summary Judgment. To the extent that the Plaintiffs assert in the Motion to Strike that they did not address this issue because it was not raised in the Defendant's Motion, the Court notes that the issue of case or controversy was raised sua sponte by the Court at the hearing. Nonetheless, given that the Court did not rely on the Notice of Authorities, the Court will grant the Motion to Strike.

> FN12. The Court notes that the Plaintiffs cannot be representatives of a class action if they do not have standing on their own to bring an action. See *American Jewish Congress v. Vance,* 575 F.2d 939, 944 (D.C.Cir.1978) (noting that "actual plaintiffs must show that they have personally suffered an injury redressable by the courts (citing *Warth v. Seldin,* 422 U.S. 490, 502 (1975)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

\*8 "The federal courts are powerless to decide any matter unless it involves a case or controversy." *Federal Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C.Cir.1995) (citing U.S. Const. art. III, § 2). The Declaratory Judgment Act likewise requires an actual case or controversy. *See* 28 U.S.C. § 2201(a). In determining whether an "actual case or controversy" exists, the courts apply the same standard for whether a case or controversy exists for Article III purposes. *See Federal Express Corp.*, 67 F .3d at 963 n. 2 ("The term 'actual' is, however, one of emphasis, and not indicative of a different standard from Article II as to what qualifies as a controversy.").

In order to have a case or controversy, and therefore to have standing, the Plaintiffs must "demonstrate a 'personal stake' in the outcome in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). This requires a plaintiff to show that he has " 'sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not conjectural or hypothetical." *Lyons*, 369 U.S. at 102 (citations omitted).

### A. Declaratory Judgment

Specifically with respect to a declaratory judgment, "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present rights upon established facts." ' *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937). There is no "precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Federal Express Corp.*, 67 F.3d at 964 (quoting *Maryland Casualty Co. V. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

In the instant Motion for Summary Judgment, the Defendant admits that it incorrectly required the

Plaintiffs to fill out a declaration, and incorrectly applied the 30 day rule to their claims. The Defendant has agreed to process the Plaintiffs claims as properly requested and timely filed. Thus, applying the standards for whether a case or controversy exists, the Court concludes that in this case as to whether the 30 day rule should have been applied to these Plaintiffs, there does not exist a "substantial controversy, between parties having adverse legal interests."

Furthermore, the argument that the Defendant may again lose the Plaintiffs' luggage while they are engaged in international travel on the Defendant's airlines, and that the Defendant again may misapply the rules of domestic travel to international travel fails to present a future injury that is of sufficient immediacy and reality to form a live case or controversy. *See Lyons*, 461 U.S. at 104 (holding that assertion that Plaintiff may be subject to illegal choke hold in the future was insufficient to create an actual case or controversy in order to enter a declaratory judgment); *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (finding that the allegations of plaintiffs' future illegal conduct and prosecution thereof did not support court's jurisdiction); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (holding that a finding of sufficient immediacy and reality was precluded by unlikelihood that former congressman, whom plaintiff wanted to criticize anonymously in handbill in violation of statute prohibiting distribution of statements in handbill about election of public officers, would be reelected). While the Plaintiffs may have standing to seek damages for misapplication of the 30 day rule, they do not have standing to seek a declaratory judgment as to the application of the 30 day rule. *See Lyons*, 461 U.S. at 109.

\*9 As noted above, the Plaintiffs have focused their argument on whether their claim is moot. Mootness, however, is not an issue where the Plaintiffs argument that their injury is capable of repetition is based purely on speculation. *See Lyons*, 461 U.S. at 109. The "capable-of-repetition doctrine applies only in the exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will be again subjected to the alleged illegality." *Lyons*, 461 U.S. at 109 (citing *Definis v. Odegaard*, 416 U.S. 312, 319 (1974). Furthermore, the Plaintiffs' claims do not evade review because they have standing to pursue an action for compensatory damages. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

### B. Injunctive Relief

Considerations about whether a case or controversy exists for Article III and Declaratory Judgment purposes "shade into those determining whether the complaint states a sound basis for equitable relief." *O'Shea*, 414 U.S. at 498. In order to be entitled to equitable relief, the Plaintiffs must establish irreparable harm and inadequacy of legal remedies. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974). The Plaintiffs cannot meet the requirement of irreparable injury because they have failed to show any real or immediate threat that they will suffer the same injury. *Id.* at 111; *see also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.* 559 F.2d 841 (D.C.Cir.1977). Furthermore, the Plaintiffs have an adequate legal remedy in that they have sought compensatory damages for the Defendant's actions. *Id.*; *see also Gemini Supply Corp. v. Zeitlin*, 590 F.Supp. 153, 159 (D.D.C.1984) (denying injunctive relief where injury was compensable by monetary damages). Accordingly, the Court will dismiss Claim II pursuant to Fed.R.Civ.P. 12(b)1 for a lack of subject matter jurisdiction.

### CLAIM III

The Plaintiffs' final requested relief is for compensatory and punitive damages based on a claim of fraud and deceit. The Plaintiffs maintain that the Defendant has a willful and knowing practice and policy of rejecting claims for lost or damaged checked baggage in foreign air transportation where the claimant has not complied with Rule 12. The Plaintiffs allege that this practice and policy constitutes a breach of duty that is owed by a common carrier for hire under (1) common law; (2) the terms of the Warsaw Convention; and (3) federal law requiring publication of terms. The Plaintiffs further allege that the application of this practice was malicious, deceptive, and fraudulent, and seek $80,000 in compensatory damages and $75,000 in punitive damages.

It is the Defendant's position that the instant claim relates to a service of the airline. The Defendant argues that this claim therefore is preempted by the Airline Deregulation Act of 1978, which prohibits states from enacting or enforcing any law relating to an air carrier's rates, routes, or services.

In 1978, Congress enacted the Airline Deregulation Act (ADA), Pub L. No. 95-904, 92 Stat. 1705 (1978) (now codified at 49 U.S.C. § 40401 (1994)), which amended the Federal Aviation Act of 1958(FAA), Pub.L. No. 85-726, 72 Stat. 731 (1958). Through the 1978 amendments, Congress sought to deregulate domestic air transportation. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992). Congress believed that deregulation would encourage competition in the market, which most effectively would foster low prices, high quality, and increase the variety of services provided by airlines. *Id.* Out of a concern that the States would attempt to "undo federal deregulation with regulation of their own," Congress included in the ADA a preemption provision. *Id.*; *see* 49 U.S.C. § 1305(a)(1) (1978) (now codified at 49 U.S.C. 41713(b)(1) (1994)). In 1994 Congress reenacted the ADA, and revised the preemption clause to read:

*10 [A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."

49 U.S.C. 41713(b)(1) (1994); *see also American Airlines, Inc. v. Wolens,* 513 U.S. 219, 223 (1995).

The question presented in the Defendant's Motion with respect to the third claim is whether an action for fraud and deceit arising out of the Defendant's handling of the Plaintiffs' lost baggage claims is "related to a price, route, or service of an air carrier." The Court concludes that this action is related to a service of the Defendant, and thus is preempted by the ADA.

Two Supreme Court decisions have considered the preemption clause of the ADA. *See Wolens,* 513 U.S. 219; *Morales,* 504 U.S. 381. In *Morales v. Trans World Airlines, Inc.,* the Supreme Court considered whether the ADA preempted state enforcement of guidelines governing the content and format of airline advertising, frequent flyer programs, and compensation for passengers whose seats were lost due to over booking because such guidelines related to the airlines rates. *Morales,* 504 U.S. at 385-89. The Court concluded that the guidelines did relate to airline rates. In so concluding, the Court broadly construed the phrase "related to." *Id.* at 383.

In *Wolens,* the Court considered whether the ADA preempted an action against the airline for a violation of the Illinois Consumer Fraud and Deceptive Business Practice Act and for breach of contract. The Court held that the claim pursuant to the Illinois statute was preempted by the ADA because it "serves as a means to guide and police the marketing practices of the airlines." *Id.* In contrast, the Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

found that the ADA did not preempt "state-law based court adjudication of routine breach of contract claims." *Id.* at 232. The Court stated that "the distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state law or policies external to the agreement." *Id.* at 233.

*Morales and Wolens* dictate that the Plaintiffs' claims are preempted only if the action is based on state law, not contract principles, and if the "action relate[s] to a route, rate, or service, either by expressly referring to them or by having a significant economic effect upon them." *See Chrissafis v. Continental Airlines,* 940 F.Supp. 1292, 1297 (N.D.Ill.1996); *see also Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423, 1432 (7th Cir.1996). In the Opposition to the Motion for Partial Summary Judgment, the Plaintiffs specifically argue that the action is based on common law deceit. Thus, the Plaintiffs state not a breach of contract claim, but an action that derives from the enforcement of state tort law. *See Chrissafis,* 940 F.Supp. at 1298. Given that the Plaintiffs' claims are not contract claims, the most obvious basis for rejecting the Defendant's preemption argument does not exist. Accordingly, the Court must consider whether the claims relate to services as defined in *Morales* and *Wolens.*

*11 In the cases relied upon by the Plaintiffs, the courts found that the challenged conduct does not relate to a service as defined in *Morales* and *Wolens*. In *Hodges v. Delta Airlines, Inc.* 44 F.3d 334, 338 (5th Cir.1995), the court provided a definition of services:
Services generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to deregulate as "services" and broadly to protect from state regulation.

*Hodges v. Delta Airlines,* 44 F.3d 334 (5th Cir.1993) (en banc) (quoting *Hodges v. Delta Airlines, Inc.,* 4

F.3d 350, 354 (5th Cir.1993). The *Hodges* court held, however, that Congress did not intend to preempt personal injury claims that arise out of the negligent operation or maintenance of an aircraft given that the ADA requires airlines to carry insurance for bodily injuries or property damage arising out of the operation or maintenance of the aircraft. *Id.* at 338. The *Hodges* court concluded that the negligent storage of overhead baggage had no specific reference to airline services. *Id.* at 339-40. Furthermore, the court found that allowing the negligence claimto proceed would not significantly affect the airline's services. *Id.* at 340.

In *Gee v. Southwest Airlines,* 110 F.3d 1400, 1406 (9th Cir.1997), the Ninth circuit distinguished between "emotional injury claims stemming from the 'negligent rendition of service' [and] safety-related personal injury or death claims concerning airline operations or maintenance." *Id.* The *Gee* court concluded that claims for injuries from being hit with a serving cart were not preempted because they were not related to a service, but arose out of "the failure to take appropriate safety measures relating to the operation of the aircraft." *Id.* at 1407. Consequently, the *Gee* court held that injuries from baggage falling out of the overhead compartment arose from the safe operation of the flight, and therefore were not preempted. *Id. See also Wolens,* 513 U.S. at 231 n. 7 ("American does not urge that the ADA preempts personal injury claims relating to airline operations).

Similarly, *Lathigra v. British Airways PLC,* 41 F.3d 535, 540 (9th Cir.1994), held that the negligent reconfirmation of a connecting flight had " 'too tenuous, remote, or peripheral' an effect on air carrier services for the [ADA] to preempt it." *Id.* (quoting *Morales,* 504 U.S. at 390); *see also Romano v. American Trans Air,* 56 Cal.Rptr.2d 428, 432 (1996) (holding that negligence action for airline attendant's failure to restrain passenger from assaulting another passenger did not "intrude upon or affect the [ ] regulation of air fares and other rates, routes or services" and was not preempted).

*12 In the instant case, the Plaintiffs' claims do not arise out of the operation or maintenance of the aircraft. Thus, two of the cases that the Plaintiffs rely upon are inapposite to the instant case. *See Gee v. Southwest Airlines,* 110 F.3d 1400 (9th Cir.1997) (finding that injury suffered by cart striking the plaintiff was not related to a service, but was "connected with the failure to take appropriate safety measures relating to the operation of the aircraft"); *Hodges v. Delta Airlines,* 44 F.3d 334 (5th Cir.1995)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Page 10

(holding that negligent storage of baggage in overhead compartment derives from the operation of the aircraft, and therefore is not preempted.)

Furthermore, the Plaintiffs' claims against the Defendant, unlike those in *Lathigra* and *Romano,* arise directly out of the bargained for services of providing transportation of luggage. Passengers who travel on an airline and check luggage with the airline expect the airline to transport that luggage to the passengers' destinations. If the luggage does not arrive with the passenger, then the passenger expects that the airline will attempt to locate the luggage, thus fulfilling its obligation to transport the luggage. Requiring notice of the fact that one's luggage did not arrive is but the first step for the airline to meet its obligation to successfully and safely transport the passenger's luggage. Thus, a challenge to the notification requirements of the airline directly affects the airline's obligation and ability to provide the service of luggage transportation.

