## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------x
SARA WEXLER, on behalf of herself     :
and all others similarly situated,      :
      :
        Plaintiff,     :
      :    Case No. 1:06 CV 01917
      v.       :
      :    Judge Gladys Kessler
UNITED AIRLINES, INC. (a Delaware   :
Corporation) and UAL Corporation    :
(a Delaware Corporation),      :
      :
        Defendants.    :
      :
------------------------------------------------------------x

### PLAINTIFF'S CROSS-MOTION TO REMAND
### ACTION TO SUPERIOR COURT AND
### OPPOSITION TO MOTION TO DISMISS

Plaintiff Sara Wexler ("Wexler"), by and through her attorneys, hereby cross-moves this Court to remand the instant action to Superior Court for the District of Columbia and submits her opposition to United Airlines, Inc.'s and UAL Corporation's (collectively "United") motion to dismiss.  In support of her motion to remand and in opposition to United's motion to dismiss, Wexler submits her Memorandum of Points and Authorities In Support of Plaintiff's Motion to Remand and in Opposition to Motion to Dismiss ("Memorandum") and states as follows:

1.      On October 20, 2006, Wexler commenced this action in the D.C. Superior Court based upon United's failure to honor the terms of a roundtrip ticket purchased by Wexler for travel between Dulles International Airport and Chicago O'Hare International Airport.  Wexler was unable to use the initial leg of the ticket, and, without any notice to her, United cancelled her return flight.  As a result of this cancellation, Wexler was

compelled to purchase a first class ticket for $917 and did not receive a refund. (Complaint ¶¶ 15-18)

2.      On November 9, 2006, United removed this action to this Court, alleging three different grounds for federal jurisdiction: (i) diversity jurisdiction under 28 U.S.C. § 1332(a) (Removal Notice ¶¶ 8-11); (ii) jurisdiction under the Class Action Fairness Act of 2005 (Removal Notice ¶¶ 12-14); and (iii) federal question jurisdiction under 28 U.S.C. § 1331(Removal Notice ¶ 15).  As explained in the Memorandum, none of these three grounds constitutes a valid basis for exercising federal jurisdiction.

3.      Additionally, on November 16, 2006, United moved to dismiss Wexler's complaint.  In support of its motion, United argues that Section 105 of the Airline Deregulation Act preempts Wexler's claims.  However, as explained more fully in the accompanying Memorandum, Wexler's claims all concern the "private ordering" of the relationship between United and its passengers, and are therefore not preempted.

## LEGAL STANDARD

4.      Upon a motion for remand, the removing party bears the burden of demonstrating that removal was proper.  The removing party must show that, "federal subject matter jurisdiction exists, that removal was timely, and that removal was proper." *Kingsley v. Lania,* 221 F. Supp.2d 93, 95 (D. Mass. 2002).  Moreover, removal statutes "should be strictly construed against removal and doubts resolved in favor of remand." *Id.*  Given that United has failed to meet its burden of proof on any of the asserted three grounds for jurisdiction, the case should be remanded to the Superior Court of the District of Columbia.

### THE ACTION SHOULD BE REMANDED TO THE SUPERIOR COURT FOR FAILURE TO ESTABLISH SUBJECT MATTER JURISDICTION

5.    To begin, no federal question jurisdiction exists because Wexler's complaint asserts only state law claims.  United incorrectly asserts that these state law claims require the Court to construe regulations promulgated under the Federal Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  This argument fails because it disregards the well-pleaded complaint rule.  Applying the rule, several courts have rejected the precise argument advanced by United here.  The ADA's preemption provision does ***not*** constitute complete preemption, and thus there is no basis for federal question jurisdiction.  *See generally Kingsley v. Lania,* 221 F. Supp.2d 93 (D.Mass. 2002); *Williams v. Midwest Express Airlines, Inc.,* 315 F. Supp.2d 975 (E.D. Wis. 2004); *Skydive Factory, Inc.,  v. Maine Aviation Corp*., 268 F. Supp.2d 61 (D.Me. 2003).

6.    Next, United has failed to demonstrate that Plaintiff can meet the $75,000 amount in controversy requirement to warrant diversity jurisdiction.  28 U.S.C. § 1332(a) provides that a "district court may exercise its jurisdiction over a case where there is diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest."   The correct amount in controversy for purposes of jurisdiction is $917, the amount Wexler spent on her ticket. United's calculation improperly includes a speculative projection of attorneys' fees, as well as other excludable sums.  The general rule in calculating an amount in controversy prohibits the use of attorneys' fees, unless they are permitted by statute or contract.  *Brand v. Gov. Employees Ins. Co.,* 2005 WL 3201322 (D.D.C. Nov. 29, 2005); *see also Walker v. Waller,* 267 F. Supp.2d 31 (D.D.C. 2003).

United also incorrectly argues that the claim exceeds the required amount in controversy because it will cost United at least $75,000 to modify its electronic booking system; however, case law clearly states that the "amount in controversy is calculated from the plaintiff's standpoint.…" *DiTolla v. Doral Dental IPA of New York LLC*, Docket No. 06-2324-CV, 2006 U.S. App. LEXIS 28684 (2d Cir. Nov. 17, 2006). The cost to United is unsubstantiated and, in any event, irrelevant to the amount in controversy analysis.

7.    Finally, United has failed to establish federal jurisdiction under the Class Action Fairness Act ("CAFA"), which grants federal courts "original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity." Pub. L. No. 109-2, 119 Stat. 4 (2005). While CAFA expands the scope of federal jurisdiction for certain class action lawsuits, it keeps the burden of removal on the removing party. *See Miedema v. Maytag Corp.,* 450 F.3d 1322, 1327 (11th Cir. 2006); *Brill  v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir. 2005); *Abrego v. Dow Chem. Co*., 443 F.3d 676, 686 (9th Cir. 2006). What is more, all doubts regarding the appropriateness of removal are resolved against the removing party. *See Miedema,* 450 F.3d  at 1330. As explained in the accompanying Memorandum, United has not presented any facts to support its assertion that the class members' total damages exceed $5,000,000, and uses mere conjecture to arrive at a contrived amount exceeding $5,000,000.

## THE MOTION TO DISMISS SHOULD BE DENIED

8.      In the event that this Court denies Wexler's motion to remand and reaches the merits of United's motion to dismiss, the motion to dismiss should be denied. Contrary to United's argument, Wexler's claims are not preempted because courts construing the ADA have held that "all contract actions, including claims of breach of duty to transport a passenger, have been found not to be preempted."  *Kingsley v. Lania,* 221 F.Supp.2d 93, 96 (D. Mass. 2002) (citing *Chukwu v. Bd. of Dirs. British Airways,* 889 F. Supp, 12, 14 (D. Mass. 1995), *aff'd mem. sub. nom., Azubuko v. Bd. of Dirs. British Airways*, 101 F.3d 106 (1st Cir. 1996)).   Indeed, the Supreme Court's decision in *American Airlines v. Wolens,* 513 U.S. 219 (1995), is quite unambiguous in holding that "Congress did not intend to preempt common law contract claims." *Charas v. Transworld Airlines, Inc.,* 160 F.3d 1259, 1264 (9th Cir. 1998) (explaining the *Wolens* holding).  Given the Supreme Court's decision in *Wolens* and its progeny, this Court should deny United's motion to dismiss.

WHEREFORE, for the reasons stated herein and in the accompanying Memorandum of Points and Authorities, Plaintiff Sara Wexler respectfully requests that this Court enter an order remanding this case to the D.C. Superior Court.  In the alternative, in the event that this Court rules that removal was proper, Wexler respectfully requests that this Court enter an order denying United's motion to dismiss the Complaint.

Dated: December 15, 2006

LAW OFFICES OF NAT N. POLITO, PC


By:___/s/ Nat N. Polito_____
       Nat. N. Polito (453365)
       1776 K Street, NW, Suite 200
       Washington, DC 20006-2333
       (202) 463-0110

MORGENSTERN JACOBS & BLUE, LLC
Eric B. Fisher (*Pro Hac Vice*)
Laura J. Lefkowitz (*Pro Hac Vice*)
885 Third Avenue
New York, New York 10022
(212) 750-6776
*Of Counsel*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------x
SARA WEXLER, on behalf of herself              :
and all others similarly situated,             :
                                               :
                        Plaintiff,             :
                                               :      Case No. 1:06 CV 01917
                v.                             :
                                               :      Judge Gladys Kessler
UNITED AIRLINES, INC. (a Delaware              :
Corporation) and UAL Corporation               :
(a Delaware Corporation),                      :
                                               :
                        Defendants.            :
                                               :
-----------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2006, a true and correct copy of the

Plaintiff's Cross-Motion to Remand Action to Superior Court and Opposition to Motion

to Dismiss and Plaintiff's Memorandum of Points and Authorities in Support of Motion

to Remand Action to Superior Court and in Opposition to Motion to Dismiss were served

by electronic filing to:

Edward S. Scheideman, Esq.
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C.  20036-2412

_____/s/ Nat N. Polito_____
Nat N. Polito

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
----------------------------------------------------------------x
SARA WEXLER, on behalf of herself              :
and all others similarly situated,             :
                                               :
                            Plaintiff,         :
                                               :    Case No. 1:06 CV 01917
                   vi.                         :
                                               :    Judge Gladys Kessler
UNITED AIRLINES, INC. (a Delaware              :
Corporation) and UAL Corporation               :
(a Delaware Corporation),                      :
                                               :
                            Defendants.        :
                                               :
----------------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND ACTION TO SUPERIOR COURT
AND IN OPPOSITION TO MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND FACTS/PROCEDURAL HISTORY .................................................... 2

ARGUMENT ................................................................................................................... 4

POINT I ........................................................................................................................... 4

    THE ACTION SHOULD BE REMANDED TO STATE COURT ............................... 4

        A.    United Bears the Burden of Showing That Removal Was Proper ...................... 4

        B.    United Has Not Established Federal Question Jurisdiction ................................ 4

        C.    United Has Not Established Diversity Jurisdiction ............................................ 6

        D.    United Has Not Established Jurisdiction Under Class Action Fairness Act ....... 8

POINT II ........................................................................................................................ 10

    THE MOTION TO DISMISS SHOULD BE DENIED ............................................... 10

CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) ........................... 9, 10

*American Airlines v. Wolens*, 513 U.S. 219 (1995) ........................................ 2

*Brand v. Gov. Employees Ins. Co.*, 2005 WL 3201322 (D.D.C. Nov. 29, 2005) .............. 7

*Breitling USA, Inc. v. Fed. Express Corp.,* 45 F. Supp.2d 179 (D. Conn. 1999) ........... 12

*Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005) ............... 9

*Brough v. United Steel Workers of Am., AFL-CIO*, 437 F.2d 748 (1st Cir. 1971) ............. 5

*Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259  (9th Cir. 1998) ...................... 12, 13

*Deerskin Trading Post, Inc. v. United Parcel Serv. Of Am., Inc.,*
    972 F.Supp. 665 (N.D. Ga. 1997) ................................................. 12

*Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745 (Tex. 2003) ........................... 12

*DiTolla v. Doral Dental IPA of New York LLC*, Docket No. 06-2324-CV,
    2006 U.S. App. LEXIS 28684  (2d Cir. Nov. 17, 2006) ........................... 8, 9

*Dugan v. Fed. Express Corp.,* No. CV 02-1234 JFWFMOX,
    2002 WL 31305208 (C.D. Cal. Sept 27, 2002) ........................... 12

*Hodges v. Delta Airlines*, 44 F.3d 334 (5th Cir. 1995) .................................... 13

*Hohn v. Volkswagen*, 837 F. Supp. 943 (C.D. Ill. 1993) .................................... 7

*Howell v. Alaska Airlines, Inc.*, 994 P.2d 901 (Wash. Ct. App. 2000) ........................... 12