The Court concludes that the Plaintiffs' claims directly refer to the Defendant's services, and therefore their claims are distinguishable from the cases that they cite. To the extent that the Plaintiffs argue that this issue is not ripe for summary judgment because there are material issues involving the intent of the Defendant, the Court rejects that argument. "[T]he proper examination under *Morales,* is not why the airline refused to provide its services, but whether the claims at issue either expressly refer to the airline's services (which they clearly do) or would have a significant economic effect on the airline's services." *Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423 (7th Cir.1996) (holding that intentional tort claims brought by travel agency when airlines refused to transport passengers who purchased tickets from agency were related to services, and thus preempt, notwithstanding argument that the actions were part of "vengeful and ongoing course of conduct.")

The Plaintiffs' Claim III is preempted by the ADA, and therefore the Defendant is entitled to Summary Judgment. Based on this conclusion, the Court does not need to reach the other grounds for dismissal of this claim cited in the Defendant's Motion for Partial Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court will GRANT the Defendant's Motion for Partial Summary Judgment as

to Claim I; will DISMISS Claim II; and will GRANT the Defendant's Motion for Summary Judgment as to Claim III. The Court shall issue an Order consistent with the foregoing Memorandum Opinion.

## ORDER

*13 Upon consideration of the Defendant's Motion for Partial Summary Judgment and for Other Appropriate Relief, the Opposition thereto, the Reply, the arguments at the hearing on September 15, 1997, the entire record herein, and the relevant law, it is this *24* day of October, 1997, hereby

ORDERED that the Defendant's Motion for Partial Summary Judgment (# 15-1) is GRANTED as to Claims I and III for the reasons stated in the accompanying Memorandum Opinion; and it is

FURTHER ORDERED that Claim II is DISMISSED pursuant to Fed.R.Civ.P. 12(b)(1) for the reasons stated in the accompanying Memorandum Opinion; and it is

FURTHER ORDERED that Judgment is entered in favor of the Defendant as to Claim III; and it is

FURTHER ORDERED that the parties shall file any additional dispositive motions with respect to Claim I no later than October 30, 1997, and if no such motions are filed, the parties shall appear before the Court on November 7, 1997, at 10:30 a.m.; and it is

FURTHER ORDERED that Plaintiffs' Motion for Leave to File Second Amended Complaint (# 12) is rendered MOOT by this Order; and it is

FURTHER ORDERED that Plaintiffs' Motion to Strike Notice of Authorities (# 30) is GRANTED.

D.D.C.,1997.
Cruz v. American Airlines, Inc.
Not Reported in F.Supp., 1997 WL 33441909 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:96cv02817 (Docket) (Dec. 20, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 2**

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 2002 WL 31305208 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Dugan v. FedEx Corp.C.D.Cal.,2002.Only the
Westlaw citation is currently available.
United States District Court,C.D. California.
John DUGAN. et al.
v.
FEDEX CORPORATION, etc.
**No. CV 02-1234-JFWFMOX.**

Sept. 26, 2002.
Sept. 27, 2002.

Customers of air carrier brought putative class action
against air carrier, to recover for damages to contents
of their packages which occurred during shipment.
Carrier moved for judgment on the pleadings as to
the claims of named class representatives, and for
dismissal of claims of putative class without
prejudice. The District Court, Walter, J., held that: (1)
state law claims were preempted by Airline
Deregulation Act; (2) airbill and service guide gave
customers reasonable notice of carrier's limited
liability; and (3) airbill and service guide offered
customers fair opportunity to purchase separate
insurance.

Motions granted.
West Headnotes
**[1] Antitrust and Trade Regulation 29T €═►132**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and
Consumer Protection
        29TIII(A) In General
            29Tk132 k. Preemption. Most Cited Cases
            (Formerly 92Hk36.1 Consumer Protection)

**Fraud 184 €═►31**

184 Fraud
    184II Actions
        184II(A) Rights of Action and Defenses
            184k31 k. Nature and Form of Remedy.
Most Cited Cases

**Implied and Constructive Contracts 205H €═►3**

205H Implied and Constructive Contracts
    205HI Nature and Grounds of Obligation
        205HI(A) In General

            205Hk2 Constructive or Quasi Contracts
                205Hk3 k. Unjust Enrichment. Most
Cited Cases

**Insurance 217 €═►3415**

217 Insurance
    217XXVIII Miscellaneous Duties and Liabilities
        217k3415 k. In General. Most Cited Cases

**States 360 €═►18.15**

360 States
    360I Political Status and Relations
        360I(B) Federal Supremacy; Preemption
            360k18.15 k. Particular Cases, Preemption
or Supersession. Most Cited Cases
Customers' state law claims against air carrier for
unfair business practices, unlicensed sale of
insurance, negligent misrepresentation, intentional
misrepresentation, and unjust enrichment, arising
from air carrier's contract limiting its liability for
damage to contents of customers' packages which
occurred during shipment were preempted by the
Airline Deregulation Act;  Act provided that states
could not enact laws relating to service of an air
carrier. 49 U.S.C.A. § 41713(b)(1).

**[2] Carriers 70 €═►153**

70 Carriers
    70II Carriage of Goods
        70II(H) Limitation of Liability
            70k151 Mode or Form of Limitation
                70k153 k. Bill of Lading or Shipping
Receipt. Most Cited Cases
Air carrier's airbill and service guide offered
customers reasonable notice of limited liability of air
carrier, barring customers' action to recover for
additional loss above liability limits which resulted
from damage to contents of customers' packages
during shipment;  airbill contained conspicuous
notice on front directing customer to terms and
conditions limiting liability printed on reverse side,
back side of notice contained unambiguous liability
limitation provisions, and incorporated by reference a
service guide that was readily available and written in
plain language, and customers alleged that they were
experienced shippers who often used carrier's service
to send packages for their business, so that customers
had ample time to inspect airbill.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31305208 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

|3| Carriers 70 ☞153

70 Carriers
   70II Carriage of Goods
      70II(H) Limitation of Liability
         70k151 Mode or Form of Limitation
            70k153 k. Bill of Lading or Shipping
Receipt. Most Cited Cases
Air carrier's airbill and service guide offered customers fair opportunity to purchase separate insurance, in light of carrier's limited liability, barring customers' action to recover against carrier for additional loss above liability limit which resulted from damage to contents of customers' packages which contained items of extraordinary value; carrier's airbill and service guide limited carrier's liability to $500 for items of extraordinary value, and specifically advised customers that they had choice to separately purchase insurance when shipping items of extraordinary value, and that carrier would not provide insurance of any kind.

K. Leigh Ray, Courtroom Deputy, Present for Plaintiffs.

PRESENT: Honorable JOHN F. WALTER, U.S. District Judge.

PROCEEDINGS (IN CHAMBERS): ORDER GRANTING DEFENDANT FEDERAL EXPRESS CORPORATIONS MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE CLAIMS OF THE NAMED PLAINTIFFS AND TO DISMISS THE CLAIMS OF THE PUTATIVE CLASS WITHOUT PREJUDICE

WALTER, J.
*1 On July 30, 2002, Defendant Federal Express Corporation filed a Motion For Judgment On The Pleadings As To The Claims Of The Named Plaintiffs And To Dismiss The Claims Of The Putative Class Without Prejudice. On August 12, 2002, Plaintiffs John Dugan and Jerry Wallace filed their Opposition. On August 19, 2002, Defendant filed a Reply. The Court found the matter appropriate for submission on the papers without oral argument. *See* Local Rule 7-15 (the Court may dispense with oral argument on any matter unless otherwise required); Fed.R.Civ.P. 78. The matter was, therefore, removed from the Court's September 23, 2002 hearing calendar and the parties were given advance telephonic notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court orders as follows:

I. *Legal Standard*

A motion for judgment on the pleadings is a vehicle for summary adjudication, but the standard is like that of a motion to dismiss. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989). It is "functionally identical" to a motion to dismiss for failure to state a claim; the only significant difference is that a 12(c) motion is properly brought "after the pleadings are closed and within such time as not to delay the trial." Fed.R.Civ.P. 12(c); *Dworkin,* 867 F.2d at 1192; *see also* William Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § § 9:319-323.

The Court may grant judgment on the pleadings "when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir.1996); *Baker v. Citibank (S.D.) N.A.,* 13 F.Supp.2d 1037, 1044 (S.D.Cal.1998). The Court must assume the truthfulness of all material facts alleged and construe all inferences reasonably to be drawn from the facts in favor of the responding party. *General Conference Corp. of Seventh-Day Adventist v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989); *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.1988); *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

II. *Facts*

A. *The Terms Of Defendant's Airbills And Service Guide*

When shipping a package through Defendant, a customer must complete and submit an Airbill.[FN1] (FAC ¶ 2; Exhs. 7-10 to Bridwell Decl.) The front of each Airbill has a space for the customer to insert the "Total Declared Value" and states: "Our liability is limited to $100 unless you declare a higher value." (*Id.*) The front of each Airbill also states: "By using this Airbill, you agree to the conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability." (Exhs. 7-10 to Bridwell Decl.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31305208 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

FN1. "[W]hen [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994) (holding "that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss"). Since Plaintiffs' First Amended Class Action Complaint For Damages ("FAC") specifically alleges the contents of Defendant's Airbills and Service Guide and Plaintiff made no objections to the authenticity of the Airbills or Service Guide attached to the Declaration of Bonnie Bridwell, the Court will consider these documents in ruling on Defendant's Motion.

The back of each Airbill contains the "Terms and Conditions" for shipment and states, *inter alia:*
*2 Agreement To Terms By giving us your package to deliver, you agree to all the terms on this Airbill and in our current Service Guide, which is available on request. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the Service Guide and this Airbill, the Service Guide will control. No one is authorized to change the terms of our Agreement.

Limitations On Our Liability And Liabilities Net Assumed
• Our liability in connection with this shipment is limited to the lesser of your actual damages or $100, unless you declare a higher value, pay an additional charge, and document your actual loss in a timely manner. You may pay an additional charge for each additional $100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

Declared Value Limits
• The highest declared value allowed for FedEx letter and FedEx Pak shipments is $500.
• For other shipments, the highest declared value allowed is $50,000 unless your package contains items of "extraordinary value," in which case the highest declared value allowed is $500.
• Items of "extraordinary value" include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in our Service Guide.

Page eighty of Defendant's Service Guide contains a section titled "Declared Value And Limits Of Liability." (Exh. 1 to Bridwell Decl.). Section A of the Declared Value And Limits Of Liability section provides: "Exposure to risk of any loss in excess of the declared value is either assumed by the shipper or transferred by the shipper to an insurance carrier through the purchase of an insurance policy. You should contact an insurance agent or broker if you desire insurance coverage. WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND." (*Id.*) Section G of the Declared Value and Limits Of Liability section states: "Packages ... containing all or part of the following items are limited to a maximum declared value of $500." (*Id.*) Various items are listed under Section G, including artwork, glassware, antiques, film, and "[a]ny commodity that by its inherent nature is particularly susceptible to damage, or the market value of which is particularly variable or difficult to ascertain." (*Id.*) Section N of the Declared Value And Limits Of Liability section states:
ANY EFFORT TO DECLARE A VALUE IN EXCESS OF THE MAXIMUMS ALLOWED IN THIS SERVICE GUIDE IS NULL AND VOID AND THE ACCEPTANCE FOR CARRIAGE OF ANY SHIPMENT BEARING A DECLARED VALUE IN EXCESS OF THE ALLOWED MAXIMUMS DOES NOT CONSTITUTE A WAIVER OF ANY PROVISION OF THIS SERVICE GUIDE AS TO SUCH SHIPMENT. EVEN IF A HIGHER VALUE IS DECLARED, OUR LIABILITY FOR LOSS, DAMAGE OR DELAY WILL NOT EXCEED A SHIPMENT'S REPAIR COST, ITS DEPRECIATED VALUE OR ITS REPLACEMENT COST, WHICHEVER IS LESS.