*In re Northwest Airlines Privacy Litig.,*  No. Civ. 04-126 (PAM/JSM),
    2004 WL 1278459 (D. Minn. June 6, 2004) .................................... 12

*Kingsley v. Lania*, 221 F. Supp.2d 93 (D. Mass. 2002) ....................................... 4, 5, 6, 11

*Lehman v. US Air Group, Inc.,* 930 F.Supp. 912 (S.D.N.Y. 1996) ................................. 12

*Mazloum v. District of Columbia*, 442 F. Supp.2d 1 (D.D.C. 2006)…………………..…2

*Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006) ........................................ 8, 9

ii

*Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) ............... 12

*O'Callaghan v. AMR Corp.,* No. 04 C 4005, 2005 WL 1498870
   (N.D. Ill. June 8, 2005) ................................................................................. 12

*Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F. Supp.2d 61 (D. Me. 2003) ..... 6, 12

*Smith v. Comair, Inc.,* 134 F.3d 254 (4th Cir. 1998) ......................................... 12

*Srour v. Barnes*, 670 F. Supp. 18 (D.D.C. 1987)................................................. 7

*Travel All Over The World, Inc. v. Elgindy*, 73 F.3d 1423 (7th Cir. 1996) ..................... 12

*United Airlines, Inc. v. Mesa Airlines, Inc,* 219 F.3d 605 (7th Cir. 2000)........................ 12

*Vail v. Pan Am Corp.,* 616 A.2d 523 (N.J. Super. Ct. App. Div. 1992) ........................... 12

*Walker v. Waller*, 267 F. Supp.2d 31 (D.D.C. 2003)....................................... 6, 7

*Weber v. U.S. Airways, Inc.,* 11 Fed. Appx. 56 (4th Cir. 2001) ........................................ 12

*Williams v. Midwest Express Airlines, Inc.*, 315 F. Supp.2d 975 (E.D. Wis. 2004)..... 6, 11

*Your Girl Friday, LLC v. MGF Holdings, Inc.*, Civil Action No. 06-0385 (ESH),
   2006 U.S. Dist. LEXIS 20665 (D.D.C. Apr. 18, 2006) ............................................. 4, 7

**Statutes**

28 U.S.C. § 1331 ........................................................................................... 3

28 U.S.C. § 1332(a) ...................................................................................... 6

28 U.S.C. § 1441 ........................................................................................... 5

28 U.S.C. § 1441(a) ...................................................................................... 6

49 U.S.C. § 41713(b)(1) .............................................................................. 4

**Regulations**

Pub. L. No. 109-2, 119 Stat. 4 (2005)………………………………………………….8

Plaintiff Sara Wexler ("Wexler"), on behalf of herself and all others similarly situated, respectfully submits this memorandum in support of her motion to remand this action to Superior Court and in opposition to the motion of United Air Lines, Inc. and UAL Corporation (collectively "United") to dismiss her complaint.

## PRELIMINARY STATEMENT

This Court should not reach the merits of United's motion to dismiss because the case was improperly removed. Because there is no basis for federal jurisdiction, the action should be remanded to the D.C. Superior Court where it was filed.

In a futile effort to establish federal jurisdiction, United's notice of removal asserts three alternative grounds. None of the asserted grounds is a valid basis for federal jurisdiction:

First, there is no federal question jurisdiction because Wexler's complaint asserts state law claims only. United improperly attempts to manufacture a federal question, arguing that Wexler's state law claims will require this Court to apply federal regulations promulgated under the Airline Deregulation Act ("ADA"). United's argument in this regard fails because it is inconsistent with the well-pleaded complaint rule. Courts have considered, and rejected, this precise argument, holding that the Airline Deregulation Act does not provide for "complete preemption" and thus cannot serve as a basis for federal question removal jurisdiction.

Second, United has not established diversity jurisdiction because the $75,000 amount in controversy threshold is not satisfied. The correct amount in controversy (for jurisdictional purposes) is the $917 in disgorgement damages sought by Wexler. In a doomed attempt to satisfy the requirements of diversity jurisdiction, United improperly relies on attorneys' fees and speculative punitive damages calculations. The case law, however, clearly establishes that this Court cannot rely on such allegations in determining whether the amount in controversy requirement has been satisfied.

Third, United has failed to establish jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). As with its flawed diversity jurisdiction allegations, United improperly relies upon fanciful attorneys' fees calculations and speculative damage calculations in an effort to establish that the class's total damages are more than $5,000,000. As explained below, United has utterly failed to satisfy its burden of proving jurisdiction under CAFA by a preponderance of the evidence.

*       *       *

Notwithstanding the above, in the event that this Court determines that jurisdiction has been established and reaches the merits of United's motion to dismiss, the motion should be denied. United argues that Wexler's claims, which arise out of United's failure to honor or provide a refund for her roundtrip ticket, are preempted by the Airline Deregulation Act. United's argument is overly broad and insufficiently attentive to the Supreme Court's decision in *American Airlines v. Wolens*, 513 U.S. 219 (1995). In *Wolens*, the Supreme Court unambiguously held that claims arising out of private contracts between airlines and their passengers are not preempted. Because Wexler's action arises out of just such a private contract, United's argument for preemption cannot be squared with *Wolens* and the many cases that have followed *Wolens*. Accordingly, United's motion to dismiss should be denied.

## BACKGROUND FACTS/PROCEDURAL HISTORY

Wexler commenced this action in the Superior Court of the District of Columbia on October 20, 2006. The essence of the complaint is a claim for breach of contract.

Simply stated, this action arises out of United's failure to honor the terms of its agreement with Wexler concerning a roundtrip ticket between Dulles International Airport and Chicago's O'Hare International Airport.[1] Wexler purchased her roundtrip

---

[1] For purposes of Wexler's opposition to United's motion to dismiss, all facts alleged in the complaint should be assumed to be true. *See Mazloum v. District of Columbia*, 442 F. Supp.2d 1, 7-8 (D.D.C. 2006).

ticket for $283.09.  For business reasons, Wexler did not fly the outgoing portion of her roundtrip ticket that had her scheduled to travel from Dulles to O'Hare on July 21, 2006. (Complaint ¶ 16.)  Instead, she traveled to Chicago by other means on a different date. On July 23, 2006, Wexler went to O'Hare to board her scheduled United flight back to Dulles.  When she arrived at the United counter, United employees notified her for the first time that United had cancelled the return leg of her flight due to the fact that she did not fly the outgoing leg.  She was required to purchase a full fare ticket for $917, in order to return to her home in Washington D.C.  (Complaint ¶¶ 17-19.)

Based on this conduct, Wexler, on behalf of herself and others similarly situated, asserted claims for: (1) violation of the District of Columbia Consumer Protection Procedures Act ("DCCPPA") (Complaint ¶¶ 20-29); (2) fraud (id., ¶¶ 30-34); (3) negligent misrepresentation (id., ¶¶ 35-38); (4) breach of contract (id., ¶¶ 39-42); and (5) unjust enrichment (id., ¶¶ 43-48).[2]

On November 9, 2006, United removed this action to this Court, alleging three different grounds for federal jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332(a) (Removal Notice ¶¶ 8-11); jurisdiction under the Class Action Fairness Act of 2005 (Removal Notice ¶¶ 12-14); and federal question jurisdiction under 28 U.S.C. § 1331 (Removal Notice ¶ 15).

On November 16, 2006, United moved to dismiss Wexler's complaint, arguing that all of her claims were preempted by federal law.  This memorandum is submitted in support of Wexler's motion to remand this case and in opposition to United's motion to dismiss.

---

[2]     Having considered the authority cited in United's motion to dismiss, Wexler recognizes that the claim under the DCCPPA may be preempted.  However, because there is no federal jurisdiction, that issue is not before this Court.

## ARGUMENT

## POINT I

## THE ACTION SHOULD BE REMANDED TO STATE COURT

**A.    United Bears the Burden of Showing That Removal Was Proper**

This case should be remanded to Superior Court because United has failed to satisfy its burden of demonstrating the propriety of removal under any of the three jurisdictional grounds asserted in its removal notice.  Upon a "motion to remand, the burden is upon the removing party to show that federal subject matter jurisdiction exists, that removal was timely, and that removal was proper….Removal statutes should be strictly construed against removal and doubts resolved in favor of remand."  *Kingsley v. Lania*, 221 F. Supp.2d 93, 95 (D. Mass. 2002) (remanding case against Delta Airlines employee to state court because there was no complete federal preemption of the claim). Because of the "substantial federalism concerns raised by a federal court's exercise of jurisdiction over a removed case, all doubts regarding the existence of removal jurisdiction must be resolved in favor of remand."  *Your Girl Friday, LLC v. MGF Holdings, Inc.*, Civil Action No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665, *7 (D.D.C. Apr. 18, 2006) (citations omitted).  As explained below, United has "failed to meet [its] burden of demonstrating the propriety of removal in this case."  *Id.*

**B.    United Has Not Established Federal Question Jurisdiction**

In 1978, Congress enacted the Airline Deregulation Act ("ADA"), which contains the following preemption provision:

> A State…may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier.

49 U.S.C. § 41713(b)(1).  United argues erroneously that Plaintiff Wexler's complaint presents a federal question because it will require this Court to construe federal regulations promulgated under the ADA concerning an airline's "Contract of Carriage."

(Removal Notice ¶ 15.)  As explained below, courts addressing the precise argument advanced by United have squarely rejected that argument, remanding cases removed on that basis to state court.  Specifically, because the ADA's preemption provision does not constitute "complete preemption," there is no basis for federal question jurisdiction.

Under the well-pleaded complaint rule, in order to establish federal question jurisdiction under 28 U.S.C. § 1441, "it must appear on the face of the complaint that resolution of the case depends upon a federal question."  *Brough v. United Steel Workers of Am., AFL-CIO*, 437 F.2d 748, 749 (1st Cir. 1971).  The "involvement of a federal issue in a case 'does not authorize removal if that involvement arises by way of a federal defense.'"  *Kingsley v. Lania,* 221 F. Supp.2d 93, 95 (D. Mass. 2002) (quoting *Hernandez-Agosto v. Romero-Barcelo*, 748 F.2d 1, 2 (1st Cir. 1984)).

Of course, a plaintiff may not engage in "artful pleading" to frustrate a defendant's right of removal.  "One type of 'artful pleading' involves the 'complete preemption doctrine.  When a plaintiff has asserted a cause of action under state law that has been judicially declared completely preempted by federal law, that cause of action – no matter how it may have been set out in the complaint or characterized by the plaintiff – is necessarily federal, and will be recharacterized as federal, thereby permitting removal.'"  *Id.* at 95-96 (quoting 14B Wright, Miller & Cooper, Federal Practice & Procedure § 3722 at 437).  Where preemption is not complete, however, removal to federal court is not appropriate.

Notwithstanding the ADA's preemption provision, "courts have consistently carved out different types of disputes between passengers and airlines from the preemption clause of the ADA."  *Kingsley,* 221 F. Supp.2d at 96 (D. Mass. 2002).  Thus, "there clearly is not 'complete preemption' of the field to support removal on the basis of a federal question."  *Id.*  Although there may be "federal regulations which the defendants may assert in defense of plaintiff's claims," that is "insufficient to allow the case to remain in this court."  *Id.* at 99.

Here, Wexler's complaint "speaks in terms of state law claims only – there is no mention of any federal claims or issues." *Id.*  Thus, "the issue presented is whether the claims raised by [Wexler] have been completely preempted by federal law so as to make removal on the grounds of a federal question proper." *Id.*  Because the ADA does not provide for "complete preemption," as in *Kingsley*, there is no basis for federal question jurisdiction in this case.  *Id.*; *see also Williams v. Midwest Express Airlines, Inc.*, 315 F. Supp.2d 975 (E.D. Wis. 2004) (no federal question jurisdiction in connection with plaintiff's state law claims against airline because the ADA does not provide for "complete preemption"); *Skydive Factory, Inc., v. Maine Aviation Corp.*, 268 F. Supp.2d 61, 62 (D. Me. 2003) (remanding case for lack of federal question because "plaintiff's contract claim does not present a federal question and does not support removal").