B. *Facts Relevant To Claims Of The Named Plaintiffs*

*3 Plaintiff John Dugan is in the antique and fine art business and often uses Defendant to ship numerous packages to customers. (FAC ¶ 9.) On October 11, 2000, Dugan shipped two lamps, in separate packages, via Defendant. (*Id.*) Dugan declared a value of $23,500 for the lamps, for which Defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31305208 (C.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

charged Dugan a "Declared Value Charge" of $117.50. (*Id.*) The lamps were ultimately damaged in transit, and Dugan submitted a claim to Defendant for the loss. (*Id.*) Defendant refused to pay the full declared value of the lamps because such items were of "extraordinary value," and, thus, ineligible for a declared value in excess of $500 pursuant to Defendant's Service Guide. (*Id.*)

Plaintiff Jerry Wallace often uses Defendant in both his business and personal life to send packages. (*Id.* at ¶ 10.) On October 23, 2001, Wallace shipped a mechanical doll via Defendant. (*Id.*) Wallace declared the doll's value as $50,000, for which Defendant charged Wallace a Declared Value Charge of $249. (*Id.*) The doll was ultimately damaged in transit, and Wallace submitted a claim to Defendant for the loss. (*Id.*) Defendant refused to pay the full declared value of the doll because it was of "extraordinary value," and, thus, ineligible for a declared value in excess of $500 pursuant to Defendant's Service Guide. (*Id.*)

## II. *Discussion*

### A. *Plaintiffs' State Law Claims For Relief Are Preempted By The Airline Deregulation Act Of 1978, 49 U.S.C. § 41713(b)(1).*

[1] Plaintiffs' FAC alleges five claims for relief: (1) Unfair business practices, California Business & Professions Code § 17200; (2) Unfair business practices-unlicensed sale of Insurance, California Business & Professions Code § 17200; (3) Negligent misrepresentation; (4) Intentional misrepresentation; and (5) Unjust enrichment. The Airline Deregulation Act Of 1978 (the "ADA"), 49 U .S.C. § 41713(b)(1), provides: "States may not enact or enforce a law, regulation, or other provision having the force and effect of law relating to a price, route, or service of an air carrier." Interpreting this provision, the Ninth Circuit has held that "state law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the ADA." *Read-Rite Corporation v. Burlington Air Express, Ltd.,* 186 F.3d 1190, 1197 (9th Cir.1999). Accordingly, Plaintiffs' state law claims for relief are preempted.

### B. *Plaintiffs Cannot State A Claim Under Federal Common Law*

In *Read-Rite,* the Ninth Circuit held: "[b]ecause the

imposition of state standards to decide whether contractual limits on liability are enforceable is contrary to the language, intent, and purpose of the federal policy embodied in the ADA, we apply federal common law to this question." *Id.* Although Plaintiffs' FAC alleges only state law claims for relief, Plaintiffs argue that they have pled sufficient facts to state a claim for relief under federal common law. (Plaintiffs' Opposition p. 1.) "A complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory ." *Haddock v. Board of Dental Examiners of California,* 777 F.2d 462, 464 (9th Cir.1985). Thus, the Court will consider whether Plaintiffs pled sufficient facts to state a claim for relief under federal common law.

*4 Under the released valuation doctrine of federal common law, "carriers may partially limit their liability for injury, loss, or destruction of baggage on a 'released valuation' basis." *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1365 (9th Cir.1987). In *Read-Rite,* the Ninth Circuit explained the test for determining whether a carrier's limited liability provisions are enforceable under the released valuation doctrine:

[I]f a carrier wishes to enforce a limited liability provision, its contract must offer the shipper (1) reasonable notice of limited liability, and (2) a fair opportunity to purchase higher liability. Limited liability provisions are prima facie valid if the face of the contract ... recites the liability limitation and the means to avoid it. The burden then shifts to the shipper to prove that it did not have a "fair opportunity" to purchase greater liability coverage. *Read-Rite,* 186 F.3d at 1198 (citations and quotations omitted).

### 1. *Defendant's Airbills And Service Guide Offered Plaintiffs Reasonable Notice Of Limited Liability.*

[2] A two step analysis is used to determine whether limited liability provisions are sufficiently plain and conspicuous to give reasonable notice of their meaning. *Sam L. Majors Jewellers v. ABX, Inc.,* 117 F.3d 922, 930 (5th Cir.1997) citing *Deiro,* 816 F.2d at 1364. "[F]irst, the physical characteristics of the airbill are to be examined to determine whether they provide reasonable notice to the customer." *Id.* "The second factor to consider is the conditions under which the shipment was made." *Id.* Regarding the second factor, "[t]he conditions to be considered include the familiarity with the ticket, the time and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31305208 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.*

In *Sam L. Majors,* the Fifth Circuit held that an airbill, which is nearly identical to Defendant's Airbills in this case, effectively limited an air carrier's liability and precluded a customer from recovering for its loss. *Id.* at 931. Like the airbill in *Sam L. Majors,* Defendant's Airbills contain "a conspicuous notice on the front directing the customer to the terms and conditions printed on the reverse of the document. This provision provided adequate notice of the easily understood terms on the reverse side. In addition, the back of the notice incorporated by reference a service guide that was readily available, and written in plain language." *Id.* at 930; (Exhs. 1 & 7-10 to Bridwell Decl.).

Plaintiffs' FAC specifically alleges that "Dugan is in the antique and fine arts business and often uses FedEx to ship numerous packages to customers." (FAC ¶ 9.) Plaintiffs' FAC also alleges that "Wallace often uses FedEx in both his business and personal life to send packages." (FAC ¶ 10.) Thus, like the plaintiff in *Sam L. Majors,* Plaintiffs are "experienced shipper[s]" and "had ample time to inspect the airbill." *Sam L. Majors,* 117 F.3d at 930; *see also King Jewelry, Inc. v. Federal Express Corp.,* 166 F.Supp.2d 1280, 1285 (C.D.Cal 2001) (applying the reasoning of *Sam L. Majors* and finding that Federal Express Corporation's airbills provided sufficient notice to an experienced shipper to preclude liability under federal common law). Accordingly, Defendant's Airbills provided reasonable notice of limited liability to Plaintiffs.

*2. Defendant's Airbills And Service Guide Offered Plaintiffs A Fair Opportunity To Purchase Higher Liability*

**\*5 [3]** "The function of the federal common law rule requiring notice of limited liability is to insure that the shipper has an opportunity to make an informed choice between, on the one hand, shipping at a lower cost with limited liability, and, on the other, *separately purchasing insurance or* shipping at a higher cost without limited liability." *Read-Rite,* 186 F.3d at 1198 (emphasis added). Here, Defendant's Airbills and Service Guide specifically advise shippers that they have the choice of separately purchasing insurance when shipping items of extraordinary value: "Exposure to and risk of any loss in excess of the declared value is either assumed

by the shipper or transferred by the shipper to an insurance carrier through the purchase of an insurance policy. You should contact an insurance agent or broker if you desire insurance coverage. WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND." (Exh. 1 to Bridwell Decl.) Further, nothing in Plaintiffs' complaint suggests that Defendant did not give Plaintiffs a fair opportunity to separately purchase insurance. *See Read-Rite,* 186 F.3d at 1198 (It is the plaintiff's burden to "prove that it did not have a 'fair opportunity' to purchase greater liability coverage"). In fact, Plaintiffs' only argument is that they were never afforded a fair opportunity to purchase separate insurance because they were misled by Defendant's limited liability provisions. However, as discussed above, Defendant's limited liability provisions provided Plaintiffs with the reasonable notice required under federal common law. Accordingly, Defendant's Airbills and Service Guide offered Plaintiffs a fair opportunity to purchase higher liability.

### III. *Conclusion*

For the reasons stated above, the Court finds that, taking all allegations in the pleadings as true, Defendant is entitled to judgment against Plaintiffs Dugan and Wallace as a matter of law.

Accordingly, the Court GRANTS Defendant Federal Express Corporation's Motion For Judgment On The Pleadings As To The Claims Of The Named Plaintiffs And To Dismiss The Claims Of The Putative Class Without Prejudice.

IT IS SO ORDERED.

C.D.Cal.,2002.
Dugan v. FedEx Corp.
Not Reported in F.Supp.2d, 2002 WL 31305208 (C.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2:02CV01234 (Docket) (Feb. 08, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 3**

CHGO1\30866712.1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

▷
Briefs and Other Related Documents
In re Northwest Airlines Privacy
LitigationD.Minn.,2004.Only the Westlaw citation is
currently available.
United States District Court,D. Minnesota.
In re NORTHWEST AIRLINES PRIVACY
LITIGATION
No. Civ.04-126(PAM/JSM).

June 6, 2004.

Eric James Belfi, Murray Frank & Sailer LLP, New
York, NY, Garrett D. Blanchfield, Jr., Mark
Reinhardt, Reinhardt Wendorf & Blanchfield, St
Paul, MN, Richard J. Fuller, Seymour J. Mansfield,
Mansfield Tanick & Cohen, Mpls, MN, Robert M.
Rothman, Samuel H. Rudman, Geller Rudman
PLLC, Melville, NY, for Plaintiffs.
Daniel James Brown, Theresa Marie Bevilacqua,
Thomas W. Tinkham, Dorsey & Whitney, Mpls, MN,
for Defendants.

MEMORANDUM AND ORDER
MAGNUSON, J.
**\*1** This matter is before the Court on a Motion to
Dismiss filed by Defendants Northwest Airlines
Corporation and Northwest Airlines, Inc.
(collectively, "Northwest"). Seven putative class
actions have been consolidated into a master case,
and the Motion to Dismiss applies to the Amended
Consolidated Class Action Complaint filed in the
consolidated matter. After the Motion to Dismiss was
filed, Plaintiffs sought a stay because the Judicial
Panel on Multidistrict Litigation is considering a
motion in a related case to consolidate all similar
cases nationwide. As stated at the hearing, however,
the Court will not stay this matter. For the reasons
that follow, the Court finds that Plaintiffs have failed
to state any claims on which relief can be granted,
and the Court therefore dismisses all of the individual
Complaints.

BACKGROUND

Plaintiffs are customers of Defendant Northwest
Airlines, Inc. ("Northwest"). After September 11,
2001, the National Aeronautical and Space
Administration ("NASA") requested that Northwest

provide NASA with certain passenger information in
order to assist NASA in studying ways to increase
airline security. Northwest supplied NASA with
passenger name records ("PNRs"), which are
electronic records of passenger information. PNRs
contain information such as a passenger's name,
flight number, credit card data, hotel reservation, car
rental, and any traveling companions.

Plaintiffs contend that Northwest's actions constitute
violations of the Electronic Communications Privacy
Act ("ECPA"), 18 U.S.C. § 2701 et seq., the Fair
Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681,
and Minnesota's Deceptive Trade Practices Act
("DTPA"), Minn.Stat. § 325D.44, and also constitute
invasion of privacy, trespass to property, negligent
misrepresentation, breach of contract, and breach of
express warranties. The basis for most of Plaintiffs'
claims is that Northwest's website contained a
privacy policy that stated that Northwest would not
share customers' information except as necessary to
make customers' travel arrangements. Plaintiffs
contend that Northwest's provision of PNRs to NASA
violated Northwest's privacy policy, giving rise to the
legal claims noted above.

Northwest has now moved to dismiss the Amended
Consolidated Class Action Complaint (hereinafter
"Amended Complaint"). Northwest contends that
Plaintiffs cannot make out a claim under either the
ECPA or the FCRA, that some of Plaintiffs' claims
are preempted by the Airline Deregulation Act, 49
U.S.C. § 41713(b)(1), and that the remainder of
Plaintiffs' claims fail as a matter of law.

DISCUSSION

A. Standard of Review

When analyzing a motion to dismiss under Rule
12(b)(6) of the Federal Rules of Civil Procedure, the
Court must construe the allegations in the pleadings
and make all reasonable inferences arising from the
pleadings in favor of the non-moving party. Morton
v. Becker, 793 F.2d 185, 187 (8th Cir.1986). The
Court should not, however, "blindly accept the legal
conclusions drawn by the pleader from the facts." Id.
A motion to dismiss will be granted only if "it
appears beyond doubt that the [non-movants] can

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

prove no set of facts which would entitle [them] to relief." *Id.; see also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

B. The Electronic Communications Privacy Act

**\*2** The ECPA prohibits a person or entity from (1) intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or
(2) intentionally exceeds an authorization to access that facility;
and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished....