**C.**     **United Has Not Established Diversity Jurisdiction**

United has failed to demonstrate facts sufficient to meet the $75,000 amount in controversy threshold for diversity jurisdiction.  In a futile attempt to meet the jurisdictional threshold, United relies on figures that should not properly be included in the amount in controversy calculation and also performs irrelevant and fanciful calculations.  For example, United argues that its speculative calculation of attorneys' fees, punitive damages and the cost to United of certain injunctive relief should all be included for purposes of determining the amount in controversy.  Those amounts, however, plainly should not be included and the case should be remanded for failure to satisfy the amount in controversy requirement.

Under 28 U.S.C. § 1332(a), a "district court may exercise its jurisdiction over a case where there is diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest." *Walker v. Waller*, 267 F. Supp.2d 31, 31 (D.D.C. 2003).  In accordance with 28 U.S.C. § 1441(a), "where the parties are diverse and the amount in controversy is sufficient, a defendant has a statutory

right to remove an action to a United States District Court." *Id.* Here, however, United has no such right of removal because the genuine amount in controversy for jurisdictional purposes is only $917. To inflate the jurisdictional amount in controversy, United improperly includes attorneys' fees, punitive damages and injunctive relief.

First, United improperly includes attorneys' fees. The "general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Brand v. Gov. Employees Ins. Co.*, 2005 WL 3201322, *6 (D.D.C. Nov. 29, 2005) (citations omitted); *see also Walker*, 267 F. Supp.2d at 33 ("in the absence of an applicable substantive law that would require, or even grant the Court discretion, to award attorneys' fees, the undersigned finds no authority for including speculative attorneys' fees in the amount in controversy"); *Srour v. Barnes*, 670 F. Supp. 18, 22 (D.D.C. 1987) ("attorney fees are generally an improper vehicle for obtaining federal diversity jurisdiction"). Here, there is no statute or contract providing for an award of attorneys' fees, and thus it is inappropriate to include any such projected fees in calculating the amount in controversy. Moreover, even if attorneys' fees could properly be included – which they cannot – United's "conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction in this case." *Your Girl Friday, LLC v. MGF Holdings, Inc.*, Civil Action No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665, *7 (D.D.C. Apr. 18, 2006).

Second, punitive damages should not be included in the calculation of the amount in controversy because, at this stage of the case, they are uncertain and unquantifiable. In any event, this Court should not rely upon United's hypothetical calculation of those damages in determining the amount in controversy. Jurisdiction cannot be founded upon speculation. *See Hohn v. Volkswagen*, 837 F. Supp. 943, 945 (C.D. Ill. 1993) (declining to exercise removal jurisdiction where plaintiff's complaint included a "wholly

unquantified and ambiguous claim for punitive damages," because "jurisdiction cannot be based upon probabilities, surmise or guesswork").[3]

Finally, United's argument that the claim exceeds $75,000 because it will cost United at least that much to modify its electronic booking system is misguided.  The "amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested."  *DiTolla v. Doral Dental IPA of New York LLC*, Docket No. 06-2324-CV, 2006 U.S. App. LEXIS 28684, *16 (2d Cir. Nov. 17, 2006) (remanding case because defendant failed to prove that amount in controversy exceeded jurisdictional requirement under Class Action Fairness Act).  Thus, the cost to United to effect changes to its systems for booking tickets is irrelevant.

Subtracting out the figures that United improperly asks this Court to consider, the true amount in controversy for jurisdictional purposes is the $917 in disgorgement sought by Wexler.  Clearly, that amount is insufficient to satisfy the $75,000 amount in controversy threshold.

**D.    Under United Has Not Established Jurisdiction Under Class Action Fairness Act**

Under the recently enacted Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005), federal courts have "original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)."  *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006).  Although CAFA expands the scope of original federal jurisdiction over certain class actions, CAFA does not alter the burden of establishing federal jurisdiction.  That burden rests squarely on United, as the removing party.  *See id.* at 1328 (removing party bears burden of establishing factual basis for federal jurisdiction

---

[3]        The *Hohn* case is cited with approval in *Your Girl Friday*, 2006 U.S. Dist. LEXIS at *7, which is a case from this district.

under CAFA); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (same); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006) (same); *DiTolla*, 2006 U.S. App. LEXIS 28684, at *16 (same). Furthermore, under CAFA, all doubts about the propriety of removal must be resolved against United. *Miedema*, 450 F.3d at 1329. Finally, where, as here, the "plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Id.* at 1330.

The *Miedema* case is instructive. In that case, plaintiff brought a consumer class action relating to allegedly defective oven ranges. Defendant Maytag, the manufacturer of the ovens in question, removed the case to federal court under CAFA. In response to plaintiff's motion to remand, Maytag put in a detailed affidavit, stating that 6,729 ovens bearing the model number at issue had been sold during the class period and further stating the total value of those ovens to be $5,931,971. The court did not merely accept these particularized facts as true. Instead, taking a hard look at Maytag's affidavit, the court determined that it was insufficient to support a finding of jurisdiction under CAFA because, among other problems, it relied solely on the manufacturer's suggested retail price in calculating the amount in controversy and its identification of the number of ovens at issue may have been inflated. The district court remanded the case to state court due to defendant's failure to meet its burden under CAFA and the Eleventh Circuit affirmed, ruling that the "district court properly placed the burden of proof on Maytag, the removing party, and did not err by applying the principle that doubts about jurisdiction are to be resolved in favor of remand." *Id.* at 1332. The Eleventh Circuit also held that the "district court did not err when it concluded Maytag had not established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000, as required by CAFA." *Id.*; *see also Abrego*, 443 F.3d at 685 (remanding case to state court because defendant did not prove amount in controversy under CAFA by a preponderance of the evidence).

9

As with diversity jurisdiction generally, under CAFA, courts must construe the jurisdictional requirements strictly to avoid "offense of state sensitivities" and "reliev[e] the federal courts of the overwhelming burden of business that intrinsically belongs to the state courts in order to keep them free for their distinctive federal business." *Abrego*, 443 F.3d at 685. Here, United has come forward with no facts to support its bald assertion that the $5,000,000 CAFA threshold is met. Among other flaws, United improperly includes a speculative punitive damages calculation and attorneys' fees, as well as the cost to United to implement injunctive relief. Using the $917 in disgorgement damages as a benchmark, United would have to show that the class has more than 5,452 members to meet the $5,000,000 threshold.

United multiplies its inflated damages figures by 2,000, assuming a class consisting of that number of plaintiffs. United cannot rely on mere conjecture, however, with regard to the size of the class. The issue of class size is uniquely within United's knowledge. Accordingly, given that United bears the burden to present credible evidence to establish jurisdiction under CAFA, it must come forward with a factual basis for its assertions regarding class size. United's failure to do so is an independent basis for holding that United failed to meet its burden of establishing jurisdiction under CAFA.

## POINT II

### THE MOTION TO DISMISS SHOULD BE DENIED

If this Court denies Wexler's motion to remand and considers United's motion to dismiss, it should deny the motion. In support of its motion to dismiss, United argues that Section 105 of the Airline Deregulation Act preempts Wexler's claims. As explained below, because Wexler's claims all concern the "private ordering" of the relationship between United and its passengers, those claims are not preempted by the express directive of the Supreme Court.

The "issue [of] whether federal law preempts state law in connection with disputes between passengers and the airlines has generated much controversy among the courts throughout the country." *Kingsley v. Lania*, 221 F. Supp.2d 93, 96 (D. Mass. 2002). Despite the controversy about the precise scope of federal preemption, it is well-established that "private contract disputes are not preempted by the FAA and ADA, as it is not plausible to conclude that 'Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes or services.'" *Id.* (quoting *American Airlines v. Wolens*, 513 U.S. 219, 232 (1995)). As a result of the Supreme Court's decision in *Wolens*, "all contract actions, including claims of breach of duty to transport a passenger, have been found not to be preempted." *Id.* (citing *Chukwu v. Bd. of Dirs. British Airways*, 889 F. Supp, 12, 14 (D. Mass. 1995), *aff'd mem. sub. nom., Azubuko v. Bd. of Dirs. British Airways*, 101 F.3d 106 (1st Cir. 1996)).

*Williams v. Midwest Airlines, Inc.*, 321 F. Supp.2d 993 (E.D. Wis. 2004), is an instructive case. In *Williams*, the district court ruled that the plaintiff's state law claims against an airline arising out of his allegedly improper removal from a flight were not preempted. The *Williams* court relied chiefly upon the Supreme Court's *Wolens* decision:

> Under *Wolens*, a state law breach of contract claim is not preempted. This is so because Midwest's agreement to transport plaintiffs to New York City was a self-imposed undertaking, and plaintiffs' attempt to enforce it does not involve the enforcement of any state law. *Travel All Over the World*, 73 F.3d at 1432 (citing *Wolens*, 513 U.S. at 229). "A remedy confined to a contract's terms simply holds parties to their agreements." *Wolens*, 513 U.S. at 229.

Conceptually, Counts II through V of Wexler's complaint are no different from those at issue in *Williams*.[4]  In essence, they simply seek to hold United to the terms of its contract with Wexler.  Accordingly, those claims are not preempted.

The Supreme Court's decision in *Wolens* is unambiguous.  One court explained the *Wolens* holding as follows:

> [I]n *Wolens*, the Court concluded that plaintiffs' claims for breach of contract, stemming from the airline's unilateral decision to devalue plaintiffs' frequent flier miles were not preempted.  *See Wolens*, 513 U.S. at 222.  In so doing, the Court held that Congress did not intend to preempt common law contract claims.

*Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1264 (9th Cir. 1998).  Similarly, in *Travel All Over The World, Inc. v. Elgindy*, 73 F.3d 1423, 1431 (7th Cir. 1996), the Court denied a motion to dismiss a contract claim against an airline, explaining that "the terms and conditions in the contract between Travel All and Saudia are 'privately ordered obligations' and therefore do not amount to a state enactment or enforcement of any law." *Id.* (quoting *Wolens*, 115 S. Ct. at 824); *see also Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F. Supp. 2d 61, 62 (D. Me. 2003) ("The breach of contract claim…is not preempted.").  As in the *Travel All Over The World* case, and the many other cases that have addressed this precise issue, Wexler's "claim for compensatory relief for breach of contract is therefore not expressly preempted by the ADA." *Id.*[5]

---

[4]    In the event that this Court rules that it has jurisdiction to decide the motion, Wexler acknowledges that Count I under the DCCPPA may be preempted.

[5]    United's cases are inapposite.  Many of the cases do not involve breach of contract. *See e.g., Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244 (6th Cir. 1996); *Lehman v. US Air Group, Inc.,* 930 F.Supp. 912 (S.D.N.Y. 1996); *United Airlines, Inc. v. Mesa Airlines, Inc,* 219 F.3d 605 (7th Cir. 2000)*; Dugan v. Fed. Express Corp.,* No. CV 02-1234 JFWFMOX, 2002 WL 31305208 (C.D. Cal. Sept 27, 2002).  Other cases were decided ***before*** *Wolens. See e.g., Vail v. Pan Am Corp.,* 616 A.2d 523 (N.J. Super. Ct. App. Div. 1992).  Those cases that involved preemption of contract claims are all dissimilar because the claims at issue made reference to policy considerations outside of the contract. *See e.g., Smith v. Comair, Inc.,* 134 F.3d 254 (4th Cir. 1998); *Breitling USA, Inc. v.  Fed. Express Corp.,* 45 F. Supp.2d 179 (D. Conn. 1999); *Delta Air Lines, Inc. v. Black,* 116 S.W.3d 745 (Tex. 2003); *Howell v. Alaska Airlines, Inc.*, 994 P.2d 901 (Wash. Ct. App. 2000).  Finally, in certain cases cited by United, breach of contract claims were ***not*** preempted. *See e.g., Deerskin Trading Post, Inc. v. United Parcel Serv. Of Am., Inc.,* 972 F.Supp. 665 (N.D. Ga. 1997); *Weber v. U.S. Airways, Inc.,* 11 Fed. Appx. 56 (4th Cir. 2001);

Logically extending the holding in *Wolens* many courts have also found that certain tort claims are not preempted by the ADA, where the tort claims do not constitute state economic regulation of an airlines rates, routes and services. *See, e.g., Charas*, 160 F.3d at 1266; *Hodges v. Delta Airlines*, 44 F.3d 334, 336 (5th Cir. 1995). Here, the tort claims and quasi-contract claims are closely related to the breach of contract claim, seeking damages that arise solely out of United's "private ordering" of its relationships with Wexler (and other similarly situated customers). Accordingly, those additional claims are also not preempted.