18 U.S.C. § 2701(a). Plaintiffs argue that Northwest's access to its own electronic communications service is limited by its privacy policy, and that Northwest's provision of PNRs to NASA violated that policy and thus constituted unauthorized access to the "facility through which an electronic communication service is provided" within the meaning of this section. Plaintiffs also allege that Northwest violated § 2702 of the ECPA, which states that "a person or entity providing an electronic communications service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

Northwest argues first that it cannot violate § 2702 because it is not a "person or entity providing an electronic communications service to the public." Plaintiffs contend that, because the Amended Complaint alleges that Northwest is a provider of electronic communications service, and because the Court must accept the facts in the Amended Complaint as true, Northwest's Motion to Dismiss must fail.

Plaintiffs misapprehend the nature of the inquiry on a Motion to Dismiss. Although the Court must accept as true the well-pleaded facts in the Amended Complaint, the Court need not, and indeed should not, accept as true the legal conclusions the Amended Complaint draws from the facts. *See Morton,* 793 F.2d at 187. Whether Northwest is a provider of electronic communications service is a legal question, not a factual issue.

Defining electronic communications service to include online merchants or service providers like

Northwest stretches the ECPA too far. Northwest is not an internet service provider. In fact, Northwest purchases its electronic communications service from a third party, Worldspan. Under these circumstances, Northwest is simply not an electronic communications service provider, and therefore cannot violate § 2702. *See, e.g., Crowley v. CyberSource Corp.,* 166 F.Supp.2d 1263 (N.D.Cal.2001) (finding online retailer not electronic communications service provider because retailer purchased electronic communications service from provider and did not independently provide such service to public).

Similarly, Northwest's conduct as outlined in the Amended Complaint does not constitute a violation of § 2701. Plaintiffs' claim is that Northwest improperly disclosed the information in PNRs to NASA. Section 2701 does not prohibit improper disclosure of information. Rather, this section prohibits improper access to an electronic communications service provider or the information contained on that service provider. There is no dispute that Northwest obtained Plaintiffs' personal information properly, in the ordinary course of business. Plaintiffs' complaint is not with how Northwest obtained the information, but with how Northwest subsequently used the information. Because § 2701 does not speak to the use of the information, it does not apply and Plaintiffs' claims under § 2701 fail as a matter of law.

C. The Fair Credit Reporting Act

**\*3** The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). Plaintiffs encourage the Court to apply the FCRA liberally, to further the remedial purposes of the statute. As with Plaintiffs' claims under the ECPA, however, Plaintiffs' FCRA claims require not liberal application of the statute, but wholesale disregard of the statute's purposes and definitions.

Plaintiffs contend that Northwest violated the FCRA by furnishing PNRs to NASA without first obtaining Plaintiffs' written consent to do so. (Am. Compl. ¶ 88; 15 U.S.C. § 1681b(a)(2).) This allegation presupposes that Northwest or Worldspan is a "consumer reporting agency" and that PNRs are "consumer reports" within the meaning of the statute.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

The FCRA defines "consumer reporting agency" as any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties....

15 U.S.C. § 1681a(f). Under no possible interpretation of this definition is Northwest a "consumer reporting agency." Worldspan may be a "consumer reporting agency," but only if the PNRs Worldspan maintains for Northwest constitute "consumer reports." The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for-
(A) credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 1681b of this title.

Id. § 1681a(d).

Even accepting as true Plaintiffs' allegations regarding what information is contained in PNRs, PNRs do not constitute "consumer reports" within the definition of the FCRA. At most, a PNR contains information about a consumer's credit card, including perhaps the consumer's balance on that credit card. This limited information cannot fairly be said to be information "bearing on a consumer's credit worthiness, credit standing, [or] credit capacity." Similarly, information such as dietary restrictions and traveling partners is not information on the consumer's "personal characteristics[ ] or mode of living." The FCRA does not apply to the information contained in PNRs. Plaintiffs' claims under the FCRA fail as a matter of law.

### D. State- and Common-Law Claims

#### 1. Preemption

Northwest argues that Plaintiffs' claims under the DTPA and for negligent misrepresentation are preempted by the Airline Deregulation Act ("ADA"),

49 U.S.C. § 41713(b). This section provides that "a State ... may not enact or enforce a law ... related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The scope of this preemption provision is undisputedly broad, and applies to preempt Plaintiffs' claims if those claims relate to a "price, route, or service" of Northwest.

*4 The Supreme Court has determined that a law or claim "relates to" a price, route, or service if that claim has a "connection with or reference to" an airline's rates, routes, or services. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The Court has further elucidated that the preemption provision "bars state-imposed regulation of air carriers." Am. Airlines, Inc. v. Wolhens, 513 U.S. 219, 222, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In the Wolhens case, the Court determined that the ADA preempted the plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act. Northwest argues that Plaintiffs' claims under the Minnesota DTPA and for negligent misrepresentation are almost indistinguishable from the claims found to be preempted in Wolhens .

The Wolhens Court noted that "the potential for intrusive regulation of airline business practices [is] inherent in state consumer protection legislation," such as the Minnesota Deceptive Trade Practices Act. Id. at 227-28. Plaintiffs contend that the Wolhens matter involved an airline's marketing practices, while their claims here involve an airline's privacy policy. This distinction is not persuasive, however. Plaintiffs' claim that Northwest's failure to abide by its privacy policy when providing services to customers on its website violates the DTPA is strikingly similar to the plaintiffs' claims in Wolhens that the airline violated its own policies by changing its frequent flyer program. Plaintiffs' claims under the DTPA at the least relate to Northwest's services and are preempted by the ADA. Similarly, Plaintiffs' negligent misrepresentation claim, which raises the same contentions raised in their DTPA claim, is preempted by the ADA.

#### 2. Remaining Claims

Finally, Northwest argues that Plaintiffs' remaining claims fail to state a claim on which relief can be granted. These claims are: trespass to property, intrusion upon seclusion, breach of contract, and breach of express warranties.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

### a. *Trespass*

To state a claim for trespass to property, Plaintiffs must demonstrate that they owned or possessed property, that Northwest wrongfully took that property, and that Plaintiffs were damaged by the wrongful taking. *H. Christiansen & Sons, Inc. v. City of Duluth*, 225 Minn. 475, 31 N.W.2d 270, 274 (Minn.1948). Plaintiffs contend that the information contained in the PNRs was Plaintiffs' property and that, by providing that information to NASA, Northwest wrongfully took that property.

As a matter of law, the PNRs were not Plaintiffs' property. Plaintiffs voluntarily provided some information that was included in the PNRs. It may be that the information Plaintiffs provided to Northwest was Plaintiffs' property. However, when that information was compiled and combined with other information to form a PNR, the PNR itself became Northwest's property. Northwest cannot wrongfully take its own property. Thus, Plaintiffs' claim for trespass fails.

### b. *Intrusion Upon Seclusion*

\*5 Intrusion upon seclusion exists when someone "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn.1998) (quoting Restatement (Second) of Torts § 625B). Thus, to make out a claim for intrusion upon seclusion, Plaintiffs must show that the alleged intrusion would be highly offensive to a reasonable person. The Court may properly preliminarily determine whether the alleged intrusion is sufficiently offensive to state a claim for intrusion upon seclusion. *Bauer v. Ford Motor Credit Co.*, 149 F.Supp.2d 1106, 1109 (D.Minn.2001) (Doty, J.). When making this determination, the Court should consider the "degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* (citation omitted).

In this instance, Plaintiffs voluntarily provided their personal information to Northwest. Moreover, although Northwest had a privacy policy for information included on the website, Plaintiffs do not contend that they actually read the privacy policy prior to providing Northwest with their personal information. Thus, Plaintiffs' expectation of privacy was low. Further, the disclosure here was not to the public at large, but rather was to a government agency in the wake of a terrorist attack that called into question the security of the nation's transportation system. Northwest's motives in disclosing the information cannot be questioned. Taking into account all of the factors listed above, the Court finds as a matter of law that the disclosure of Plaintiffs' personal information would not be highly offensive to a reasonable person and that Plaintiffs have failed to state a claim for intrusion upon seclusion.

### c. *Breach of Contract and Express Warranty*

Northwest contends that the privacy policy on Northwest's website does not, as a matter of law, constitute a unilateral contract, the breach of which entitles Plaintiffs to damages. Northwest also argues that, even if the privacy policy constituted a contract or express warranty, Plaintiffs' contract and warranty claims fail because Plaintiffs have failed to plead any contract damages.

Whether a person's statements constitute a unilateral contract is a question of law for the Court to determine. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 740 (Minn.2000). Plaintiffs' rely on the following statement from Northwest's website as the basis for their contract and warranty claims:
When you reserve or purchase travel services through Northwest Airlines nwa.com Reservations, we provide only the relevant information required by the car rental agency, hotel, or other involved third party to ensure the successful fulfillment of your travel arrangements.

\*6 (Compl.¶ 49.) As noted above, Plaintiffs do not allege that they actually read this privacy statement prior to providing Northwest with their personal information, although they do generally allege that they "relied to their detriment" on this policy. (*Id.* ¶ 136.)

The usual rule in contract cases is that "general statements of policy are not contractual." *Martens*, 616 N.W.2d at 741 (quotations omitted). In the employment context, the Minnesota Supreme Court has found that statements in an employee handbook as specific as "[a] person is not dismissed without cause, and it is customary to give a warning and an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

opportunity to 'make good' before final dismissal" did not create an employment contract that altered the presumed at-will employment relationship. *Cederstrand v. Lutheran Bhd., 263 Minn. 520, 117 N.W.2d 213, 215-16 (Minn.1962).* The court characterized the statement as a "general polic[y], not an offer of contractual character." *Id.* at 222.

The privacy statement on Northwest's website did not constitute a unilateral contract. The language used vests discretion in Northwest to determine when the information is "relevant" and which "third parties" might need that information. *See Grenier v. Air Express Int'l Corp., 132 F.Supp.2d 1198, 1201 (D.Minn.2001)* (Doty, J.). Moreover, absent an allegation that Plaintiffs actually read the privacy policy, not merely the general allegation that Plaintiffs "relied on" the policy, Plaintiffs have failed to allege an essential element of a contract claim: that the alleged "offer" was accepted by Plaintiffs. *Id.* at 1200. Plaintiffs' contract and warranty claims fail as a matter of law.

Even if the privacy policy was sufficiently definite and Plaintiffs had alleged that they read the policy before giving their information to Northwest, it is likely that Plaintiffs' contract and warranty claims would fail as a matter of law. Defendants point out that Plaintiffs have failed to allege any contractual damages arising out of the alleged breach. As Defendants note, the damages Plaintiffs claim are damages arising out of the torts alleged in the Amended Complaint, not damages arising out of the alleged contract. Damages are an essential element of a breach of contract claim, and the failure to allege damages would be fatal to Plaintiffs' contract claims. *Sloggy v. Crescent Creamery Co., 72 Minn. 316, 75 N.W. 225, 226 (Minn.1898).*

### CONCLUSION

Plaintiffs' claims under the ECPA and FCRA fail as a matter of law. Plaintiffs' claims under the Minnesota DTPA and for negligent misrepresentation are preempted, and Plaintiffs' remaining common-law claims fail to state claims on which relief can be granted. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Stay (Clerk Doc. No. 19) is DENIED; and

2. Defendants' Motion to Dismiss (Clerk Doc. No.13) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

D.Minn.,2004.
In re Northwest Airlines Privacy Litigation
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 0:04cv00126 (Docket) (Jan. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 4**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1498870 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**C**
Briefs and Other Related Documents
O'Callaghan v. AMR Corp.N.D.Ill.,2005.Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.
Jerome O'CALLAGHAN and Judith O'Callaghan, Plaintiffs
v.
AMR CORP., a foreign corporation, and American Airlines, Inc., a foreign corporation. Defendants.
**No. 04 C 4005.**

June 8, 2005.

Joseph Michael O'Callaghan, O'Callaghan & Colleagues, P.C., Marvin W. Gray, Law Office of Marvin W. Gray, Chicago, IL, for Plaintiffs.
Gerald Vernon Cleary, III, Rita Maria Filiaggi, Thomas James Lyman, III, O'Hagan, Smith & Amundsen, L.L.C., Michael Gerard McQuillen, Adler, Murphy & McQuillen, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*
HIBBLER, J.
*1 Defendants move to dismiss many of the claims in Plaintiffs' Second Amended Complaint, arguing that they are preempted by the Airline Deregulation Act and the Warsaw Convention [FN1] or that the Plaintiffs cannot state a claim. In short, the Plaintiffs allege that they bought tickets from American Airlines from Chicago to Rome after hearing that American Airlines offered more legroom than other airlines, a claim which the O'Callaghans allege was false. Plaintiffs' Amended Complaint contains five claims: 1) a breach of contract claim; 2) a claim for common law fraud; 3) a claim based on a violation of the Illinois Consumer Fraud and Deceptive Business Practice Act; 4) a class action claim; and 5) a claim based on the Warsaw Convention. Defendants move to dismiss the first four of these claims.