In sum, under *Wolens* and its progeny, Wexler's claims plainly should survive United's motion to dismiss.

---

*In re Northwest Airlines Privacy Litig.,* No. Civ. 04-126 (PAM/JSM), 2004 WL 1278459 (D. Minn. June 6, 2004); *O'Callaghan v. AMR Corp.,* No. 04 C 4005, 2005 WL 1498870 (N.D. Ill. June 8, 2005).

## **CONCLUSION**

For the reasons set forth herein, Wexler respectfully requests that this Court enter an order remanding this case to the D.C. Superior Court.  In the alternative, in the event that this Court rules that removal was proper, Wexler respectfully requests that this Court enter an order denying United's motion to dismiss the Complaint.

Dated: December 15, 2006

LAW OFFICES OF NAT N. POLITO, PC


By:___ */s/ Nat N. Polito*_____
         Nat. N. Polito (453365)
         1776 K Street, NW, Suite 200
         Washington, DC 20006-2333
         (202) 463-0110


MORGENSTERN JACOBS & BLUE, LLC
Eric B. Fisher (*Pro Hac Vice*)
Laura J. Lefkowitz (*Pro Hac Vice*)
885 Third Avenue
New York, New York 10022
(212) 750-6776
*Of Counsel*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------------x
SARA WEXLER, on behalf of herself             :
and all others similarly situated,            :
                                              :
                        Plaintiff,            :
                                              :        Case No. 1:06 CV 01917
             v.                               :
                                              :        Judge Gladys Kessler
UNITED AIRLINES, INC. (a Delaware             :
Corporation) and UAL Corporation              :
(a Delaware Corporation),                     :
                                              :
                        Defendants.           :
                                              :
-----------------------------------------------------------------x
```

PLAINTIFF'S ADDENDUM OF UNREPORTED CASES
CITED IN MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND ACTION TO SUPERIOR COURT
AND IN OPPOSITION TO MOTION TO DISMISS

**CASES** **TAB**

*Brand v. Gov. Employees Ins. Co.*, 2005 WL 3201322 (D.D.C. Nov. 29, 2005)     1

*Ditolla v. Doral Dental IPA of New York LLC,* Docket No. 06-2324-CV,     2
2006 U.S. App. LEXIS 286844 (2d Cir. Nov. 17, 2006

*Your Girl Friday, LLC v. MGF Holdings, Inc.,* Civil Action No. 06-0385 (ESH),     3
2006 U.S. Dist. LEXIS 20665 (D.D.C. April 18, 2006)

**TAB 1**

Brand v. Government Employees Ins. Co.D.D.C., 2005.
Only the Westlaw citation is currently available.

United States District Court,District of Columbia.

Howard BRAND Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant.
**No. Civ.A. 04-01133.**

Nov. 29, 2005.

Joan Augusta Harvill, International Law Center of DC, Washington, DC, for Plaintiff.
James Stephen Wilson, Daniel Leonard Shea, Brault, Graham, Scott & Brault, LLC, Rockville, MD, for Defendant.

*MEMORANDUM OPINION*

POGUE, J.[FN4]

>    [FN4.] The Honorable Donald C. Pogue, Judge for the United States Court of International Trade, sitting by designation.

**\*1** Defendant moves to dismiss this action claiming that the amount in controversy is insufficient to support this Court's diversity jurisdiction. Defendant asserts that jurisdiction fails because Plaintiff's contractual claim, alleged in Count I of Plaintiff's complaint, is limited to the amount of $30,000, and because the law does not recognize the tort claim asserted in Count II of the Complaint. For the following reasons the Court GRANTS Defendant's motion to dismiss Count II for failure to state a claim upon which relief can be granted. The Court also GRANTS Defendant's motion to dismiss Count I for lack of jurisdiction.

FACTUAL BACKGROUND

Plaintiff, Howard Brand, resident of the District of Columbia, is seeking relief for property damage as well as physical and mental injuries allegedly caused by an collision of Plaintiff's vehicle with an uninsured motorist's vehicle. Plaintiff alleges that his automobile was insured by Defendant, Government Employees Insurance Company ("GEICO"). Compl. at 7-9. GEICO is incorporated and has its principal place of business in the State of Maryland. Compl. at 3.

Plaintiff made a claim, under the uninsured motorist provision of his insurance, to GEICO, seeking payment for his health care costs, lost time from work and property damage. Compl. at 10. GEICO did not pay Plaintiff's insurance claim. Compl. at 11. Plaintiff has admitted that his contract damages are limited to recovery of $30,000 ($25,000 bodily injury and $5,000 property damage) under the provisions of his insurance contract regarding uninsured motorist coverage. Pl.'s Resp. De.'s Suppl. Br. at 1.

Plaintiff also alleges that the operator of the vehicle that struck Plaintiff's automobile misrepresented to the investigating police officer the facts as to how the collision occurred. Plaintiff further alleges that the operator of the other vehicle stated to the police officer and to the Plaintiff that he had auto insurance coverage when this was not in fact true. Compl. at 12.

Plaintiff alleges that based on the entirety of the information provided to the Defendant by the Plaintiff, the denial of the Plaintiff's insurance claim was "arbitrary and capricious." Compl. at 25. Furthermore, Plaintiff claims that GEICO failed to conduct a reasonable investigation into the facts of the collision. Compl. at 26. As a result, Plaintiff's claim alleges both a breach of contract (Count I) and a bad faith insurance tort (Count II). Plaintiff seeks total compensatory damages of $250,000, attorneys' fees and costs of suit under Count I and punitive damages of $750,000 under Count II. Plaintiff asserts that his complaint states a claim that is within this Court's diversity jurisdiction.

DISCUSSION

I. Standard of Review

In reviewing a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will dismiss a complaint only if the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, the Court "need not accept inferences drawn by the plaintiffs if such inferences are unsupported by facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

**\*2** Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Serv. Inc.,* 124 S.Ct. 2611, 2616-17 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)); *Hunter v. District of Columbia,* 384 F.Supp.2d 257,260 (D.D.C.2005). Federal jurisdiction in civil actions between citizens of different states is only exercised when the amount in controversy exceeds $75,000, exclusive of costs and interest. *See* 28 U.S.C. § 1332(a) (2000). Additionally, the plaintiff bears the burden of establishing the Court's jurisdiction. *Adelman v. UAL Inc.,* 932 F.Supp. 331, 332 (D.D.C.1996) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

When the Court inquires into the satisfaction of the amount in controversy requirement, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (footnotes omitted). According to the law of this Circuit, the "Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Hunter,* 384 F.Supp. at 260 (quoting *Rosenboro v. Kim,* 994 F.2d 13, 17 (D.C.Cir.1993)).

Because the insurance contract in the case at bar limits the damages to $30,000, for the Court to have jurisdiction, said jurisdiction must be based on Plaintiff's claims for punitive damages or attorneys' fees.

II. Count II

A. Bad Faith Refusal to Pay an Insurance Claim

Plaintiff's claim for punitive damages is based on his allegation that Defendant denied his insurance claim in bad faith. Specifically, Plaintiff claims that he sustained damages of mental and emotional distress, lost wages, medical care costs, property damage costs, inconvenience, attorneys' fees and costs of suit, all due to Defendant's bad faith denial of his insurance claim. To analyze such a claim, a federal court sitting in diversity will apply the choice of law rules of the forum state or district. *Cambridge Holdings Group, Inc. v. Fed. Ins. Co.,* 357 F.Supp.2d 89, 93 (D.D.C.2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Both parties agree that District of Columbia law applies.

If it is unclear whether the District of Columbia recognizes a tort of bad faith refusal to pay an insurance claim, the role of this Court is to predict how the District of Columbia Court of Appeals would decide the issue. *Whitaker v. Washington Metro. Area Transit Auth.,* 889 F.Supp. 505, 506-7 (D.D.C.1995).

The Courts of District of Columbia are split as to the recognition of a tort of bad faith refusal to pay an insurance claim. Compare *Washington v. Gov't Employees Ins. Co.,* 769 F.Supp. 383, 387 (D.D.C.1991) ("*GEICO*") ("District of Columbia law does not recognize the tort of bad faith denial of an insurance claim.")[FN1] with *Washington v. Group Hospitalization, Inc.,* 585 F.Supp. 517, 520 (D.D.C.1984) (the District of Columbia is among the "many jurisdictions [that] have recognized a cause of action in tort for the bad faith refusal of an insurer to pay."). To the extent that such a tort is recognized, however, a plaintiff "must show that defendant did not have a reasonable basis for denying benefits

under the policy and that it knew or recklessly disregarded its lack of a reasonable basis when it denied the claim." *Washington v. Group Hospitalization,* 585 F.Supp. at 520.

> FN1. The court in *GEICO* did find in the alternative that "even if the Court were to recognize the tort of bad faith refusal to pay," the plaintiff in that case did not present sufficient evidence allowing her to recover under this theory, or to survive summary judgment. 769 F.Supp. at 387.

**\*3** The notion of a bad faith insurance tort stems from the duty of good faith that is implied in all contracts. District of Columbia law recognizes that "all contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." ' *Cambridge Holdings Group,* 357 F.Supp.2d at 95 (quoting *Paul v. Howard Univ.,* 754 A.2d 297, 310-11 (D.C.2000)). Nevertheless, the District of Columbia, and the courts thereof, have been reluctant to either find or recognize a claim for bad faith refusal to pay insurance benefits. *See, e.g., Messina v. Nationwide Mut. Ins. Co.,* 998 F.2d 2, 4 (D.C.Cir.1993); *Cambridge Holdings Group,* 357 F.Supp.2d at 96; *Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I.,* 896 F.Supp. 8, 12 n. 4 (D.D.C.1995) ("*ARC II* ").

In *Messina,* the Court of Appeals for the District of Columbia noted that "[t]he D.C. Court of Appeals has not squarely addressed the question of whether bad faith denial of an insurance claim constitutes an independent tort under D.C. law." *Messina,* 998 F.2d at 4. *Messina* noted specifically the directly opposite holdings of *GEICO,* 769 F.Supp. at 387, and *Washington v. Group Hospitalization,* 585 F.Supp. at 520. *Messina,* 998 F.2d at 4. After *Messina* was decided, however, the District Court for the District of Columbia clarified this issue. In *ARC II,* the District Court expressed the view that the better approach was that of the holding in *GEICO,* in which the Court held that District of Columbia law does not support a bad faith failure to pay an insurance claim. *ARC II,* 896 F.Supp. at 12 n. 4. This view was later cited approvingly by *Am. Nat'l Red Cross v. Travelers Indem. Co. of R. I.,* 924 F.Supp. 304, 307 n. 5 (D.D.C.1996) ("*ARC III* "). The determination, in *ARC II,* that the District of Columbia does not recognize a common law tort claim of bad faith failure to pay insurance, rested on a comparison of the reasoning behind the two major cases on the recognition of the tort, comparing *GEICO,* 769 F.Supp. at 387 with *Washington v. Group Hospitalization,* 585 F.Supp. at 520.

The holding in *GEICO* was based on several factors. In *GEICO,* Judge Flannery found that the contrary holding in *Washington v. Group Hospitalization* (that such a tort is recognized) was based on a mis-reading of the holding of *Cont'l Ins. Co. v. Lynham,* 293 A.2d 481 (D.C.1972). *GEICO,* 769 F.Supp. at 386. Judge Flannery determined that the issue presented in *Lynham* was not the recognition of a tort of bad faith refusal to pay (and therefore the Court did not decide that issue) but rather was "whether the award of attorneys' fees was justified." *GEICO,* 769 F.Supp. at 386 (citing *Lynham* 293 A.2d. at 484). Consequently, as noted in *GEICO,* "[t]he *Lynham* decision does not create the tort of bad faith refusal to pay...." *Id.*