FN1. The Court ruled earlier that Plaintiffs' consumer fraud claims were not preempted by the Warsaw Convention and will not revisit that ruling, but notes that the Defendants have raised their objections to preserve them for appeal. Defendants also

raise a Warsaw Convention argument to the Plaintiffs' breach of contract claim, which was not included in the original Complaint. Because the Plaintiffs' breach of contract claim seeks damages only for the nonperformance of the contract, not for any injury that occurred because of that nonperformance, it is not preempted by the Warsaw Convention. *Wolgel v. Mexicana Airlines,* 821 F.2d 442 (7th Cir.1987).

The Airline Deregulation Act (ADA) was enacted to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992). To achieve that purpose, the ADA includes a preemption clause that prohibits states from enacting or enforcing any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier. 49 U.S.C.App. § 1305(a)(1). The Supreme Court has twice visited the reach of the ADA's preemption clause. *Morales,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157; *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In *Wolens,* the Court held that the ADA preempted a Consumer Fraud Act claim because that act "serve[d] as a means to guide and police the marketing practices of the airlines ... [and did] not simply give effect to bargains offered by the airlines and accepted by airline customers." *Wolens,* 513 U.S. at 228, 115 S.Ct. at 823. The Court also held that the ADA's preemption clause does not bar suits "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.,* 513 U.S. at 228, 115 S.Ct. at 824. Thus, ADA does not preempt suits seeking to recover for breach of contract.

Here the Plaintiffs fraud claims do more than simply seek to enforce the parties' bargains-they seek to replace those bargains with damages. *See United Airlines, Inc. v. Mesa Airlines, Inc.,* 219 F.3d 605, 609-10 (7th Cir.2000). Thus, they are the kind of claim that would be preempted if they relate to the Defendants' rates, routes, or services. Plaintiffs argue that their claims relate only to the "separate, independent, intentional wrongful act of Defendants in knowingly making false representations which they indented persons to rely upon and ... not to their rates, routes or services." Pl. Response at 23. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1498870 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Court disagrees. *Morales* teaches that restrictions on advertising " 'surely relates to price.' " *Morales, 504 U.S. at 389, 112 S.Ct. at 2039* (quoting *Ill. Corp. Travel v. Am. Airlines, Inc., 889 F.2d 751, 754 (7th Cir.1989))* (internal quotations omitted). *Wolens* concerned a class of Plaintiffs who believed that the defendant Airline's advertisements regarding its frequent-flyer program were deceptive, and the Court held that such claims related to rates and to services. *Wolens, 513 U.S. at 226-27, 115 S.Ct. at 823.* Plaintiffs' claims regarding Defendants' advertising regarding legroom cannot be meaningfully distinguished from the claims of the plaintiffs in *Wolens.* Allowing the Plaintiffs to use consumer fraud laws (both statutory and common) to obtain damages from the Defendants' advertising has the effect of regulating the Defendants' rates. The Court therefore holds that Counts II and III of Plaintiffs' Amended Complaint are preempted by the ADA and Defendants' motion to dismiss those claims is GRANTED.

**\*2** The Defendants next argue that Plaintiffs' breach of contract claim fails to state a claim. The Plaintiffs allege in their Amended Complaint that the Defendants' advertised that they had "more room throughout coach" and "more legroom throughout coach." It is true that an advertisement does not constitute an offer, merely an invitation to deal on the advertised terms. *Steinberg, 69 Ill.2d 320, 329-30, 13 Ill.Dec. 699, 371 N.E.2d 634, 639 (1977).* The Plaintiffs further allege that they inquired about this advertisement. Accepting Plaintiffs' allegations as true and drawing reasonable inferences in their favor, a reasonable factfinder could conclude that the Defendant accepted the Plaintiffs' offer to purchase tickets on the terms stated in the advertisement. *See Steinberg, 69 Ill.2d at 330, 13 Ill.Dec. 699, 371 N.E.2d at 639* (when merchant takes the money, it accepts the consumer's offer).

Defendants also argue that the Plaintiffs cannot state a claim for breach of contract because their allegations contradict the written terms of the contract. The Plaintiffs have attached to their Amended Complaint the tickets at issue, which state that they are "subject to Conditions of Contract." Defendants point to Rule 60.B.3 of American's International Passenger Rules tariff, which states, "Seat Allocation ... Carrier does not guarantee allocation of any particular space in the aircraft." Defendants appear to interpret Rule 60.B.3 as not only suggesting that American is not obligated to give consumers a particular seat, but that it is not obligated to give them any particular amount of

space. American's interpretation of Rule 60.B.3 is unavailing. It is true that Rule 60.B.3 unambiguously contradicts any claim by the Plaintiffs that Defendants breached the contract by refusing to reseat them. It does not, however, unambiguously contradict a claim that the Defendants breached the contract by failing to provide more legroom than other airlines.

Defendants make a final argument that Plaintiffs have failed to state a breach of contract claim, but this argument merits little discussion. Defendants argue that Plaintiffs claim is premised on the assumption that American's advertisement "more legroom throughout coach" meant "for *every* row of coach and for *every* coach class seat." (Def. Brief in Support of Mot. to Dismiss at 22) (emphasis in original). Defendants argue that Plaintiffs' assumption is flawed, and therefore they cannot state a claim for breach of contract. Defendants' argument tortures the meaning of throughout, which means "in or to every part; from one end to the other; everywhere." Webster's Third New International Dictionary, Unabridged, at 2385 (1986). The Defendants' Motion to Dismiss Count I of Plaintiffs' Amended Complaint is DENIED.

Defendants argument to dismiss Count IV (class action) is premised entirely on its argument to dismiss Counts I, II, and III. Because the Court denied the Motion to Dismiss Count I, the Motion to Dismiss Count IV is also DENIED.

**\*3** Finally, AMR moves to dismiss the entire complaint against it, suggesting that it is not responsible for the acts of its subsidiary, American Airlines. The Court agrees. Plaintiffs allege in their Amended Complaint that AMR conducts business through its wholly owned subsidiary, American Airlines. Corporations are separate legal entities and a parent company is not generally liable for the acts of its subsidiary. *United States v. Bestfoods, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998); Papa v. Katy Industries, Inc., 166 F.3d 937, 940-41 (7th Cir.1999); IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 540 (7th Cir.1998).* Plaintiffs solitary allegation regarding AMR is that AMR conducts business through its wholly owned subsidiary, American Airlines. But "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent." *IDS Life Ins. Co., 136 F.3d at 540.* Plaintiffs have made no allegation to show that there is a basis for piercing the corporate veil and attributing the acts of American Airlines to AMR. AMR's motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 1498870 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

dismiss is GRANTED without prejudice.

IT IS SO ORDERED.

N.D.Ill.,2005.
O'Callaghan v. AMR Corp.
Not Reported in F.Supp.2d, 2005 WL 1498870
(N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2629692 (Trial Motion, Memorandum
and Affidavit) Defendants' Memorandum of Law in
Support of Their Motion for Summary Judgment and
Motion to Dismiss (Aug. 28, 2006) Original Image of
this Document (PDF)
• 2006 WL 1045512 (Trial Motion, Memorandum
and Affidavit) Stipulated Protective Order (Mar. 3,
2006) Original Image of this Document (PDF)
• 2006 WL 403835 (Trial Motion, Memorandum and
Affidavit) Defendant American Airlines, Inc.'s
Response to Plaintiffs' Motion to Compel Discovery
(Jan. 23, 2006)
• 2006 WL 427510 (Trial Motion, Memorandum and
Affidavit) Defendant American Airlines, Inc.'s
Response to Plaintiffs' Motion to Compel Discovery
(Jan. 23, 2006) Original Image of this Document
(PDF)
• 2006 WL 403836 (Trial Motion, Memorandum and
Affidavit) Second Renewed Motion to Compel
Discovery, for Sanctions for Failure to make
Disclosure and Co-Operate in Discovery Pursuant to
Frcp 37 and for an Extension of Time to Amend
Plaintiffs' Complaint (Jan. 09, 2006)
• 2005 WL 4717256 (Trial Motion, Memorandum
and Affidavit) Defendants' Reply Brief in Support of
Their Motion to Dismiss Plaintiffs' First Amended
Complaint Pursuant to Rule 12(B)(6) (May 23, 2005)
Original Image of this Document (PDF)
• 2005 WL 4717255 (Trial Motion, Memorandum
and Affidavit) Response to Motion of Amr
Corporation to Dismiss and Motion to Dismiss
Counts I, II, III and IV of the Plaintiffs' First
Amended Complaint Pursuant to Federal Rules of
Civil Procedure 12(B)(6) (Apr. 22, 2005) Original
Image of this Document (PDF)
• 2005 WL 4717253 (Trial Pleading) Answer and
Affirmative Defenses of Amr and American Airlines
to Plaintiffs' First Amended Complaint (Feb. 2, 2005)
Original Image of this Document (PDF)
• 2005 WL 4717254 (Trial Motion, Memorandum
and Affidavit) Motion of Amr Corporation to
Dismiss and Motion to Dismiss Counts I, II, III and
IV of the Plaintiffs' First Amended Complaint
Pursuant to Federal Rule of Civil Procedure 12(B)(6)

(Feb. 2, 2005) Original Image of this Document
(PDF)
• 2004 WL 4965486 (Trial Pleading) Plaintiffs' First
Amended Complaint (Nov. 17, 2004) Original Image
of this Document (PDF)
• 2004 WL 2816710 (Trial Motion, Memorandum
and Affidavit) Reply in Support of Defendants'
Motion to Dismiss Pursuant to Rule 12(b)(6) (Oct.
18, 2004) Original Image of this Document with
Appendix (PDF)
• 2004 WL 2816704 (Trial Motion, Memorandum
and Affidavit) Response to Motion to Dismiss (Oct.
8, 2004) Original Image of this Document (PDF)
• 2004 WL 2816698 (Trial Motion, Memorandum
and Affidavit) Defendants' Response to Plaintiffs'
Motion to Remand (Aug. 18, 2004) Original Image
of this Document with Appendix (PDF)
• 2004 WL 2816693 (Trial Pleading) Answer (Jun.
14, 2004) Original Image of this Document (PDF)
• 2004 WL 4965487 (Trial Motion, Memorandum
and Affidavit) MOtion to Dismiss Pursuant to Rule
12(b)(6) (Jun. 14, 2004) Original Image of this
Document (PDF)
• 1:04cv04005 (Docket) (Jun. 14, 2004)
• 2004 WL 4965491 (Trial Pleading) Plaintiffs' Third
Amended Complaint%n1%n (2004) Original Image
of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 5**

CHGO1\30866712.1

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 2994129 (N.J.Super.A.D.)
(Cite as: Not Reported in A.2d)

Page 1

Odoemene     v.     World     Airways,
Inc.N.J.Super.A.D.,2005.--- A.2d ----Only the
Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
    Superior Court of New Jersey, Appellate Division.
    Emmanuel ODOEMENE, Plaintiff-Respondent,
                        v.
    WORLD AIRWAYS, INC., Defendant-Appellant,
    andRitetime Aviation and Travel Services, Inc.,
                    Defendant.
    Felix Ayanruoh, Plaintiff-Respondent,
                        v.
    World Airways, Inc., Defendant-Appellant,
    andRitetime Aviation and Travel Services, Inc.,
                    Defendant.
                Argued Oct. 17, 2005.
                Decided Nov. 9, 2005.

                    SYNOPSIS

On appeal from the Superior Court of New Jersey,
Law Division, Special Civil Part, Essex County,
Docket Nos. SC-622-04; SC-561-04.

Patrick J. Bonner argued the cause for appellant
(Freehill, Hogan & Mahar, attorneys; Mr. Bonner and
Zachary M. Barth, on the brief).
Felix Ayanruoh, respondent, argued the cause pro se.
Emmanual Odoemene, respondent, pro se.