**\*4** The holding in *GEICO* also rested upon an analysis of the District of Columbia Code, namely "that District of Columbia statutory law does not recognize a cause of action in tort based upon an insurer's bad faith failure to pay an insurance claim." *Id.*[FN2] The court reasoned that because a statutory remedy for overdue benefits was provided, the statutory remedy was intended to be the particular remedy in the case of the non-payment of an insurance claim. *Id.* The Court found the lack of a statutory private cause of action to be telling in light of the fact that there are states that do provide statutorily for such a cause of action. *GEICO,* 769 F.Supp. at 386-87.

> FN2. This analysis is based on the fact that the D.C. statute provides a remedy when an insurer fails to pay insurance benefits, specifically, D.C.Code Ann. § 35-2110(c) (1981) now codified at D.C.Code Ann. § 31-2410(c) (2001). This provision, however, is entitled *"Penalty for overdue payment of personal injury protection benefits."* The Code defines, in § 31-2404, "personal injury protection benefits" as additional insurance, over and above required insurance, that each insurer "shall offer to each person required to have insurance under this chapter...." D.C.Code Ann. § 31-2401(2001). Required benefits are detailed in § 31-2406, as "(i) property damage liability; (ii) third-party personal liability; and (iii) uninsured motorist protection." D.C.Code Ann. § 31-2406(a)(1)(D)(2001). The section further states that "each insurer shall offer optional personal injury protection insurance required by § 31-2404 and underinsured motor vehicle coverage as required by this section." Id. Therefore, § 31-2410(c) distinguishes between additional insurance, for which

it provides a remedy, and required benefits, including uninsured motorist coverage. Additionally, this review of the statute indicates that the provisions of § 31-2410(c) regarding payments for overdue payments of personal injury protection benefits are limited to that optional coverage that District of Columbia motorists may purchase and that uninsured motorist coverage is not optional.

Finally, the court in *GEICO,* observed that in the intervening period between *Washington v. Group Hospitalization* and the decision in *GEICO* at least two District of Columbia cases found that District of Columbia law did not recognize a cause of action for the tort of bad faith failure to pay insurance. *GEICO,* 769 F.Supp. at 387 (citing *Clayton v. Gov't Employees Ins. Co.,* Civ. No. 88-1310 (D.C. May 8, 1989); *Washington Hosp. Center Corp. v. Smith,* Civ. Nos. 746-85 & 815-83 (D.C.Super.Ct. Mar. 23, 1987)). Specifically, the court in *Washington Hosp. Center* found that "District of Columbia law does not recognize a cause of action of bad faith insurance claim denial between insurer and insured, and does not recognize a tort claim for alleged breach of contract." *GEICO,* 769 F.Supp. at 387 (quoting *Washington Hosp. Center* Civ. Nos. 746-85 & 815-813 at 3).

Despite the two cases cited in *GEICO,* in 1996 the District of Columbia Court of Appeals declined to reach the issue of whether the bad faith denial of an insurance claim is recognized as a separate tort. *State Farm Mut. Auto. Ins. Co. v. Hoang,* 682 A.2d 202, 208 (D.D.C.1996) ("even if this court recognized a separate tort of bad faith denial of an insurance claim, an issue we do not decide here ..."). However, the *Hoang* court's analysis of the bad faith insurance claim seems to indicate that such a claim would have to be of the nature of the tort argued in *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982) discussed below, where the tort is not an independent one, but one formed by the merger of a breach of contract with an intentional tort. *Hoang,* 682 A.2d at 208-09.

Turning to Maryland law, because Maryland common law is the basis from which District of Columbia common law arose, *Napoleon v. Heard,* 455 A.2d 901, 903 (D.C.1983) (Maryland is the "source of the District's common law and an especially persuasive authority when the District's common law is silent"), it appears that a common law tort claim for bad faith denial of an insurance claim would not lie in Maryland. As in the District of Columbia, Maryland has very strong language regarding the implied covenant of good faith to be found in all contracts. Although Maryland has recognized a tort of bad faith failure of an insurer to settle (or in investigating claims), *Berkshire Life Ins. Co. v. Md. Ins. Admin.,* 142 Md.App. 628, 791 A.2d 942, 960 (Md.Ct.Spec.App.2002), such a claim was recognized based on a specific reading of the statutory prohibition of unfair trade practices in the health-care insurance industry and rulings made by the Insurance Commissioner. *Berkshire Life Ins.,* 791 A.2d at 960. The Court of Special Appeals of Maryland has specifically found that Maryland "has not recognized a bad faith claim against an insurer in the first-party context, that is holding an insurer liable in tort for failing to pay an underinsurance claim." *McCauley v. Suls,* 123 Md.App. 179, 716 A.2d 1129, 1133 (Md.Ct.Spec.App.1998). The lack of a separate tort of bad faith refusal of an insurance claim in Maryland lends further support to the absence of such a common law claim in the District of Columbia.

**\*5** *Washington v. Group Hospitalization* is the one case that holds affirmatively that the tort of bad faith refusal to pay an insurance claim is recognized in the District of Columbia. In the period after the holding in *Washington v. Group Hospitalization,* the courts of the District of Columbia, and of this Circuit, have either not recognized the tort or have demonstrated a reluctance to do so. Given the persuasiveness of the analyses of *ARC II* and *GEICO* this court finds that the District of Columbia does not currently recognize a claim for the bad faith denial of insurance.

### B. Punitive Damages for refusal to pay insurance claim.

As the cause of action for the tort of bad faith denial of an insurance claim does not lie, Plaintiff does not have a basis with which to assert a claim for punitive damages. The law of the District of Columbia does not favor punitive damages for a breach of contract. *Sere,* 443 A.2d at 37. Punitive damages are generally not awarded for a breach of contract action, "even if the breach is willful, wanton OR malicious." *GEICO,* 769 F.Supp. at 388 (citing *Washington v. Group Hospitalization,* 585 F.Supp. at 521). There is, however, a narrow exception to this general rule, namely, when "the alleged breach of contract 'merges with, and assumes the character of a willful tort.' " *Sere,* 443 A.2d at 37; *Brown v. Coates,* 253 F.2d 36, 39) (D.C.Cir.1958) ("where a breach of contract merges with, and assumes the character of, a wilful tort, calculated rather than inadvertent, flagrant, and in disregard of obligations of trust punitive damages may be assessed.").

Plaintiff alleges that the Bad Faith Insurance Claim of Count II is such a willful tort, therefore providing a basis for the claim for punitive damages. The breach of contract, however, cannot assume the character of a willful tort, if the tort it is merging with is not recognized. From the language of Plaintiff's claim, in which Plaintiff pleads that Defendant "oppressively, maliciously, wantonly, and with a willful disregard of Plaintiff's rights failed and refused to pay Plaintiff," Compl. at 27, it appears that Plaintiff's pleading is similar to the language used in *Sere* i.e., "[t]he defendant's tortious conduct must have been outrageous, characterized by malice, wantonness, gross fraud, recklessness, or willful disregard of the plaintiff's rights." *Sere*, 443 A.2d at 37 (citations omitted). However, the court in *Sere* further clarified that in a breach of contract claim, "punitive damages will not lie even if it is proved that the breach was willful, wanton or malicious." *Id.*

In *Sere* itself the breach was not found to be "extreme and outrageous" nor even tortious. *Id.* at 38. Rather, in *Sere* the complaint alleged a breach of contract which "merge[d] with, and assume[d] the character of the tort of intentional infliction of severe emotional distress." *Id.* at 37 (internal citations omitted). In this instance, Plaintiff has not pled that the breach of contract merged with any tort other than the bad faith insurance claim. As a result, the Plaintiff's claim for punitive damages cannot rest on his breach of contract claim.

### III. Count I

**\*6** Section 1332(a) of Title 28 of the United States Code provides that in actions based on diversity of citizenship jurisdiction, the amount or value of the matter in controversy must exceed $75,000 exclusive of interest or costs. "The general rule is that attorneys fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mut. Ins. Co., v. McKinnon Motors, LLC.,* 329 F.3d 805, 808 n. 4 (11th Cir.2003).

In *Srour* the Court found that "[a]s a matter of first impression ... attorney fees are generally an improper vehicle for obtaining federal diversity jurisdiction." *Srour,* 670 F.Supp. at 22. *Srour* explains, "the Supreme Court has held that 'the policy of the [diversity statute] calls for strict construction.' " *Id.* (citing *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)). As such, "[t]he recovery of attorney fees will nearly always be collateral to a substantive matter in controversy." *Id.; see also Walker v. Waller* 267 F.Supp.2d 31, 33 (D.D.C.2003) ("[I]n the absence of an applicable substantive law that would require, or even grant the Court discretion, to award attorneys fees, the undersigned finds no authority for including speculative attorneys fees in the amount in controversy.").

Other courts have reached this result. *See Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 474 (1st Cir.1979) ("As a general rule, attorney's fees are excludable in determining the matter in controversy because, normally, the successful party does not collect his attorney's fees in addition to or as part of the judgment."). In the case before the court, there is no statutory authority for the recovery of attorneys' fees,[FN3] nor was it agreed to contractually. Plaintiff argues that attorneys' fees are allowable in the District of Columbia in actions against insurance companies. However, the cases to which Plaintiff cites are premised on the duty to defend exception, and not on seeking attorneys' fees in an action to recover under breach of contract. Instead, the cases all refer to attorneys' fees that were recoverable as a result of a duty to defend, not as attorneys' fees recoverable in a breach of contract case.

> FN3. One case, *Messina v. Nationwide Mut. Ins.,* seemed to find that attorneys' fees were statutorily authorized in an uninsured motorist claim. 998 F.2d at 5 (citing to D.C.Code Ann. § 35-2110(e)(1)(1981) now codified at D.C.Code Ann. § 31-2410(e) (2001)). As explained in note 2 above, the provisions of this particular section of the code refer to "representing a claimant in an action for *personal injury protection* benefits which are overdue." (Emphasis added). Plaintiff's claim is under the uninsured motorist provision, and not for personal injury protection benefits. As such, the statutory basis for attorneys' fees in this instance does not exist.

The 'duty to defend' exception, which the Plaintiff tries to invoke, is that "an insured is entitled to fees incurred as a result of his insurer's breach of a duty to defend." *Harris v. Howard Univ., Inc.,* 48 F.Supp.2d 43, 46 (D.D.C.1999). This exception, which several states recognize, is based upon "the rule that the indemnified party may recover attorney's fees and expenses incurred in resisting the indemnified claim." *Safeway Stores, Inc. v. Chamberlain Protective Servs.,* 451 A.2d 66, 70 (D.C.1982).

The 'duty to defend' arises in those scenarios when the insurance company pays for attorneys' fees incurred in defending the Plaintiff when Plaintiff is sued by a third party. The duty to defend arises from the contract itself, and does not arise from defending an alleged breach of contract. "The standard liability policy gives the insurer exclusive control over the investigation, litigation, and settlement of claims against the insured.... The insurer therefore owes a duty to the insured...." *McCauley,* 716 A.2d at 1133 (quoting *Johnson v. Fed. Kemper Ins. Co.,* 74 Md.App. 243, 536 A.2d 1211, 1213 (Md.Ct.Spec.App.1988)). When it is a first-party claim "the insured 'retains all rights to control any litigation necessary to enforce the claim ... the situation is [therefore] a traditional dispute between the parties to a contract." ' *McCauley,* 716 A.2d at 1133-34 (quoting *Johnson,* 536 A.2d at 1211).

**\*7** Plaintiff's claim here is not based on the insurer breaching a contractual duty to defend. Nor is the Plaintiff alleging that there was a bad faith failure to conduct a reasonable investigation. Instead, Plaintiff's claim is based on an alleged breach of contract, which Plaintiff can bring an action to enforce. In such an instance, attorneys' fees are not recoverable. Because attorneys' fees are generally not a means through which to meet the minimum amount in controversy, and Plaintiff's claim for attorneys' fees does not meet one of the recognized exceptions to this general rule, Count I fails to meet the amount in controversy requirement.


CONCLUSION

Count II must be dismissed due to failure to state a claim upon which relief can be granted, and therefore Plaintiff's claim for punitive damages fails. Count I, and therefore the entire action, must be dismissed for a lack of subject matter jurisdiction, as attorneys' fees cannot be added to the contractually limited liability of $30,000 in order to meet the amount in controversy requirement. Accordingly, Defendant's motion to dismiss this action for failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction, is GRANTED.