Before Judges PARRILLO and GILROY.
*Patrick J. Bonner* argued the cause for appellant
(*Freehill, Hogan & Mahar,* attorneys; *Mr. Bonner
and Zachary M. Barth,* on the brief).*Felix Ayanruoh,*
respondent, argued the cause pro se.*Emmanual
Odoemene,* respondent, pro se.
PER CURIAM.
*1 Defendant, World Airways, Inc., appeals from two
orders of judgment entered in favor of plaintiffs,
Emmanuel Odoemene and Felix Ayanruoh on August
13, 2004, after a consolidated trial in the Small
Claims Section of the Special Civil Part, Essex
County. For reasons hereinafter expressed, we
reverse and remand.

On February 13, 2004, plaintiff Felix Ayanruoh filed
a complaint for breach of contract against World
Airways, Inc. (World) and Ritetime Aviation and

Travel Services, Inc. (Ritetime) seeking damages in
the amount of $2,468.60. On the same day, plaintiff
Emmanuel Odoemene filed a complaint for breach of
contract against the same defendants seeking
$1,430.00 in damages. World is a commercial airline
engaged in the business of chartering air carriers to
private travel agencies. Ritetime is an airline travel
reservation service that sells tickets for transport on
air carriers. The complaints alleged that defendants
improperly terminated airline service to and from
Nigeria, causing Ayanruoh, and Odoemene's parents,
to be stranded temporarily in Nigeria and the United
States, respectively, thereby incurring additional
travel expenses for return to their countries of origin.
The matters were consolidated and tried on August
13, 2004. The only witnesses who testified were
plaintiffs. Ritetime failed to appear, and default was
entered against it. World appeared through counsel,
but did not present any affirmative testimony in
defense of the matter.

Ayanruoh testified that in July 2003, he purchased
airplane tickets to travel to Nigeria through Ritetime
on World. Ayanruoh was to travel from John F.
Kennedy International Airport, New York, to Lagos,
Nigeria, and return. Ayanruoh's flight left New York
on December 21, 2003, and was scheduled to return
to the United States on January 3, 2004. While
Ayanruoh was in Nigeria, World cancelled the return
flight, and Ayanruoh was advised by a representative
from World that the flight was rescheduled for either
January 5, or January 6, 2004, and that World would
reimburse him for additional hotel costs incurred due
to its rescheduling the flight. On January 5, 2004,
Ayanruoh was advised by World that the flight had
been cancelled indefinitely. As a result of the
cancellation, Ayanruoh incurred expenses of
$1,140.60 for the purchase of a one-way return ticket
to New York from a different airline; $840 for three-
days' loss of employment; $237.50 for additional
hotel lodging; $147 for additional meals; $100 for
telephone expenses and $100 travel costs to and from
the airport, for a total cost of $2,565.10.

Plaintiff Odoemene testified that in August 2003, he
purchased two round-trip airline tickets through
Ritetime on World for his parents to travel from
Nigeria to the United States and return. Odoemene's
parents flew to the United States on World and were
scheduled to return to Nigeria on December 30, 2003.
Odoemene was advised that the flight was cancelled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and that no refund would be issued. Odoemene purchased two substitute one-way airline tickets from another airline for his parents' return to Nigeria for a cost of $1,370 and incurred an additional $26 for two transit visas necessary for a travel layover in Germany on his parents' return trip, for a total claim of $1,396.

**\*2** At the conclusion of the trial, the judge determined that defendants had breached their contracts with plaintiffs to provide air flight service and awarded contract damages in favor of Odoemene, in the amount of $1,396; and in favor of Ayanruoh, in the amount of $3,948.20, together with costs. The court, sua sponte, without prior notice to World, determined that defendants' actions violated the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8-1 to -20, and trebled the damages in favor of plaintiff Odoemene to $4,188 and for plaintiff Ayanruoh to $11,844.60.

On appeal, World argues:
*POINT I.*
THE NEW JERSEY CONSUMER FRAUD ACT IS PREEMPTED BY THE AIRLINE DEREGULATION ACT. (NOT RAISED BELOW).
*POINT II.*
THE TRIAL COURT ERRED WHEN IT SUA SPONTE RAISED THE NEW JERSEY CONSUMER FRAUD ACT AT THE CONCLUSION OF THE TRIAL. (NOT RAISED BELOW).
*POINT III.*
THE TRIAL COURT IMPROPERLY AWARDED DAMAGES WHICH EXCEEDED THE JURISDICTIONAL LIMITATIONS OF THE SMALL CLAIMS PART. (NOT RAISED BELOW).
*POINT IV.*
THE RECORD CANNOT SUPPORT THE TRIAL COURT'S MEASURE OF DAMAGES. (NOT RAISED BELOW).

Initially, we note that World did not raise the issues presented to the trial court. "Normally, we decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available...." *Monek v. Borough of South River,* 354 *N.J.Super.* 442, 456 (App.Div.2002). Exceptions include when "the issue is of special significance to the litigant, to the public, or to the achievement of substantial justice, and the record is sufficiently complete to permit its adjudication." *Borough of Keyport v. Maropakis,* 332 *N.J.Super.* 210, 216 (App.Div.2000). Another

exception is when the questions "raised on appeal go to the jurisdiction of the trial court." *Brown v. Tp. of Old Bridge,* 319 *N.J.Super.* 476, 501 (App.Div.), *certif. denied,* 162 *N.J.* 131 (1999) (quoting *Skripek v. Bergamo,* 200 *N.J.Super.* 620, 629 (App.Div.), *certif. denied,* 102 *N.J.* 303 (1985)). Because the issue raised in Part III goes to the jurisdiction of the trial court, the issues raised in Points II, III, and IV could not have been raised until after the trial court's decision, the record is sufficient, and all parties have thoroughly briefed the issues, including that of preemption, we entertain the issues raised.

World argues that the CFA is preempted by the Airline Deregulation Act of 1978, Pub.L. No. 95-504, 92 Stat. 1705 (codified as amended in scattered sections of 49 U.S.C.) (ADA). Plaintiffs argue that the ADA does not apply to this case because the ADA is limited to regulation of domestic air flights. Because we conclude that application of the CFA is preempted by the ADA, we need not decide World's alternative arguments.

Congress enacted the ADA in 1978 "as part of an effort to encourage market competition in the airline industry." *Williams v. Midwest Airlines, Inc.,* 321 *F.Supp.*2d 993, 994 (E.D. Wis 2004). The ADA contains a preemption provision that prohibits states from interfering with the deregulation process.
**\*3** (b) Preemption.-(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law regulated to a price, route or service of an air carrier that may provide air transportation under this subpart.
[49 *U.S.C.A.* § 41713(b)(1). [FN1]]

FN1. Formerly, 49 *U.S.C.A.* § 1305(a)(1).

Under the Supremacy Clause, Congress has the power to preempt state law. *Abdullah v. Am. Airlines, Inc.,* 969 *F.Supp.* 337, 341 (D.V.I.1997), *aff'd,* 181 *F.3d* 363 (3d Cir.1999). Preemption "may be express or implied," and may be implied by intention in areas that lend themselves to a national or uniform system of regulation, or when "state law [impedes] ... the purposes and objectives of Congress[;] when there is pervasive federal regulation ... [;] or when state law conflicts with federal law." *Ibid.* (citations omitted).

The Supreme Court in *Morales v. Trans World*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2005 WL 2994129 (N.J.Super.A.D.)
(Cite as: Not Reported in A.2d)

*Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L. Ed.2d 157, 167-68 (1992), gave broad meaning to the phrase "relating to rates, routes, or services" contained in the preemption clause and indicated that the preemption provision prohibits States from taking any "enforcement actions having a connection with, or reference to, airline 'rates, routes, or services[,]' " whether through laws specifically addressed to the airline industry or through more general statutes. *Ibid.* We have interpreted *Morales* as prohibiting enforcement of the CFA as it concerns airline "rates, routes or services." *Vail v. Pan Am Corp.*, 260 N.J.Super. 292, 297-98 (App.Div.1992).
To allow plaintiffs' claims would permit state courts to determine whether an airline's advertising was false and deceptive, and whether services advertised were in fact provided. If the airline's conduct were fraudulent or deceptive, state courts could fashion remedies, applying state law, proscribing certain advertising and compelling the airline to repay customers surcharges and other "rates" charged to air passengers. The result would be multiple and potentially conflicting standards controlling airline advertising, services and rates. The conclusion is inescapable that Congress intended to reject the dual enforcement of state law claims relating to rates and services, and to vest the federal Department of Transportation with the exclusive authority to regulate and adjudicate allegations of deceptive and fraudulent advertising and practices in the airline industry.
[*Id.* at 299-300 (footnote omitted).]

The question presented under the preemption provision is whether providing return travel on an air carrier constitutes "service" as preempted by the ADA. We hold that it does. While it may be the case that advertising alone does not fall within the typical realm of services provided by an air carrier, plaintiffs' claims, however, turn on defendants' failure to transport and plaintiffs' reliance on the defendants' advertised routes and continued travel between the United States and Nigeria in purchasing their roundtrip tickets.

*4 In reaching our decision in this matter, we have considered, but rejected, plaintiffs' argument that the ADA preemption provision does not apply to the present matters because the flights were international in nature, not domestic. We conclude that the ADA provides otherwise. "Air carrier" is defined as meaning "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C.A. § 40102(a)(2). "Air

transportation" is defined as meaning "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C.A § 40102(a)(5).

Although application of the CFA is prohibited in these matters because of federal preemption, nothing prohibits breach-of-contract claims based on state common law. *Am. Airlines, Inc., v. Wolens*, 513 U.S. 219, 228, 115 S.Ct. 817, 824, 130 L. Ed.2d 715, 725 (1995). As such, plaintiffs are entitled to damages on their breach-of-contract claims based on the evidence presented during trial.[FN2]

> FN2. Proofs presented by Ayanruoh at the trial below total $2,565.10. There is no explanation in the record why the trial judge awarded Ayanruoh contract damages in the amount of $3,948.20 before trebling.

Accordingly, we vacate the treble damages as to both defendants; remand to the trial court to direct entry of judgment in favor of plaintiff Odoemene in the amount of $1,396, together with trial costs; remand to the trial court to recalculate contract damages as to plaintiff Ayanruoh; and to enter judgment accordingly.

N.J.Super.A.D.,2005.
Odoemene v. World Airways, Inc.
Not Reported in A.2d, 2005 WL 2994129 (N.J.Super.A.D.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 6**

LEXSEE 2003 DOT AV LEXIS 1107

Spirit Airlines, Inc. Violations of 49 U.S.C. § 41712 and 14 CFR 399.84

Order 2003-12-26;
Docket OST-2003-14194

Department of Transportation

Department of Transportation

*2003 DOT Av. LEXIS 1107*

December 30, 2003

**ACTION:** [*1] CONSENT ORDER

**ISSUEDBY:** ROSALIND A. KNAPP, Deputy General Counsel

**Served: December 30, 2003**

This consent order concerns airfare advertising by Spirit Airlines, Inc. ("Spirit"), an air carrier, on its website (www.spiritair.com) that failed to comply with advertising requirements specified in Part 399 of the Department's regulations (14 CFR Part 399) and violated *49 U.S.C. § 41712.* The order directs Spirit to cease and desist from further violations and assesses the carrier a compromise civil penalty.

To ensure that consumers are given accurate and complete fare information on which to base their airline travel plans, section 399.84 of the Department's rules requires that fare advertisements by air carriers or their agents state the full price to be paid by the consumer. As we have specifically advised carriers, and as the Department has indicated in prior consent orders, these requirements apply to advertisements on Internet sites. n1 Spirit, as an air carrier, is subject to the advertising requirements of Part 399 of the Department's rules (14 CFR 399.84, any advertising that states a price for air transportation is considered [*2] to violate *49 U.S.C. § 41712* unless the price stated is the entire price to be paid by the customer to the air carrier or agent for such air transportation, tour or tour component. However, under longstanding enforcement case precedent, the Department has permitted air carriers and agents to state separately from the advertised price taxes and fees, imposed or approved by the government on a perpassenger basis, so long as their existence and amounts are clearly indicated in the advertisement. (See, e.g., Order 97-11-14). Taxes and fees imposed on an *ad valorem* basis, however, must be included in the advertised fare.

n1 See, e.g.: *Icelandair, Inc., Violations of 49 U.S.C. § 41712 and 14 CFR 399.84,* Order 2003-4-9; *Travelocity.com, L.P.,* Order 2002-3-28, *US Airways,* Order 2001-5-32; *Northwest Airlines,* Order 99-8-23. In addition, the Department's industry letters and notices on this subject are available on the Department's website (http://www.dot.gov/airconsumer/).