D.D.C.,2005.
Brand v. Government Employees Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 3201322 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2057553 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum In Reply to Plaintiff's Opposition to the Motion to Dismiss (Aug. 11, 2004) Original Image of this Document (PDF)
• 2004 WL 2056687 (Trial Motion, Memorandum and Affidavit) Plaintiff, Howard Brand's, Opposing Points and Authorities to Defendant's Motion to Dismiss the Complaint (Aug. 5, 2004) Original Image of this Document (PDF)
• 2004 WL 2056677 (Trial Pleading) Complaint (Jul. 2, 2004) Original Image of this Document (PDF)
• 1:04cv01133 (Docket) (Jul. 02, 2004)

END OF DOCUMENT

**TAB 2**

LEXSEE

**William J. DiTolla, on behalf of himself and all those similarly situated, Plaintiff-Respondent, v. Doral Dental IPA of New York, LLC, Doral Dental USA, LLC, and DentaQuest Ventures, LLC, Defendants-Petitioners.**

**Docket No. 06-2324-cv**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**2006 U.S. App. LEXIS 28684**

**October 11, 2006, Argued**
**November 17, 2006, Decided**

**PRIOR HISTORY:** [*1] Appeal from the judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, J.), granting Plaintiff's motion to remand the action to state court and denying Defendants' motion to compel arbitration. Because we agree that the District Court lacks diversity jurisdiction in this action for an accounting, the judgment of the District Court is.

**DISPOSITION:** AFFIRMED, and the motion for a stay is DENIED as moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff dentist filed a class action in state court, seeking an accounting from defendants, collectively a third-party administrator of a state dental panel reimbursement pool. The administrator appealed from an order of the United States District Court for the Eastern District of New York granting the dentist's motion to remand the case to state court for lack of diversity jurisdiction under 28 U.S.C.S. § 1332(d)(2).

**OVERVIEW:** Asserting that the administrator owed a fiduciary duty to the dentist and the purported class, the dentist sought an accounting of all amounts by which the pool was funded and reduced throughout the period in which the administrator was under contract, the amounts paid out to all dentists in the class, and the methods by which such payments to dentists were calculated. The dentist sought an accounting to determine whether the administrator made improper deductions from the pool as it had allegedly done in other states. The administrator contended that 28 U.S.C.S. § 1332(d)(2)'s $ 5 million amount in controversy requirement was satisfied because the amount by which the pool was funded and reduced during the class period exceeded $ 40 million. On appeal, the court held that the administrator failed to met its burden of demonstrating federal court jurisdiction. The court determined that the entire value of the pool was not in controversy because the dentist did not claim that he owned the pool. At most, the complaint suggested a claim to some yet undefined portion, the amount of which was contingent on the outcome of the accounting.

**OUTCOME:** The court affirmed the district court's judgment.

**CORE TERMS:** pool, accounting, amount in controversy, permission, dentist, funded, class action, removal, notice, certificate of deposit, federal jurisdiction, traditional rule, beneficiaries, presume, restitution, estimated, subject matter jurisdiction, rendering judgment, parties stipulated, burden of proving, party asserting, present appeal, calculating, thoroughly, equitable, ownership, docketed, briefing, commence, unsound

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > General Overview*
*Civil Procedure > Class Actions > General Overview*
[HN1] The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amended diversity jurisdiction requirements by vesting jurisdiction in the federal courts over class actions where, inter alia, the amount in controversy exceeds $ 5 million. 28 U.S.C.S. § 1332(d)(2).

*Civil Procedure > Removal > Postremoval Remands > Appellate Review*
*Civil Procedure > Class Actions > Appellate Review*
[HN2] The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), enables courts of appeals to accept an appeal from an order of a district court granting or denying a motion to remand a class action to the state court from which it was removed, 28 U.S.C.S. § 1453(c)(1).

*Civil Procedure > Removal > Postremoval Remands > Appellate Review*
*Civil Procedure > Class Actions > Appellate Review*
[HN3] The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), requires that courts of appeals complete all action on an appeal from a district court's grant or denial of a motion to remand, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted under 28 U.S.C.S. § 1453(c)(3). 28 U.S.C.S. § 1453(c)(2). If a court does not issue a final judgment within that 60-day time period, the statute provides that the appeal shall be denied. 28 U.S.C.S. § 1453(c)(4).

*Civil Procedure > Removal > Postremoval Remands > Appellate Review*
*Civil Procedure > Class Actions > Appellate Review*
*Civil Procedure > Appeals > Reviewability > Time Limitations*
[HN4] The "filing" of an appeal for purposes of the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005), occurs on the date in which the court of appeals issues an order granting permission to appeal. This holding is consistent with the time-calculation provision of Fed. R. App. P. 5, governing appeals by permission, which applies to CAFA appeals. Fed. R. App. P. 5(d)(2) provides that the date when the order granting permission to appeal is entered serves as the date of the notice of appeal for calculating time under these rules. Accordingly, CAFA's 60-day clock for rendering judgment starts running on the day that the court's order granting permission to appeal is filed.

*Civil Procedure > Jurisdiction > General Overview*

*Civil Procedure > Class Actions > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN5] Prior to the enactment of the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005), the party asserting federal jurisdiction bore the burden of proving that the case was properly in federal court. The United States Court of Appeals for the Second Circuit holds that the CAFA has not changed this traditional rule.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN6] The United States Court of Appeals for the Second Circuit reviews de novo a district court's subject matter jurisdiction determination.

*Civil Procedure > Remedies > Equitable Accountings > General Overview*
[HN7] Under New York law, an accounting is a distinct cause of action rooted in equity. Such action seeks an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due. Although a request for an accounting typically accompanies a demand for restitution or other monetary relief, a plaintiff seeking an accounting need not identify a particular asset or fund of money in the defendant's possession to which the plaintiff is entitled. Nor need a plaintiff in a fiduciary relationship with the defendant allege any wrongdoing.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > Determinations*
[HN8] In actions for declaratory or injunctive relief, which, like an accounting, are equitable in nature, the amount in controversy is measured by the value of the object of the litigation.

**COUNSEL:** PETER J. STONE, Foley & Lardner LLP (Brian E. Cothroll, Robert A. Scher, Jeremy L. Wallison, on the brief), Milwaukee, Wisconsin, New York, NY, for Defendants-Appellants Doral Dental IPA of New York, LLC, Doral Dental USA, LLC, DentaQuest Ventures, LLC.

JEROME M. MARCUS, Berger & Montague, PC (Jonathan Auerbach, on the brief) Philadelphia, PA, (Thomas E.L. Dewey, Elaine Block, Dewey Pegno & Kramarsky LLP, on the brief), New York, NY, for Plaintiff-Appellee William DiTolla.

**JUDGES:** BEFORE: WESLEY, HALL, Circuit Judges, JONES, District Judge *:

> * The Honorable Barbara S. Jones, United States District Judge for the Southern District of New York, sitting by designation.

**OPINION BY:** HALL

**OPINION:** HALL, *Circuit Judge*:

The appeal in this class [*2] action asks us to determine the amount in controversy in an action for an accounting where there is no accompanying demand for damages or restitution. Appellants, collectively a third-party administrator of a New York Dental Panel Reimbursement Pool ("the Pool") funded by Medicaid and Medicare, argue that, because DiTolla seeks an accounting of all amounts by which the Pool has been funded and reduced (an estimated $ 40 million), he has put the entire $ 40 million "in controversy." n1 As such, they contend, the amount in controversy is well over the $ 5 million jurisdictional requirement imposed by the Class Action

Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"). For the reasons that follow, we hold that the Appellants have not met their burden of demonstrating that the amount-in-controversy requirement has been met. We affirm the judgment of the district court and deny as moot the Appellants' motion seeking a stay.

n1 As discussed below, it is unclear which funds Appellants calculate to total $ 40 million.

[*3]

Preliminarily, we also hold that, under the provision of CAFA requiring courts of appeals to "complete all action" on appeals "not later than 60 days after the date on which such appeal was filed . . . ," 28 U.S.C. § 1453(c)(2), we are not required to deny the appeal despite the fact that it was docketed more than 60 days prior to the time that a panel of this Court granted the petition to allow it.

## BACKGROUND

Doral Dental IPA of New York, LLC, Doral Dental USA LLC, and DentaQuest Ventures, LLC (collectively "Doral Dental") compensate, through this Pool and others, dentists operating in various states who have agreed to treat patients eligible under Medicaid or Medicare. The pools consist of state and federal funds from which participating dentists are paid monthly on a *pro rata* basis. According to their provider agreements, Doral Dental may subtract associated consulting or brokerage fees from the pools prior to distributing the remaining monies to the dentists.

In February 2006, Plaintiff-Appellee Dr. William J. DiTolla, a New York-licensed dentist, filed on behalf of himself and all other dentists receiving funds from the New York Pool [*4] a class action complaint in the Nassau County Supreme Court. Asserting that Doral Dental owed a fiduciary duty to DiTolla and the purported class, the complaint sought an accounting of "all amounts by which the Pool was funded and reduced throughout the period in which Defendants have been under contract . . . as well as the amounts paid out to all Dentists in the class, and the methods by which such payments to Dentists were calculated." DiTolla noted that the Doral Dental entities were the subjects of ongoing federal grand jury investigations in several states for allegedly deducting improper or sham consulting fees from the Pools, and that Doral Dental had purportedly settled for $ 5.25 million a class action relating to improper deductions from a Pennsylvania Pool.

Doral Dental removed the action to the United States District Court for the Eastern District of New York pursuant to [HN1] CAFA, which has amended diversity jurisdiction requirements by vesting jurisdiction in the federal courts over class actions where, *inter alia*, the amount in controversy exceeds $ 5 million. *See* 28 U.S.C. § 1332(d)(2); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 341 n. 7 (2d Cir. 2006). [*5]

Doral Dental's notice of removal asserted that the amount in controversy exceeded the sum of $ 5 million, exclusive of interest and costs. Specifically, Doral Dental averred that the amounts by which the Pool was funded and reduced during the class period exceeded $ 40 million. After the action was removed, DiTolla moved to remand the action to the state court, contending that because the complaint sought only an accounting -- a remedy for which no value could be assigned -- the amount in controversy requirement had not been met.

The District Court granted DiTolla's motion and remanded the case to the state court. The District Court determined as a preliminary matter that CAFA had not altered the traditional rule that the party asserting federal jurisdiction bears the burden of proving the

case is properly in federal court. Next, the District Court rejected the argument that the res of the Pool was the measure by which to determine whether the statute's jurisdictional minimum was satisfied. Citing *Macken v. Jensen*, 333 F.3d 797 (7th Cir. 2003), the District Court held that, because DiTolla sought only information, and the value of that information could not be estimated, [*6] Doral Dental had failed to meet their burden of establishing federal jurisdiction.