[*3]
Spirit failed to properly disclose the full fare, including taxes and fees, where applicable, for airfares advertised on its website. Spirit maintained a search feature that failed to include all taxes and fees in the airfares displayed to consumers or to clearly indicate the existence and amount of the taxes and fees that may properly be separately stated (such as segment fees, Passenger Facility Charges, the September 11th Security Fee and, for international destinations, additional government-imposed taxes and fees). There was no asterisk or other distinguishing symbol next to the fares directing the consumer's attention to the terms and conditions section or highlighting the existence of additional fees. Consumers were not adequately informed of the existence of additional fees and therefore could not calculate the full

price of the advertised airfares unless, after progressing through two steps of the booking process, the consumer clicked on the hyperlinked statement entitled "I agree to the terms."

Under Department precedent referred to above, advertisements may exclude from a fare certain kinds of charges, generally government-imposed, per passenger fees that are not *ad* [*4] *valorem* in nature, so long as the excluded charges are presented in close proximity to the advertised fare. Internet fare advertisements that quote a fare that is not a full fare or that has significant restrictions should have an explicit statement that additional charges or conditions apply immediately adjacent to the fare with a hyperlink to a full explanation. Alternatively, specific fare advertisements should highlight the fact that additional fees, restrictions, or conditions apply, with an asterisk or other symbol immediately next to the fare or list of fares, together with a concise explanation for the asterisk or symbol (e.g., "taxes, fees, and restrictions apply") in reasonably close placement to the relevant fare or fares. A full explanation of the nature and amount of all additional fees and significant restrictions should appear on the same page as the quoted fare or may be linked to the fare by a single hyperlink. As published on the Internet, Spirit advertisements violated section 399.84 of the Department's regulations and *49 U.S.C. § 41712*.

In addition to the above violation, Spirit caused a print advertisement promoting each-way [*5] fares to be published in certain newspapers. The advertisement listed fares from Washington D.C. to Cancun, Ft. Lauderdale, and San Juan. However, the body of the advertisement did not state prominently and in close proximity to the advertised fares that the advertised fares were each-way fares and required a roundtrip purchase. That information was only provided in the detailed information at the bottom of the advertisement.

The Enforcement Office has as a matter of enforcement policy permitted the listing in price advertisements of each-way fares, provided that the roundtrip purchase requirement is prominently and proximately displayed. Prominently means in very close proximity if not adjacent to the advertised fare and of a type size sufficient to alert the reader to the provision. (i.e., larger than the fine print usually found at the bottom of ads). See, e.g., Order 2003-7-39. Spirit's advertisement failed to disclose the significant requirement of a roundtrip purchase and therefore was in violation of section 399.84 of the Department's regulations and *49 U.S.C. § 41712*.

In mitigation, Spirit states that it had no intention of providing [*6] misleading information in its Internet advertising. Spirit points out that if a consumer clicked on the link entitled "I accept the terms," a page was displayed that contained detailed information regarding taxes and fees. Spirit also indicates that while it agrees that usage of the phrase "I accept the terms" was inartful, the intent was to comply with the Department's rules. Moreover, according to the carrier, the customer could not have completed the final purchase step of the transaction without first seeing a clear and accurate display of the total purchase price. Furthermore, the company states that within two days of being contacted by the Office of Aviation Enforcement and Proceedings, Spirit implemented changes to its website such that the existence of additional taxes and fees was clearly indicated to consumers. In regards to the print advertisement, Spirit indicates that the violation was inadvertent, and that the ads in question escaped review because of a recent change in its advertising agencies. Moreover, Spirit notes that the roundtrip purchase requirement was disclosed in the rules and restrictions set forth just below the advertised fares.

The Aviation Enforcement [*7] Office has carefully considered all of the facts of the case, including the information provided by Spirit and the corrective measures it quickly adopted, but continues to believe that enforcement action is warranted. Spirit, in order to avoid litigation and without admitting or denying the alleged violations, consents to the issuance of this order to cease and desist from future violations of *49 U.S.C. § 41712* and of 14 CFR 399.84, and to the assessment of $ 20,000 in compromise of potential civil penalties, of which one-half will be paid according to the payment provisions described below. The remaining $ 10,000 will be suspended for one year following the service date of this order, and shall then be forgiven unless Spirit fails to comply with the provisions of this order, including its cease and desist and payment provisions, during the suspension period, in which case the entire unpaid portion of the $ 20,000 assessed penalty shall be due and payable immediately. We believe that this compromise assessment is appropriate and serves the public interest. It represents an adequate deterrence to future noncompliance with the Department's advertising [*8] requirements by Spirit, as well as by other airlines, travel agents, and other sellers of air transportation.

This order is issued under the authority contained in 49 CFR 1.57a and 14 CFR 385.15.

**ACCORDINGLY,**

1. Based on the above discussion, we approve this settlement and the provisions of this order as being in the public interest;

2. We find that Spirit Airlines, Inc., has violated 14 CFR 399.84 by causing to be published airfare advertisements that failed to state the entire price to be paid for the advertised air transportation;

3. We find that by engaging in the conduct described in ordering paragraph 2 above, Spirit Airlines, Inc., also violated *49 U.S.C. § 41712;*

4. Spirit Airlines, Inc., and all other entities owned and controlled by, or under common ownership and control with, Spirit Airlines, Inc. and their successors and assignees, are ordered to cease and desist from future violations of 14 CFR 399.84 and *49 U.S.C. § 41712;*

5. Spirit Airlines, Inc., is assessed $ 20,000 in compromise of the potential civil penalties that might otherwise be assessed for the violations described [*9] in ordering paragraphs 2 and 3 of this order. Of that penalty amount, $ 10,000 shall be due and payable within 30 days of the service date of this order. The remaining $ 10,000 shall be suspended for one year following issuance of this order, and then forgiven, unless Spirit Airlines, Inc., violates this order's cease and desist provision within that one-year period, or fails to comply with the order's payment provisions, in which case the entire unpaid portion of the civil penalty shall become due and payable immediately, and the carrier may be subject to further enforcement action. Failure to pay the compromise assessment as ordered will subject Spirit Airlines, Inc., to the assessment of interest, penalty, and collection charges under the Debt Collection Act, and possible enforcement action for failure to comply with this order; and

6. Payment shall be made by wire transfer through the Federal Reserve Communications System, commonly known as "Fed Wire," to the account of the U.S. Treasury. The wire transfer shall be executed in accordance with the instructions contained in the Attachment to this order.

This order will become a final order of the Department 10 days after its [*10] service date unless a timely petition for review is filed or the Department takes review on its own motion.

**TAB 7**

Westlaw.

47 F.3d 1166
47 F.3d 1166, 1995 WL 81686 (C.A.4 (Md.)), 63 USLW 2542
(Cite as: 47 F.3d 1166)

Page 1

**H**
Briefs and Other Related Documents
Wagman    v.    Federal    Exp.    Corp.C.A.4
(Md.),1995.NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter.  Use FI CTA4
Rule 36 for rules regarding the citation of
unpublished opinions.)
United States Court of Appeals, Fourth Circuit.
Lynn L. WAGMAN; Alisa M. Wagman, a Minor, by
her Mother and Next Friend, Lynn Wagman;
Alexandra S. Wagman; Arthur M. Wagman,
Plaintiffs-Appellants,
v.
FEDERAL EXPRESS CORPORATION, Defendant-
Appellee.
No. 94-1422.

Argued Dec. 5, 1994.
Decided Feb. 17, 1995.

Appeal from the United States District Court for the
District of Maryland, at Baltimore.  Peter J. Messitte,
District Judge.  (CA-91-3226-PJM)
D.Md.

AFFIRMED.

ARGUED: Andrew Peter Zimmer, Arlington, VA,
for Appellants.  Patricia G. Higginbotham,
FEDERAL EXPRESS CORPORATION, Memphis,
TN, for Appellee.  **ON BRIEF:** Arthur M.
Wagman, Gaithersburg, MD, for Appellants. Robert
C. von Ohlen, Jr., John B. Austin, ADLER,
KAPLAN & BEGY, Chicago, IL; Thomas J. Cullen,
Jr., GOODELL, DEVRIES, LEECH & GRAY,
Baltimore, MD, for Appellee.

Before HALL and MURNAGHAN, Circuit Judges,
and LAY, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by
designation.

OPINION
PER CURIAM:
*1 Arthur Wagman and his family appeal the district
court's grant of summary judgment in favor of
Federal Express Corporation ("Federal Express") on

their state consumer fraud claims alleging misleading
advertising.   The district court held those claims
preempted by the Airline Deregulation Act ("ADA").
We affirm.

*BACKGROUND*

The Wagman family was involved in an automobile
accident in New Jersey in 1986.     Wagman, an
attorney, intended to file a lawsuit based on injuries
he and his family sustained in that accident.  He used
the services of Federal Express to send the complaint
to his attorney in Philadelphia, Pennsylvania.   The
complaint had to be filed the next delivery day to
avoid the statute of limitations, but Federal Express
delivered the package one day too late.   The airbill
Wagman signed limited Federal Express's liability for
lost packages to $100.00, unless the shipper declared
a value in excess of $100.00 and paid an additional
fee.  Wagman failed to declare any additional value.

The Wagman family filed this diversity action against
Federal Express for money damages in excess of
$100,000 due to the loss of the claim arising from the
automobile accident.       The original complaint
included only breach of contract and negligence
claims.      An amended complaint added counts
alleging fraud, constructive fraud, fraudulent
misrepresentation, and negligent misrepresentation.
The latter claims were apparently based on violations
of Maryland's Consumer Protection Act. See
Md.Code Ann., Com. Law § § 13-301, 13-303
(1990).    The Wagmans claim Federal Express's
advertising campaign misled its potential customers
into believing packages would always be delivered
when promised.

The district court granted summary judgment in favor
of Federal Express, finding the state law claims
preempted and limiting Federal Express's liability to
the $100.00 set in the contract.     On appeal, the
Wagmans concede their negligence and breach of
contract claims cannot survive summary judgment,
but challenge the district court's entry of summary
judgment on the claims based on Federal Express's
allegedly deceptive advertising.

*ANALYSIS*

In *Morales v. Trans World Airlines, Inc.,* 112 S.Ct.
2031 (1992), the Supreme Court addressed for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 F.3d 1166                                                                                   Page 2
47 F.3d 1166, 1995 WL 81686 (C.A.4 (Md.)), 63 USLW 2542
(Cite as: 47 F.3d 1166)

first time the scope of the ADA's preemption provision, codified at 49 U.S.C. § 1305(a)(1) (1988). Section 1305 prohibits states from enforcing laws "relating to rates, routes, or services" of any air carrier.[FN1] In *Morales,* the Court interpreted that preemption provision broadly, comparing it to the one contained in the Employee Retirement Income Security Act ("ERISA"), which is similarly worded. *Morales,* 112 S.Ct. at 2037.

The *Morales* Court considered whether certain guidelines adopted by the National Association of Attorneys General ("NAAG") were preempted by § 1305. Those guidelines included provisions restricting airline fare advertising and requiring that fare advertisements make certain disclosures. The Court found the guidelines preempted, stating "it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares." *Id.* at 2039.

*2 The Wagmans urge that *Morales* addressed only the preemption of state consumer fraud laws as they apply to advertising of airline *fares.* They distinguish this case from *Morales* on the grounds that the subject matter of the allegedly deceptive advertising is Federal Express's guarantee of overnight delivery, rather than the cost of that delivery. On that basis, they claim Maryland's state consumer protection laws relate to airline rates, routes, and services "in too tenuous, remote, or peripheral a manner" to be preempted. *Id.* at 2040 (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21 (1983)).