In accordance with [HN2] CAFA's provision enabling courts of appeals to "accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed," 28 U.S.C. § 1453(c)(1), Doral Dental petitioned for this Court's permission to appeal the District Court's decision. After this Court granted Doral Dental's petition, and before briefing, Doral Dental moved for a stay of the District Court's remand order or, in the alternative, to enjoin the state court from proceeding with the remanded action. Pursuant to Fed. R. App. P. 8(a)(2)(D), a single judge of this Court granted Doral Dental a temporary stay subject to this panel's review.

## DISCUSSION

### I. CAFA's 60-day Deadline

Before addressing the jurisdictional question of the amount in controversy, we *nostra sponte* address another issue presented by this appeal -- whether, as of the date that a panel of this Court granted Doral Dental permission to appeal and before the parties stipulated to an enlargement [*7] of time in which to complete all action on this appeal, the Court should have denied the appeal. The issue arises from [HN3] CAFA's requirement that courts of appeals "complete all action on such appeal [from a district court's grant or denial of a motion to remand], including rendering judgment, not later than 60 days after the date on which such appeal was *filed*, unless an

extension is granted under [28 U.S.C. § 1453(c)](3)." 28 U.S.C. § 1453(c)(2) (emphasis added). If a court does not issue a final judgment within that 60-day time period, the statute provides that the appeal "shall be denied." 28 U.S.C. § 1453(c)(4). Here, Doral Dental filed a petition for permission to appeal on May 19, 2006, but the petition itself was not granted until sixty-six days later on July 24, 2006. Doral Dental's brief was filed on August 17, 2006, and, on September 21, 2006, the parties stipulated pursuant to section 1453(c)(3)(A) to a 60-day extension of our deadline to render judgment.

The question to be answered is: when was the appeal "filed" for purposes of commencing the original CAFA 60-day period? If we were to interpret [*8] the "filing" of the appeal to be the May 19 filing of the petition, the present appeal would have been effectively "denied" by operation of section 1453(c)(4) before we even granted Doral Dental permission to appeal. That is, as of July 24, 2006, the only entry this Court would have had authority to make was a denial of the appeal because by that date 60 days had already passed since Doral Dental's initial filing. We reject this interpretation, however, and hold that [HN4] the "filing" of the appeal for CAFA purposes occurs on the date in which this Court issues an order granting permission to appeal. Thus, we presume that Congress intended the "filing" of the appeal to mean the commencement of the appeal, not merely the docketing of the appeal.

This holding is in line with our administrative handling of this case. Although the May 19 filing of the petition for permission to appeal *docketed* the present appeal, it was the July 24 order granting that petition that triggered the Clerk's Office to commence its routines for preparing the appeal for briefing and argument. Our holding is also consistent with the time-calculation provision of Fed. R. App. P. 5 [*9], governing appeals by permission, which we conclude applies to

CAFA appeals. *See* Fed. R. App. P. 5(d)(2) ("The date when the order granting permission to appeal is entered serves as the date of the notice of appeal for calculating time under these rules.").

Accordingly, CAFA's 60-day clock for rendering judgment starts running on the day that the Court's order granting permission to appeal is filed. In so holding, we join several of our sister circuits. *See Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 678 (7th Cir. 2006); *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1162-63 (11th Cir. 2006); *Patterson v. Dean Morris, L.L.P.*, 444 F.3d 365 (5th Cir. 2006); *Bush v. Cheap Tickets, Inc.*, 425 F.3d 683, 685-86 (9th Cir. 2005). We were thus not required to deny the appeal and may proceed to address its relevant issues within the additional time stipulated by the parties.

## II. Burden of Proof

It is well-settled that, [HN5] prior to CAFA's enactment, "[t]he party asserting federal jurisdiction [bore] the burden of proving that the case [was] properly [*10] in federal court." *Gilman v. BHC Sec.*, 104 F.3d 1418, 1421 (2d Cir. 1997) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)). It is an issue of first impression in this Court whether CAFA has changed this traditional rule. Substantially for the reasons articulated by the District Court, we join three of our sister circuits and hold that it has not. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).

We reject Doral Dental's argument that it would be "unsound" to hold that Congress intended to adopt the traditional rule in the context of CAFA actions. On the contrary, it would be thoroughly unsound for this Court to reject a longstanding rule absent an explicit

directive from Congress. *See id.* We presume that Congress, when it enacted CAFA, knew where the burden of proof had traditionally been placed. By its silence, we conclude that Congress chose not to alter that rule. *See Cannon v. University of Chicago*, 441 U.S. 677, 699, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979) [*11]  ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with . . . precedents [interpreting a private right of action in various statutes] and that it expected its enactment [of Title IX] to be interpreted in conformity with them.").

## III. The Amount in Controversy

[HN6] We review de novo a district court's subject matter jurisdiction determination. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

[HN7] Under New York law, an accounting is a distinct cause of action rooted in equity. *See Fur & Wool Trading Co. v. George I. Fox*, 245 N.Y. 215, 156 N.E. 670 (1927); *Marcus v. Fabrikant*, 81 A.D.2d 527, 438 N.Y.S.2d 93 (1st Dep't 1981); *300 Broadway Realty Corp. v. Kommit*, 37 Misc.2d 325, 235 N.Y.S.2d 205 (Sup. Ct. 1962). Such action seeks "an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due." 1 AM. JUR. 2D *Accounts and Accounting* § 52 (2006). Although a request for an accounting typically accompanies a demand for restitution or other monetary relief, a plaintiff [*12] seeking an accounting "need not identify a particular asset or fund of money in the defendant's possession to which the plaintiff is entitled." 1A C.J.S. *Accounting* § 6 (2006). Nor need a plaintiff in a fiduciary relationship with the defendant allege any wrongdoing. *Morgulas v. J. Yudell Realty, Inc.*, 161 A.D.2d 211, 213-14, 554 N.Y.S.2d 597, 600 (1st Dep't 1990).

Calculating the amount in controversy in an action for an accounting is not a

straightforward task. As the remedy sought is equitable, and not legal, a monetary value cannot be easily assigned. The Supreme Court has held that, [HN8] in actions for declaratory or injunctive relief, which, like an accounting, are equitable in nature, the amount in controversy is measured by the value of the object of the litigation. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

Turning first to DiTolla's complaint, nowhere do we find that he has specified an amount alleged to be in controversy. In the first paragraph, moreover, DiTolla states in pertinent part: "This case is brought to compel disclosure of *whether* a scheme whereby a fund of millions [*13] of dollars . . . was fraudulently bilked by Defendants in New York as it *may* have been in other states by the same actors." Complaint at P 1 (emphasis added). He goes on to reassert the contingent nature of his quest: "Plaintiff brings this action for an accounting to determine *whether* Doral made improper deductions from the Pool in New York, to improperly compensate persons as it had *allegedly* done in Tennessee and Pennsylvania." *Id.* at P 22 (emphasis added).

Doral Dental's assertions in support of their efforts to remove this case shed little additional light on the amount in controversy. In fact, they seem to argue simultaneously that the object of litigation is both "the amounts by which the *Pools* at issue were funded and reduced, as well as the amounts paid to all dentists in the purported class," and also the entire value of the New York Pool itself. These figures are presumably not interchangeable, for while $ 40 million may have gone into and out of the Pool (or "Pools") during the contract period, the current balance of the New York Pool is likely much less. Indeed, nowhere do they reveal the present balance of the New York Pool. n2 Moreover, it appears [*14] from the fact that Doral Dental used the plural "Pools" in their

notice of removal that the $ 40 million figure might take into account the money going into and out of pools in other states, and those funds are clearly not included in DiTolla's demand for an accounting.

> n2 Citing to the notice of removal, Doral Dental's reply brief asserts that it is "undisputed" that the value of the Pool is approximately $ 40 million. The notice of removal, however, does not state the value of the New York Pool, but rather approximates that $ 40 million has gone into and out of the "Pools."

Although it is unclear exactly what funds Doral Dental identified as comprising the res at issue, we proceed on the District Court's assumption that the asserted res is the New York Pool, and we will assume that the fund meets the jurisdictional requirements of CAFA. n3 That amount, however, is not "in controversy" in the present litigation. Indeed, DiTolla's complaint does not even purport to suggest the value of, much less lay claim [*15] to, the Pool. It seeks only an accounting, the results of which are presently unknown. For that reason, no one can say how much money may be ultimately claimed by DiTolla. *See Kheel v. Port of New York Authority,* 457 F.2d 46, 49 (2d Cir. 1972) ("Generally . . . the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." (citation and internal quotation marks omitted)).

> n3 Our holding would apply equally if we assumed that the asserted res was the amount of funds going into and out of the Pool or that the asserted res was the

amount going into and out of the pools in New York and other states.

In support of their argument that we should consider the value of the Pool as the amount in controversy, Doral Dental's briefs erroneously rely on our decision in *Correspondent Services Corp. v. First Equities Corp.*, 442 F.3d 767 (2d Cir. 2006) [*16] ("*Correspondent III*"). In that case, we affirmed a district court judgment dismissing for subject matter jurisdiction a declaratory judgment action concerning the ownership of a worthless certificate of deposit. *See id.* We agreed with the district court that, because the plaintiff had identified the certificate of deposit as the object of the controversy, its value was the appropriate measure of the amount in controversy. *See id.* at 769. In *Correspondent*, the plaintiff asserted outright ownership of the certificate of deposit. Here, DiTolla asserts only a beneficial interest in the Pool. By doing so he does not place the entirety of the Pool "in controversy," because he makes no claim that he owns it, and at most he suggests a claim to some yet undefined portion, the amount of which is contingent on the outcome of the accounting. n4

      n4 Reaching back into the first half of the previous century, Doral Dental's briefs cite for support a Fifth Circuit case from 1942 and a Western District of Wisconsin case from 1908. These cases do not help their position. The value of the objects of litigation in both *Garrett v. First National Bank*, 153 F.2d 289 (5th Cir. 1946), and *Rogers v. Lawton*, 162 F. 203 (C.C. W.D. Wis. 1908), could be estimated: the plaintiffs in *Garrett*, heirs to a trust, contested a defendant bank's collection of $ 50,000 in insurance proceeds in breach of the trust; and the complainant in *Rogers* sought an accounting of a $ 4,000 farm, in which she had an ownership interest. *See*

*Garrett*, 153 F.2d at 291; *Rogers*, 162 F. at 205. Here, as discussed, DiTolla does not estimate the amount of funds about which there may be a controversy.

[*17]

Our analysis is compatible with that of the Seventh Circuit in *Macken*, 333 F.3d 797, although we note that the two cases are not identical. The plaintiff seeking trust documents in *Macken* "d[id] not contend that the trust ha[d] failed to honor any financial obligations to [the beneficiaries]," *Macken*, 333 F.3d at 799. The Seventh Circuit considered what the value was to the plaintiff of obtaining the trust instrument and amendments -- what the value of the "secret" was. *Id.* at 800. The court noted that only a "grave error" by the trustee in determining entitlements could cost the beneficiaries $ 75,000, the requisite amount in controversy. The court also pointed out that the plaintiff had conceded that "she ha[d] no reason to suspect that the trustee ha[d] made . . . any error," *id.* Accordingly, the Seventh Circuit determined that, at best, the value to the beneficiaries was speculative and, therefore, that "litigation [had to] commence in state court." *Id.*