Whatever doubt *Morales* may have left as to whether the Wagmans' claims are preempted has been resolved by the Supreme Court's recent decision in *American Airlines, Inc. v. Wolens,* 63 U.S.L.W. 4066 (U.S. Jan. 18, 1995). In *Wolens,* two class actions composed of participants in American Airlines's frequent flyer program sued the airline for breach of contract and for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 Ill. Comp. Stat. § 505 (1992) (formerly codified at Ill.Rev.Stat., ch. 121 1/2 , ¶ 261 (1991)). The basis of these two class action suits is American Airlines's modification of the terms of its frequent flyer program in 1988. Participants maintain that the 1988 modification impermissibly reduced the value of frequent flyer credits already accumulated, and claim this retroactive modification of the terms and conditions of the program is a breach of contract and a violation of the Illinois Consumer Fraud Act.[FN2]

The Supreme Court found the plaintiffs' claims under the Illinois Consumer Fraud Act preempted.[FN3] *Wolens,* U.S.L.W. at 4069. In so holding, the Court reasoned that the Illinois Consumer Fraud Act, like the NAAG guidelines at issue in *Morales,* "serves as a means to guide and police the marketing practices of the airlines." *Id.* Thus, because it was "the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services," the Court found the state consumer fraud claims preempted.[FN4] *Id.* This language makes clear the ADA's preemption provision prohibits state regulation of airline advertising pertaining to services-such as Federal Express's overnight delivery guarantee-as well as to airline fares.

On this basis, we find the district court did not err in finding the Wagmans' claims preempted by § 1305 of the ADA. Accordingly, the decision of the district court is affirmed.

*AFFIRMED*

FN1. Prior to 1978, the Federal Aviation Act contained no preemption provision. Congress enacted the ADA in 1978 and amended the Federal Aviation Act by adding the following language:
[N]o State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under ... this chapter to provide air transportation.
49 U.S.C. § 1305(a)(1) (1988).

FN2. The Illinois Supreme Court, in *Wolens v. American Airlines, Inc.,* 589 N.E.2d 533, 537-38 (Ill.1992), determined that the plaintiffs' claims were not preempted. After the *Morales* decision, American Airlines petitioned for certiorari, and the Supreme Court vacated the decision of the Illinois Supreme Court and remanded for further consideration in light of *Morales. American Airlines, Inc. v. Wolens,* 113 S.Ct. 32 (1992). On remand, the Illinois Supreme Court reaffirmed its prior judgment. *Wolens v. American Airlines, Inc.,* 626 N.E.2d 205, 208 (Ill.1993).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 F.3d 1166                                                                              Page 3
47 F.3d 1166, 1995 WL 81686 (C.A.4 (Md.)), 63 USLW 2542
**(Cite as: 47 F.3d 1166)**

FN3. Although the Court found the claims based on Illinois's Consumer Fraud Act preempted, it held the ADA did not preempt the plaintiffs' breach of contract claims. *Wolens,* U.S.L.W. at 4070-71.

FN4. The Supreme Court held that the Department of Transportation ("DOT") retains the authority to regulate airline advertisements that "do not further competitive pricing." *Wolens,* 63 U.S.L.W. at 4068 (quoting *Morales,* 112 S.Ct. at 2040).

C.A.4 (Md.),1995.
Wagman v. Federal Exp. Corp.
47 F.3d 1166, 1995 WL 81686 (C.A.4 (Md.)), 63 USLW 2542

Briefs and Other Related Documents (Back to top)

• 1994 WL 16048683 (Appellate Brief) Brief of Appellee (Jun. 15, 1994) Original Image of this Document (PDF)
• 1994 WL 16048684 (Appellate Brief) Brief for Appellants (May. 16, 1994) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 8**

Westlaw.

11 Fed.Appx. 56                                                                                     Page 1
11 Fed.Appx. 56, 2001 WL 304166 (C.A.4 (W.Va.))
**(Cite as: 11 Fed.Appx. 56)**

**C**
Briefs and Other Related Documents
Weber v. USAirways, Inc.C.A.4 (W.Va.),2001.This
case was not selected for publication in the Federal
Reporter.UNPUBLISHEDPlease use FIND to look at
the applicable circuit court rule before citing this
opinion. Fourth Circuit Rule 36(c). (FIND CTA4
Rule 36(c).)
United States Court of Appeals,Fourth Circuit.
Paul L. WEBER, Plaintiff-Appellant,
v.
USAIRWAYS, INCORPORATED, Defendant-
Appellee.
No. 00-1027.

Argued Jan. 22, 2001.
Decided March 29, 2001.

Customer brought breach of contract and fraud action
under West Virginia law against airline. After airline
removed action, the United States District Court for
the Southern District of West Virginia, at Charleston,
Joseph Robert Goodwin, J., dismissed fraud count
and remanded to state court. Customer appealed. The
Court of Appeals held that fraud claim under West
Virginia law was preempted by Airline Deregulation
Act (ADA).

Affirmed.
West Headnotes
**Fraud 184 &#8283;31**

184 Fraud
    184II Actions
        184II(A) Rights of Action and Defenses
            184k31 k. Nature and Form of Remedy.
Most Cited Cases

**States 360 &#8283;18.15**

360 States
    360I Political Status and Relations
        360I(B) Federal Supremacy; Preemption
            360k18.15 k. Particular Cases, Preemption
or Supersession. Most Cited Cases
Airline customer's fraud claim under West Virginia
common law arising out of restrictions airline placed
on free ticket given to him after he gave up his seat
on overbooked flight was related to a price, route, or
service of an air carrier, and, thus, was preempted by
Airline Deregulation Act (ADA). 49 U.S.C.A. §

41713(b)(1).

*56 Appeal from the United States District Court for
the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge. (CA-99-
630-2).

Clem C. Trischler, Jr., Pietragallo, Gosick & Gordon,
Pittsburgh, PA, for appellee.
ON BRIEF: Paul L. Weber, Moore & Weber,
P.L.L.C., Charleston, WV, for appellant.

Before WILLIAMS and DIANA GRIBBON MOTZ,
Circuit Judges, and HILTON, Chief United States
District Judge for the Eastern District of Virginia,
sitting by designation.

OPINION
PER CURIAM.
**1 Paul Weber brought suit against U.S. Airways,
Inc., alleging that USAir committed breach of
contract and fraud under West Virginia common law.
Finding Weber's fraud claim to be preempted by the
Airline Deregulation Act, we affirm the district
court's order dismissing the fraud claim and
remanding Weber's state law claim for breach of
contract to state court.

Weber was scheduled to be a passenger on a USAir
flight from Charleston, West Virginia, to
Jacksonville, Florida. That flight, however, was
overbooked. USAir asked for volunteers to
relinquish their seats in exchange for a free round-trip
ticket on a future USAir flight to anywhere in the
continental United States. Weber agreed and was
given a travel voucher. However, when he went to
redeem the voucher for a trip during Thanksgiving
weekend, he was told that the voucher was limited to
"Z-class" seats and that no such seats were available
on the requested flight. Nevertheless, seats in other
price classes were available and Weber purchased
one of those. Weber claims that when he voluntarily
gave up his seat, he was never told that there would
be restrictions on the use of the voucher.

*57 Weber thereafter brought suit in state court in
West Virginia for breach of contract and fraud.
USAir removed the case to the United States District
Court for the Southern District of West Virginia
based on diversity of citizenship. USAir then moved

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Fed.Appx. 56                                                                Page 2
11 Fed.Appx. 56, 2001 WL 304166 (C.A.4 (W.Va.))
(Cite as: 11 Fed.Appx. 56)

to dismiss the fraud count on preemption grounds. The district court granted the motion, dismissed the fraud claim, and remanded the breach of contract claim back to West Virginia state court.   Weber appeals from that order of the district court.

We review the district court's decision on USAir's motion to dismiss under the *de novo* standard of review.   *See Stuart Circle Hospital Corp. v. Aetna Health Management*, 995 F.2d 500 (4th Cir.1993). Like the district court, we assume as true all facts as plead by Weber.   *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

Assuming that Weber has stated a claim of fraud, the question in this case is whether that claim is preempted.   USAir argues that the Airline Deregulation Act preempts Weber's fraud claim. USAir points to the following provision in the ADA: "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of an air carrier* that may provide air transportation under this subpart."   *49 U.S.C. § 41713(b)(1)* (emphasis added).   The question is whether Weber's common law fraud claim is "related to a price, route, or service of an air carrier."

Weber treats his fraud claim as if it were akin to a tort such as battery or assault that was committed by an airline employee upon a passenger.   Such a tort would have nothing to do with the price, route, or service of an air carrier and would not be preempted, he states.   Likewise, he argues that a fraud action is nothing more than a tort action like battery or assault: a method for personal recovery for a personal wrong that was committed.

**2 The Supreme Court has addressed preemption under the ADA.   In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Court held that state restrictions on advertising by airlines were preempted by the ADA. In *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the plaintiff sued American Airlines for modifying the terms of its frequent flier program.   The plaintiff argued that this devalued credits that members had already earned. In discussing the plaintiff's breach of contract claim, the Court stated, "We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the

airline's alleged breach of its own, self-imposed undertakings."   *Id.* at 228.   A breach of contract cause of action merely holds the parties to the terms of their contract-in that case to the terms of the frequent flier program.   The Court, however, struck plaintiff's claim for fraud under the Illinois Consumer Fraud Act. The law made unlawful "[u]nfair methods of competition and unfair or deceptive acts of practices, including but not limited to the use or employment of any ... fraud."   *Id.* at 227.   The Court held that the statute was a "means to guide and police the marketing practices of the airlines" and thus related to air fares.   This was preempted action under the ADA.

Weber's claim for fraud is preempted because it seeks to enforce a legal duty on the defendant that is independent of the parties' contract.   In essence, Weber's claim suggests that USAir's duty was to *58 disclose the Z-class restriction before he gave up his seat.   It is no different than if the West Virginia legislature had enacted a statute, like Illinois did in *Wolens*, writing that duty into the legislative code. The effect and purpose of Weber's action is the same. His action for fraud relates to pricing and servicing (the provision of tickets to bumped passengers) and is barred by the preemption clause of the ADA.

Other circuits are in line with this holding.   *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir.1996) ("State law fraud claims are preempted ... because Congress intended [the Department of Transportation] to be the sole legal control on possible advertising fraud by air carriers."); *Travel All Over the World, Inc. v. Saudi Arabia*, 73 F.3d 1423 (7th Cir.1996) ("[Fraud] claims expressly refer to airline 'services,' which include ticketing as well as the transportation itself.... Such tort claims clearly 'relate to' the airline's provision of services."); *West v. Northwest Airlines, Inc.*, 995 F.2d 148 (9th Cir.1993) ("Overbooking and bumping are accepted forms of price competition and reduction in the deregulation period, thus any law or regulation which results in penalizing airlines for these practices is preempted.").

Weber's fraud claim is therefore preempted and the district court was correct in granting the motion to dismiss.

**3 *AFFIRMED.*

C.A.4 (W.Va.),2001.
Weber v. USAirways, Inc.
11 Fed.Appx. 56, 2001 WL 304166 (C.A.4 (W.Va.))

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 Fed.Appx. 56                                                    Page 3
11 Fed.Appx. 56, 2001 WL 304166 (C.A.4 (W.Va.))
**(Cite as: 11 Fed.Appx. 56)**

Briefs and Other Related Documents (Back to top)

• 2001 WL 34135260 (Appellate Brief) Appellant's Brief (Jan. 22, 2001)
• 2000 WL 33989939 (Appellate Brief) Appellant's Reply (Apr. 14, 2000) Original Image of this Document (PDF)
• 2000 WL 33990479 (Appellate Brief) Brief of Defendant-Appellee (Mar. 28, 2000) Original Image of this Document with Appendix (PDF)
• 2000 WL 33990478 (Appellate Brief) Appellant's Brief (Feb. 24, 2000) Original Image of this Document (PDF)
• 00-1027 (Docket) (Jan. 05, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SARA WEXLER, on behalf of herself and all others similarly situated, ) ) ) ) | Case No. 1:06 CV 01917 |
| Plaintiffs, ) ) | Judge Gladys Kessler |
| v. ) ) |  |
| UNITED AIR LINES, INC., (a Delaware Corporation) and UAL Corporation (a Delaware Corporation). ) ) ) ) |  |
| Defendants. ) ) |  |

## <u>ORDER</u>

Having considered Defendants United Air Lines, Inc. And UAL Corporation's Motion to Dismiss ("Defendants' Motion to Dismiss"), Supporting Memorandum of Points and Authorities and Addendum, any opposition thereto, and for good cause shown, it is this ___ day of _____ 2006

(1)     ORDERED that Defendants' Motion to Dismiss be and the same hereby is granted; and it is further

(2)     ORDERED that the complaint be and the same hereby is dismissed with prejudice in its entirety.

_____
The Honorable Judge Gladys Kessler
United States District Court
for the District of Columbia

18