Here, DiTolla states in his complaint that he suspects, based on lawsuits and criminal investigations in other states, Doral Dental "fraudulently bilked" [*18] the Pool. DiTolla acknowledges in his brief that he commenced the accounting action "after he learned [some] alarming facts about [Doral Dental's] operation of a pool in Pennsylvania identical to the one from which he was paid." From this we may infer that if the accounting were to reveal such potential fraud, he and the putative class would stand to gain court-ordered restitution or a settlement. We cannot say beyond mere speculation, however, whether those damages, if they are awarded, would be more than $ 5 million. Doral Dental has thus failed to

demonstrate that the claim here satisfies CAFA's jurisdictional amount in controversy.

## CONCLUSION

The judgment of the District Court is AFFIRMED, and the motion for a stay is DENIED as moot.

**TAB 3**

LEXSEE

**YOUR GIRL FRIDAY, LLC, Plaintiff, v. MGF HOLDINGS, Inc., et al., Defendant.**

**Civil Action No. 06-0385 (ESH)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**2006 U.S. Dist. LEXIS 20665**

**April 18, 2006, Decided**

**CORE TERMS:** removal, trademark, settlement agreement, federal question, amount in controversy, notice, supplemental jurisdiction, original jurisdiction, diversity, enforcement action, jurisdictional amount, breach of contract, punitive damages, concealment, requisite, reply, prevailing party, counterclaims

**COUNSEL:** [*1] For YOUR GIRL FRIDAY, LLC, Plaintiff: Ugo A. Colella, PATTON BOGGS, LLP, Washington, DC.

JULIE COLLINSWORTH, also known as JULIE HAGENMAIER, also known as JULIE COLLINSWORTH HAGENMAIER, also known as JULIE HAGENMAIER COLLINSWORTH, Defendant: Pro se, Cincinnati, OH USA.

**JUDGES:** ELLEN SEGAL HUVELLE, United States District Judge.

**OPINION BY:** ELLEN SEGAL HUVELLE

**OPINION:**

### MEMORANDUM OPINION

On January 27, 2006, plaintiff Your Girl Friday, LLC, filed a complaint in the Superior Court of the District of Columbia, alleging that defendants MGF Holdings, Inc. and its chief officer Julie Collinsworth had breached a settlement agreement stemming from a trademark dispute previously pending before this Court. (*See MGF Holdings, Inc. v. Your Girl Friday, LLC*, Civ. No. 05-1338 (D.D.C.).) Following service, *pro se* defendant Collinsworth filed a notice of removal with the Court under 28 U.S.C. § 1446, contending that jurisdiction was proper under 28 U.S.C. §§ 1331, 1332, and 1367. Having considered the parties' responses to the Court's March 20, 2006 Order to Show Cause, the Court will remand the [*2] case to the Superior Court of the District of Columbia.

In her notice of removal, Collinsworth first contends that the case falls within the Court's federal question jurisdiction as a result of its relation to the prior trademark dispute between the parties. (*See* Notice of Removal P3.) On July 5, 2005, defendant MGF Holdings, Inc. filed a trademark infringement action against plaintiff in this Court, alleging that Your Girl Friday was acting in violation of defendant's right to the mark "My Girl Friday." (*See MGF Holdings, Inc.*, Civ. No. 05-1338 (Jul. 5, 2005) (complaint).) Following plaintiff's assertion of a number of counterclaims, the parties entered a September 9, 2005 "interim enforceable agreement" providing that MGF Holdings

would pay Your Girl Friday $ 50,000 and that Your Girl Friday would refrain from using any mark confusingly similar to "My Girl Friday." (*See* Def's Rep. Ex. 1.) The agreement also entitled the prevailing party in any enforcement action to "reasonable attorneys' fees, costs, and expenses arising out of or related to the enforcement action." (*Id.*) Plaintiff later dismissed its counterclaims voluntarily, and the case was terminated on January 26, 2006. ( [*3] *See MGF Holdings, Inc.*, Civ. No. 05-1338 (Jan. 26, 2006).)

According to defendant, plaintiff's breach of contract action "refers and relates to [the] federal trademark rights and obligations of the various parties," therefore bringing it within the Court's federal question jurisdiction. (*See* Notice of Removal P3.) Defendant notes that plaintiff's complaint repeatedly references the parties' trademark dispute and cites a provision of the settlement agreement providing that "neither party shall object to the addition of any causes of action arising out of or related to [the contract] ... in the event the [trademark] matter is placed back onto the Court's docket." (Def.'s Rep. at 4.) While defendant is undoubtedly correct that the present case bears a "connection to a[] federal action" (*id.*), this connection does not transform plaintiff's contract claim into a federal question. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented [*4] on the face of the plaintiff's properly pleaded complaint."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") Notably, defendant has failed to identify any federal question raised by plaintiff's complaint, relying instead on the much-repeated assertion that "the ... matter at hand *is because of* the Federal Case and the

Federal Case Settlement Agreement that was reached between the parties as a result of, because [of] and due to the Federal Case." (Def.'s Rep. at 6 (emphasis in original).) Removal cannot, therefore, be supported on the basis of 28 U.S.C. § 1331.

Defendant's related suggestion that this case is cognizable under the Court's supplemental jurisdiction is also without merit. As already noted, the "question and issue of [the] federal trademark and intellectual property rights of the parties" (*see* Notice of Removal P5) is no longer pending before this Court. There is, in short, no claim to supplement. Moreover, an assertion of supplemental jurisdiction would be inappropriate here as the parties'    [*5] trademark and breach of contract claims turn on separate facts. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (stating that, for purposes of pendent jurisdiction, "state and federal claims must derive from a common nucleus of operative fact"); *see also* 28 U.S.C. § 1367(a) (providing for "supplemental jurisdiction over all other claims that are so related to claims in the action within [a district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"). Accordingly, removal may not be premised on 28 U.S.C. § 1367.

Defendant also argues that the Court has original jurisdiction under the diversity statute. As the diversity of the parties is not in dispute, the only question is whether the amount here in controversy "exceeds the sum or value of $ 75,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(a). Such a demand is not apparent on the face of plaintiff's complaint, which requests "judgment in the amount of $ 50,000.00, plus" -- consistent with the settlement agreement [*6]    -- "reasonable attorneys' fees, costs, and expenses; pre and post-judgment interest; and, any other and further relief, both at law and in equity, to which Plaintiff may show itself justly entitled."

(Compl. at 14.) In her Notice of Removal, defendant nonetheless argues that the amount in controversy is "well in excess of $ 75,000," citing the complaint's "allegations pertaining to fraudulent representation and concealment of material facts." (Notice of Removal P4.) In her reply to plaintiff's response to the Court's show cause order, n1 defendant further contends that the requisite jurisdictional amount is met due to plaintiff's request for attorneys' fees, suggesting that plaintiff's attorney "may bill out at as much as $ 400.00 per hour" and thus "in order to accrue $ 25,000.00 in attorney's fees, YGF's counsel would only need to expend some 75 hours of work." (*See* Def.'s Rep. at 8-9.)

n1 Defendant's Notice of Removal did not raise plaintiff's potential attorneys' fees in attempting to establish the amount in controversy. *See* Notice of Removal P4. Though jurisdiction must be established in the notice of removal, *see, e.g., Coca-Cola Bottling of Emporia, Inc. v. South Beach Beverage Co., Inc.*, 198 F. Supp. 2d 1280, 1283 (D. Kan. May 9, 2002) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)) ("The movant must meet its burden in the notice of removal, not in some later pleading."), the Court will here consider those arguments raised by defendant in her subsequent reply.

[*7]

Because of the substantial federalism concerns raised by a federal court's exercise of jurisdiction over a removed case, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941), all doubts regarding the existence of removal jurisdiction must be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002); *Anile Pharmacy, Inc. v. Hoffman-Laroche, Inc.*,

2000 U.S. Dist. LEXIS 11348, *19 (D.D.C. Feb 1, 2000). Defendant has failed to meet her burden of demonstrating the propriety of removal in this case. *See Johnson-Brown v. 2200 M Street LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003). While plaintiff's complaint does contain allegations of fraud and concealment, they are included in an attempt to establish defendant Collinsworth's individual liability for acts taken as an officer of defendant MGF Holdings; plaintiff has not requested punitive damages nor raised any claims based on fraud. (*See* Def.'s Rep. Ex. 1.) With regard to the amount of attorneys' fees available to plaintiff [*8] under the settlement agreement for seeking enforcement of the contract, n2 *see, e. g., Brand v. Gov. Employees Ins. Co.*, 2005 WL 3201322, *6 (D.D.C. Nov. 29, 2005) ("'The general rule is that attorneys fees do not count towards the amount in controversy unless they are allowed for by statute or contract.'") (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n. 4 (11th Cir. 2003)), defendant's conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction in this case. *Cf. Hohn v. Volkswagen*, 837 F. Supp. 943, 945 (C.D. Ill. 1993) (declining to exercise removal jurisdiction where plaintiffs' complaint included a "wholly unquantified and ambiguous claim for punitive damages," as "jurisdiction cannot be based upon probabilities, surmise or guesswork"). Under the terms of the settlement agreement, the prevailing party in any enforcement action is entitled to "reasonable attorneys' fees." (Def.'s Rep. Ex. 1.) In light of plaintiff's $ 50,000.00 demand, defendant's speculative contention that plaintiff's reasonable attorneys' fees might exceed $ 25,000.00 is inadequate [*9] to establish the requisite amount in controversy under the diversity statute. n3 *See Brown v. Niagara Fire Ins. Co.*, 132 F. Supp. 509, 510 (W.D. Mo. 1955) (jurisdictional amount not shown where defendant suggested a possible reasonable attorney's fee of approximately 36%

the maximum possible recovery under an insurance policy). Removal, therefore, cannot be based on 28 U.S.C. § 1332.

n2 Contrary to defendant's suggestion, the fees and costs sought do not include those incurred by plaintiff in defending itself against defendant MGF Holding's prior trademark case. (*See* Compl. P57 ("Pursuant to Paragraph 8 of the Agreement, Plaintiff is entitled to 'reasonable attorneys' fees, costs, and expenses arising out of or related to' an action to enforce the Agreement. To date, Plaintiff has incurred reasonable attorneys' fees, costs, and expenses to enforce its rights under the Agreement.").)

n3 As attested to by plaintiff, as of the date of removal, plaintiff had incurred only $ 1,640.76 in fees and expenses. (*See* Pl.'s Response Ex. 3.)

[*10]

Because the Court is without subject matter jurisdiction over plaintiff's complaint, it will remand this case to the Superior Court of the District of Columbia.

/s ELLEN SEGAL HUVELLE

United States District Judge

Date: April 18, 2006

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that the Clerk's Office is to **REMAND** this case to the Superior Court of the District of Columbia.

**SO ORDERED.**

/s ELLEN SEGAL HUVELLE

United States District Judge

Date          April          18,          2006

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SARA WEXLER, on behalf of herself,** | ) | |
| **and all other similarly situated,** | ) | |
| | ) | **Case No. 06-01917** |
| **Plaintiff,** | ) | **Judge: Gladys Kessler** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED AIR LINES, INC. and** | ) | |
| **UAL CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO THE SUPERIOR
COURT OF THE DISTRICT OF COLUMBIA**

Upon consideration of Plaintiff's Motion to Remand to the Superior Court of the District

of Columbia and Opposition to Motion to Dismiss, and any opposition and reply thereto by the

Defendants, it is by this Court this _____ day of _____ Ordered that Plaintiff's

Motion is GRANTED for the reasons set forth in Plaintiff's Motion and accompanying

memoranda, and it is further

ORDERED, that the matter is remanded to the Superior Court of the District of Columbia

for any further proceedings.

_____
Judge Gladys Kessler
U.S. District Court for the
District of Columbia

Copies to:

Nat N. Polito, Esquire
Law Offices of Nat N. Polito, PC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006

Edward S. Scheideman, Esquire
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C.  20036-2412