**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARA WEXLER, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIR LINES, INC., a Delaware Corporation, and UAL Corporation, a Delaware Corporation,<br><br>Defendants. | Case No. 1:06 CV 01917<br><br>Judge Gladys Kessler |

**DEFENDANTS UNITED AIR LINES, INC. AND UAL CORPORATION'S
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION TO REMAND ACTION TO SUPERIOR COURT AND
<u>REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION........................................................................................................1

ARGUMENT.............................................................................................................3

I.    Wexler's Complaint Establishes Three Independent
      Grounds For Removal......................................................................................3

      A.    UAL Has Properly Removed This Case To Federal Court On Diversity
            Grounds Pursuant To 28 U.S.C. § 1332(a) ......................................5

            1.    UAL Properly Included Attorneys' Fees In Determining
                  The Amount-In-Controversy Because They Are Requested
                  By Wexler And Available Pursuant To The DC Consumer
                  Act................................................................................................6

            2.    The Cost Of Complying With The Injunctive Relief
                  Requested By Wexler Is Properly Considered In
                  Determining That The Amount-In-Controversy Required Is
                  Satisfied.......................................................................................8

            3.    The Court Can Properly Rely On Wexler's Request For
                  Punitive Damages In Determining That The Amount-In-
                  Controversy Is Satisfied ............................................................11

      B.    UAL Has Properly Removed This Case Under CAFA Pursuant
            To 28 U.S.C. § 1332(d) Et Seq. .......................................................13

            1.    The Question Of Which Party Bears the Burden Of Proving
                  Or Disproving Federal Jurisdiction Under CAFA Has Not
                  Yet Been Decided In This Circuit................................................13

            2.    Wexler's Complaint Is The Key Determinant In Establishing
                  Jurisdiction Under CAFA ...........................................................14

      C.    UAL Has Properly Removed This Case Under Federal Question
            Jurisdiction Pursuant To 28 U.S.C. § 1331 Because Wexler's Claims Turn
            On Substantial Questions Of Federal Law.......................................15

II.   This Court Should Grant UAL's Motion To Dismiss In Its Entirety ..............17

      A.    Wexler Effectively Concedes That Counts I Through III and V Are
            Preempted By The ADA And Should Be Dismissed.........................17

      B.    Wexler's Breach Of Contract Claim Is Preempted By The ADA ......18

CONCLUSION ........................................................................................................20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Abrego v. Dow Chemical Co., 443 F.3d 676 (9th Cir. 2006).........................................13

Amer. Airlines, Inc. v. Wolens, 513 U.S. 219 (1995) ...............................................18

Angus v. Shiley Inc., 989 F.2d 142 (3d Cir. 1993).......................................................3

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005)..................13, 14

Comm. for GI Rights v. Callaway, 518 F.2d 466 (D.C. Cir. 1975)........................8, 9, 10

Frazier v. Pioneer Americas, LLC, 455 F.3d 542 (5th Cir. 2006).................................15

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,
    545 U.S. 308 (2005)....................................................................15, 16, 17

Holcombe v. Smithkline Beecham Corp, 272 F. Supp. 2d 792 (E.D. Wis. 2003).........10

Hollon v. Consumer Plumbing and Recovery Ctr., et al., 417 F. Supp. 2d 849
    (E.D. Ky. 2006)..................................................................................6, 11

Horton v. Liberty Mutual Insurance Co., 367 U.S. 348 (1961).......................................3

Kingsley v. Lania, 221 F. Supp. 2d 93 (D. Mass. 2002)..............................................15

Kroske v. U.S. Bank Corp., 423 F.3d 976 (9th Cir. 2006), cert. denied,
    127 S.Ct. 157 (2006).....................................................................................3

Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 455 F. Supp. 2d 1323 (M.D. Ala. 2006) ...........15

Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006)........................................13

Missouri State Life Insurance Co. v. Jones, 290 U.S. 199 (1933)..................................6

Nwachukwu v. Karl, 223 F. Supp. 2d 60 (D.D.C. 2002)........................................11, 12

Smith v. Comair, Inc., 134 F. 3d 254 (4th Cir. 1998)..................................................19

Srour v. Barnes, 670 F. Supp. 18 (D.C. C. 1987) ......................................................11

Tatum v. Laird, 444 F.2d 947 (D.C. Cir. 1971),
    reversed on other grounds, 408 U.S. 1 (1972) .........................................................8

Tropp v. Western-Southern Life Insurance Co., 381 F.3d 591 (7th Cir. 2004).........9, 10

Walker v. Waller, 267 F. Supp. 2d 31 (D.D.C. 2003) ..................................................7


**STATE CASES**

Delta Air Lines, Inc. v. Black, 116 S.W.2d 745 (Tex. 2003) ......................................19

Osbourne v. Capital City Mortgage Corp., 727 A.2d 322, 325 (D.C. 1999)...................7


**UNREPORTED CASES**

Ballard v. Corinthian Colleges, Inc., No. C06-5256 FDB, 2006 WL 1806190, *2
    (W.D. Wash. June 28, 2006).................................................................3, 11, 12

Brand v. Gov Employees Ins. Co. No. Civ. A. 04-01133, 2005 WL 3201322
    *6 (D.D.C. Nov. 29, 2005).....................................................................................7

DiTolla v. Doral Dental IPA of New York LLC, No. 06-2324-CV, 2006 U.S.App.
    LEXIS 28684, *1, 15 (2d Cir. Nov. 17, 2006)........................................................9, 13

Garcia v. Dawahare, No. 2:06- CV-00695-KJD-LRL, 2006 WL 2583745,
    *2 (D. Nev. Sept. 6, 2006) ...............................................................................7, 11

Hahn v. Auto-Owners Ins. Group, No. 04 CV 380, 2006 WL 2796479, *1-2
    (E.D. Tenn. Sept. 27, 2006) ...................................................................................7

Home Depot, Inc. v. Rickher, No. 06-8006, 2006 WL 1727749, *1-2
    (7th Cir. 2006).................................................................................................................10, 15

**FEDERAL STATUTES**

Airline Deregulation Act of 1978 ..................................................................... passim
14 C.F.R. § 253 et seq...........................................................................15, 16, 17, 19
28 U.S.C. § 1331......................................................................................................15
28 U.S.C. § 1332(a) ...............................................................................................5, 8
28 U.S.C. § 1332(d) et seq..................................................................................13, 14
49 U.S.C. § 41707....................................................................................................17

**STATE STATUTES**

D.C. Sup. Ct. R. 11(b)(3).........................................................................................3
District of Columbia Consumer Protection Procedures Act
("DC Consumer Act"), D.C. Code § 28-3905 (2006)...................................1, 4, 5, 7, 12

**LEGISLATIVE HISTORY**

Sen. Rep. No. 109-14, at 42 (2005), as reprinted in 2005 U.S.C.C.A.N. 3 ...................................13

## INTRODUCTION

Plaintiff Sara Wexler's ("Wexler") combined Cross-Motion to Remand Action to Superior Court and Opposition to defendants United Air Lines, Inc. and UAL Corporation's (collectively "UAL") Motion to Dismiss (the "Cross-Motion to Remand") wisely concedes and tip-toes around the extensive law and reasoning set forth in UAL's Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss") requiring dismissal of Counts I, II, III and V as preempted by the Airline Deregulation Act of 1978 ("ADA"). The reason is simple — Wexler's claims should not have been brought in any court in the first instance given the ADA and Supreme Court precedent which has long held that state statutory and tort based common law claims related to "prices, routes, or services" of an airline are preempted. Moreover, the Supreme Court recognizes that breach of contract claims, like the one asserted by Wexler, also should be dismissed if resolution of that claim requires the Court to look outside the four corners of the contract to external state laws and policies.

The vast majority of Wexler's Cross-Motion to Remand and Memorandum of Points and Authorities in Support of Motion to Remand Action to Superior Court and in Opposition to Motion to Dismiss (the "Memo in Opposition") focuses on remanding her action to the Superior Court. Yet, Wexler does not dispute the factual bases and calculations set forth in UAL's Notice of Removal justifying removal on three independent grounds: (1) diversity; (2) Class Action Fairness Act ("CAFA"); and (3) federal question. In attempting to justify her Cross-Motion to Remand, Wexler is compelled to distance herself from the allegations, claims and requested relief set forth in her Class Action Complaint (the "Complaint"). For example, Wexler disavows her claim for violation of the District of Columbia Consumer Protection Procedures Act ("DC Consumer Act"), D.C. CODE § 28-3905 (2006), in footnotes 2 and 4 of her Memo in Opposition.

Presumably based on this disavowal, she then blatantly misrepresents to the Court at page 7 of her Memo in Opposition that "there is no statute or contract providing for an award of attorneys' fees" and, thus, attorneys' fees should not be included in determining the amount-in-controversy. The very first count of her Complaint for violation of the DC Consumer Act seeks "reasonable attorneys' fees," a statutory remedy under the DC Consumer Act. (Compl., ¶ 28 (b)). While Wexler's concession that she should not have asserted a claim for violation of the DC Consumer Act is telling, that claim remains a part of this case and it is rightfully included in determining the amount-in-controversy. The undisputed calculations of attorneys' fees set forth in UAL's Notice of Removal alone exceed the amount-in-controversy requirement for diversity jurisdiction. Moreover, the costs of complying with the injunctive relief and Wexler's assertion of treble and punitive damages in her Complaint, also are all properly to be considered by this Court in deciding whether removal on diversity grounds is proper.

Jurisdiction also is proper under CAFA because, as demonstrated in the undisputed calculations set forth in the Notice of Removal, the amount-in-controversy for Wexler's class of "thousands" also exceeds $5 million. Finally, the Court also has federal question jurisdiction because resolution of Wexler's breach of contract allegation that she did not receive notice of UAL's cancellation policy turns not on her contract of carriage with UAL, but rather on whether she received proper notice under federal Department of Transportation (the "DOT") regulations – a substantial federal question that impacts all airlines.

## ARGUMENT

**I.     Wexler's Complaint Establishes Three Independent Grounds For Removal.**

UAL properly relies on the allegations in Wexler's Complaint to demonstrate that federal court jurisdiction is proper.  See, e.g., Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) ("[the general federal rule has long been to decide what the amount-in-controversy is [for purposes of federal court jurisdiction] from the complaint itself."); see also Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993) (citing Horton, 367 U.S. at 353, when affirming District Court's denial of remand).  Moreover, when Wexler's counsel filed the Complaint in the D.C. Superior Court, they certified that the "allegations and other factual contentions [therein] have evidentiary support. . ." pursuant to SUP. CT. R. 11(b)(3).  UAL properly relies on this certification that Wexler's allegations have "evidentiary support."

As a matter of law, where a complaint provides for an unspecified amount of damages, a court will consider the "damages that can reasonably be anticipated" when calculating the amount-in-controversy.  Ballard v. Corinthian Colls, Inc., No. C06-5256 FDB, 2006 WL 1806190, *2 (W.D. Wash. June 28, 2006) (removal proper where plaintiff sought an unspecified amount of damages, but sought, among other things, treble damages under the Washington Consumer Protection Act).  Further, when an exact amount of relief is not "'facially apparent' from the complaint, 'the court may consider facts in the removal petition'. . ." Kroske v. U.S. Bank Corp., 423 F.3d 976, 980 (9th Cir. 2006) (internal citation omitted), cert. denied, 127 S.Ct. 157 (2006).  An examination of the Complaint combined with UAL's Notice of Removal demonstrates that removal was proper here.

Nevertheless, in a transparent attempt to distance herself from the relief she seeks in her Complaint, Wexler now asserts that the only amount-in-controversy for jurisdictional purposes is

the alleged $917 in disgorgement damages.  (Memo in Opposition, p. 1).  This assertion is simply not true and ignores the causes of action and litany of damages requested by Wexler in her Complaint.

More specifically, in her Complaint, Wexler asserts causes of action for: (1) violation of the DC Consumer Act (Compl., ¶¶ 20-29); (2) fraud (id., ¶¶ 30-34); (3) negligent misrepresentation (id., ¶¶ 35-38); (4) breach of contract (id., ¶¶ 39-42); and (5) quasi-contract/unjust enrichment (id., ¶¶ 43-48).  While Wexler does not set forth an exact dollar amount for the relief she seeks, she does allege the specific types of relief she seeks.  As UAL previously cited in detail in its Notice of Removal, Wexler's Complaint specifically seeks the following relief for her five (5) causes of action:

- Compensatory damages;

- Disgorgement;

- Punitive damages;

- Statutory damages pursuant to the DC Consumer Act, including trebled damages or a minimum of $1,500 per passenger per violation;

- Attorneys' fees pursuant to the DC Consumer Act;

- Injunctive relief;

- Declaratory relief; and

- Any further and just relief the Court deems necessary.

(Notice of Removal, ¶ 5).  Indeed, in her Complaint, Wexler deliberately cites to § 28-3905(k)(1) of the DC Consumer Act, which specifically includes the following statutorily available remedies:

- treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

- reasonable attorney's fees;

- punitive damages;

- an injunction against the use of the unlawful trade practice;

- in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or

- any other relief which the court deems proper.

D.C. CODE § 28-3905(k)(1)(A)-(F).  Wexler's Complaint basically tracks the relief available under this section of the DC Consumer Act in Count I.  (Compl., ¶¶ 26-28, and Wherefore Clause).

In Wexler's brief, she attempts to jettison many of the above-identified claims and requested relief, but most notable is her disavowal of her DC Consumer Act claim.  In footnotes 2 and 4 of her Memo in Opposition, Wexler effectively concedes that UAL correctly moved to dismiss the DC Consumer Act claim as preempted by the ADA. (Memo in Opposition, p. 3, n.2 and p. 12, n.4).  Wexler, however, then incorrectly assumes that these admissions mean that the relief sought in her DC Consumer Act claim should not be considered in the removal issue.  Wexler's assumption is absolutely wrong—the allegations in the Complaint, until dismissed by the Court, are still at-issue, and must be considered in determining the amount-in-controversy.  Wexler is stuck with the Complaint that she filed, notwithstanding that it may no longer be convenient for her.

### A.    UAL Has Properly Removed This Case To Federal Court On Diversity Grounds Pursuant To 28 U.S.C. § 1332(a).

The first independent basis for federal jurisdiction is diversity.  Wexler concedes that the parties' citizenship is diverse.  (Compl., ¶¶ 6-8; Notice of Removal, ¶¶ 9-10).  The only issue is

whether the amount-in-controversy as alleged by Wexler in her Complaint exceeds $75,000, exclusive of costs and interest. (Compl., ¶¶ 28, 46-48 and Wherefore Clause; Notice of Removal, ¶¶ 5, 11).  UAL has demonstrated that removal is proper on diversity grounds based on the value of compensatory damages, treble damages, attorneys' fees, injunctive relief/declaratory relief and punitive damages alleged in the Complaint and set forth in detail in UAL's Notice of Removal.  In her Memo in Opposition, Wexler only disputes the inclusion of attorneys' fees, injunctive relief and punitive damages.  As demonstrated below, her analysis of these issues is incorrect at best.

1.      **UAL Properly Included Attorneys' Fees In Determining The Amount-In-Controversy Because They Are Requested By Wexler And Available Pursuant To The DC Consumer Act.**

In its Notice of Removal, UAL provides meticulously detailed calculations of attorneys' fees potentially at controversy.  (Notice of Removal, ¶ 11).  Wexler does not dispute a single figure presented whether it be her attorneys' billable rates, her attorneys' estimated amount of time to prosecute the action, or the calculated fees.  The undisputed calculation of attorneys' fees alone demonstrates that the amount-in-controversy exceeds $75,000.

Instead, Wexler makes the legal argument (albeit incorrect) that attorneys' fees should not be included in determining the amount-in-controversy.  (Memo in Opposition, p. 7).  Courts routinely have held that a potential recovery of attorneys' fees in state statutes such as consumer protection laws like the DC Consumer Act, are properly included in establishing that the amount-in-controversy exceeds the jurisdictional amount.  See, e.g., Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933) (attorneys fees properly considered in calculating amount-in-controversy when provided for by state statute); see also Hollon v. Consumer Plumbing and Recovery Ctr., et al., 417 F. Supp. 2d 849, 852 (E.D. Ky. 2006) (attorneys' fees included in

amount-in-controversy where plaintiff sought relief under the Kentucky Consumer Protection Act); Hahn v. Auto-Owners Ins. Group, No. 04 CV 380, 2006 WL 2796479, at *1-2 (E.D. Tenn. Sept. 27, 2006) (slip copy) (court denied motion to remand where plaintiff's claim under the Tennessee Consumer Protection Act provided for attorneys' fees); Garcia v. Dawahare, No. 2:06-CV-00695-KJD-LRL, 2006 WL 2583745, at *2 (D. Nev. Sept. 6, 2006) (slip copy) (attorneys' fees included in amount-in-controversy where plaintiff sought relief under the Nevada Unfair Trade Practices Act).[1]

Inexplicably, in Wexler's Cross-Motion to Remand and again in her Memo in Opposition she recognizes that the "general rule in calculating an amount in controversy prohibits the use of attorneys' fees, unless they are permitted by statute or contract." (Cross-Motion to Remand, ¶ 6, Memo in Opposition, p. 7) (emphasis added). Even the two cases cited by Wexler actually acknowledge that attorneys' fees sought pursuant to a statute or contract are properly included in calculating the amount-in-controversy. See Memo in Opposition, p. 7, citing Brand v. Gov. Employees Ins. Co., No. Civ. A. 04-01133, 2005 WL 3201322, *6 (D.D.C. Nov. 29, 2005); see also Walker v. Waller, 267 F. Supp. 2d 31, 33 (D.D.C. 2003). In both cases, the court found attorneys' fees should not be included in the amount-in-controversy because no statute or contract provided for them. Brand, 2005 WL 3201322, at *7; Walker, 267 F. Supp. 2d at 33.

In stark contrast, here, the very first count in Wexler's Complaint is for violations of the DC Consumer Act (Compl., ¶¶ 20-29), a statute that explicitly provides for recovery of "reasonable attorneys' fees," as a statutory remedy. D.C. CODE § 28-3905(k)(1). As a part of

---

[1]    State consumer protection statutes often allow for recovery of attorneys' fees to encourage attorneys to prosecute consumer claims where attorneys otherwise may not accept the claims because the attorneys' fees generated could exceed the recovery to a plaintiff. See, e.g., Osbourne v. Capital City Mortgage Corp., 727 A.2d 322, 325 (D.C. 1999) (the DC Consumer Act is designed to "remedy *all* improper trade practices") (internal citation omitted).

Wexler's statutory cause of action, Wexler expressly and unequivocally seeks "reasonable attorneys' fees." (Compl., ¶ 28 (b)). Yet in blatant disregard of her request for attorneys' fees pursuant to the DC Consumer Act, Wexler represents to the Court that:

> "Here, there is no statute or contract providing for an award of attorneys' fees, and thus it is inappropriate to include any such projected fees in calculating the amount in controversy."

(Memo in Opposition, p. 7). Wexler simply cannot reconcile this representation to the Court in her Memo in Opposition with the allegations in her Complaint. Accordingly, the attorneys' fees requested in the Complaint and the calculations set forth in the Notice of Removal establish that the amount-in-controversy requirement is met on this independent basis without even needing to include any other potential damages.

> **2.  The Cost Of Complying With The Injunctive Relief Requested By Wexler Is Properly Considered In Determining That The Amount-In-Controversy Requirement Is Satisfied.**

UAL's Notice of Removal articulates a litany of substantial tasks that UAL would have to undertake in order to comply with the injunctive relief requested by Wexler. (Notice of Removal, ¶ 11). Once again, Wexler does not dispute or deny that the articulated tasks would in fact be required in order to comply with the requested injunction. Wexler simply argues that the Court should not include the costs of complying with an injunction in determining the amount-in-controversy. This position ignores a decision from the United States Court of Appeals for the D.C. Circuit where the court calculated and included the value of injunctive relief from the standpoint of the defendant for purposes of reaching the jurisdictional minimum under 28 U.S.C § 1332(a). See Comm. for GI Rights v. Callaway, 518 F.2d 466, 472-73 (D.C. Cir. 1975) (citing Tatum v. Laird, 444 F.2d 947, 951 (D.C. Cir. 1971), rev'd on other grounds, 408 U.S. 1 (1972)). The Callaway court also noted that "the test for determining the amount in controversy is the

pecuniary result to either party which the judgment would directly produce." Id. (internal citation omitted).

Without discussing Callaway, Wexler relies on a single case from another non-controlling Court of Appeals and asserts that the cost of complying with an injunction cannot be considered in determining the amount-in-controversy. (See Memo in Opposition, p. 8). Unbelievably, the case relied on by Wexler does not even concern a request for any injunctive relief at all, but rather an action for accounting by a plaintiff. DiTolla v. Doral Dental IPA of New York LLC, No. 06-2324-CV, 2006 U.S. App. LEXIS 28684, at *15 (2d Cir. Nov. 17, 2006) (internal citation omitted). In DiTolla, the Court of Appeals affirmed the District Court's ruling granting plaintiff's motion to remand to state court where the plaintiff sought an accounting with no accompanying demand for damages. 2006 U.S. App. LEXIS 28684 at *12-14. The defendant had removed the case to federal court on diversity grounds and included in its calculation of the amount-in-controversy an estimate of what it believed to be the monetary equivalent of the accounting. Id. at 15. The District Court held that the amount set forth by the defendant was not "in controversy" where the plaintiff's complaint "does not even purport to suggest the value of, much less lay claim to" the funds for which the plaintiff sought an accounting. Id. In stark contrast, here, Wexler lays a claim to the funds at issue and seeks a multitude of damages articulated in detail above. (Compl., ¶¶ 28, 48 and Wherefore Clause). DiTolla is completely inapposite.

Unlike the accounting at issue in DiTolla, the Seventh Circuit's opinion in Tropp v. Western-Southern Life Ins. Co., 381 F.3d 591, 595 (7th. Cir. 2004) is directly on-point and addressed whether the costs of complying with injunctive relief are properly included in determining the amount-in-controversy. Id. In Tropp, the plaintiff filed her complaint in state

- 9 -

court seeking compensatory and punitive damages, attorneys' fees and injunctive relief, for violations of Illinois' Consumer Fraud and Deceptive Business Practices Act (the "DBPA") in addition to various other counts.  Id. at 592, 595.  The defendant removed the case to federal court and the District Court then granted defendant's motion for summary judgment on the DBPA count and dismissed all remaining counts.  Id. at 594.  The Court of Appeals affirmed, finding that federal jurisdiction was appropriate based on diversity, where the defendant included a calculation of the costs of complying with injunctive relief in satisfying the amount-in-controversy threshold.  Id. at 595; see also Callaway, 518 F.2d at 472 (court may consider value of injunctive relief from either the standpoint of the plaintiff or the defendant); Home Depot, Inc. v. Rickher, No. 06-8006, 2006 WL 1727749, at *1-2 (7th Cir. May 22, 2006) (cost of complying with injunctive relief included in amount-in-controversy); Holcombe v. Smithkline Beecham Corp, 272 F. Supp. 2d 792, 796 (E.D. Wis. 2003) ("[w]hen a plaintiff seeks injunctive relief, the value of such relief for purposes of determining the amount-in-controversy is 'the pecuniary result to either party which the judgment would directly produce.'") (internal citations omitted).

Like the plaintiff in Tropp, Wexler articulates an extensive list of damages and relief, including seeking injunctive relief against UAL "barring them from continuing false and deceptive trade practices," against "imposition of the undisclosed Cancellation Policy", and from "engage[ing] in the unlawful conduct" described in the Complaint.  (Compl., ¶¶ 5, 28(d), Wherefore Clause (iv)).  As was held in Tropp, the costs of complying with the requested injunctive relief here are properly included in determining the amount-in-controversy.  381 F.3d at 595.  UAL's Notice of Removal provides the Court with a detailed (and undisputed) litany of tasks that would be necessary to comply with the requested injunctive relief, the costs of which

can be "reasonably anticipated" to independently far exceed the jurisdictional amount.  <u>See</u>,

<u>Ballard</u>, 2006 WL 1806190, at *2.

    3.    **The Court Can Properly Rely On Wexler's Request For Punitive Damages In Determining That The Amount-In-Controversy Is Satisfied.**

Wexler does not dispute that UAL may include punitive damages when calculating the

amount-in-controversy.  Indeed, Wexler cites a case that acknowledges the rule that "a court

must consider claims for both actual and punitive damages when determining jurisdictional

amount . . ."  <u>Srour v. Barnes</u>, 670 F. Supp. 18, 22 (D.D.C. 1987) (internal citation omitted).

<u>See</u>, <u>e.g.</u>, <u>Nwachukwu v. Karl</u>, 223 F. Supp. 2d 60, 66 (D.D.C. 2002) ("punitive damages are

properly considered as part of the amount-in-controversy" in order to "satisfy the jurisdictional

minimum in a diversity case . . .") (internal citations omitted).  This is especially true when

punitive damages are available under a statute such as the DC Consumer Act.  <u>See, e.g.</u>, <u>Hollon</u>,

417 F. Supp. 2d at 852 (punitive damages included in amount-in-controversy where plaintiff

sought relief under the Kentucky Consumer Protection Act); <u>Garcia</u>, 2006 WL 2583745, at *2

(punitive damages included in amount-in-controversy where plaintiff sought relief under the

Nevada Unfair Trade Practices Act).

Wexler instead argues that any punitive damages calculation here is "uncertain and

unquantifiable" and, thus should not be considered.   (Memo in Opposition, p. 7).   In

<u>Nwachukwu,</u> a D.C. federal court explained that whether punitive damages should be considered

in determining the amount-in-controversy depends on a two-part test: (1) the court must

determine whether governing substantive law provides for the recovery of punitive damages; and

(2) if so, the court "has subject matter jurisdiction <u>unless it is clear beyond a legal certainty</u> that

the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." 223 F. Supp. 2d at 66 (internal citation omitted) (emphasis added).

Applying this test here leads to the conclusion that UAL properly considered punitive damages when calculating the amount-in-controversy.  Governing substantive law expressly provides for punitive damages under the DC Consumer Act.  See D.C. CODE § 28-3905(k)(1). Indeed, the DC Consumer Act allows for treble damages and punitive damages and, thus, the treble damages can be viewed as the floor of recovery.  Id; see also Ballard, 2006 WL 1806190, at *1-2 (federal jurisdiction exists where plaintiff sought an unspecified amount of damages, but included, among other things, treble damages under the Washington Consumer Protection Act). Moreover, given Wexler's claim for fraud, repeated allegations of fraudulent conduct and allegation that UAL engaged in an "extensive marketing scheme that had a broad impact on consumers at large,"  (Compl., Counts I and II and ¶ 23), it cannot be said, to quote Nwachukwu, that punitive damages could not be awarded "beyond a legal certainty."  223 F. Supp. 2d at 66. Although, UAL vehemently denies these allegations, at this stage of the proceedings, they must be accepted as pled to determine the amount-in-controversy.

Accordingly, while the Court need not rely on punitive damages to demonstrate that the amount-in-controversy exceeds $75,000 given the various damages set forth above, Wexler's request for punitive damages and the undisputed facts in UAL's Notice of Removal should give the Court additional comfort that the amount-in-controversy exceeds the jurisdictional amount. (Notice of Removal, ¶ 11).

   **B.    UAL Has Properly Removed This Case Under CAFA
          Pursuant To 28 U.S.C. § 1332(d) Et Seq.**

   **1.    The Question Of Which Party Bears The Burden Of Proving Or
          Disproving Federal Jurisdiction Under CAFA Has Not Yet Been
          Decided In This Circuit.**

Wexler correctly cites to decisions in which Courts of Appeals have left the burden of

proof to justify removal on the removing party under CAFA.  (Memo in Opposition, pp. 8-9).

Each of these Courts, however, recognize that there exists "disagreement among courts as to

which party bears the burden of establishing subject matter jurisdiction under CAFA . . ."

Miedema v. Maytag Corp., 450 F.3d 1322, 1325, 1327-28 (11th Cir. 2006); see also Abrego v.

Dow Chem. Co., 443 F.3d 676, 684-86 (9th Cir. 2006); Brill v. Countrywide Home Loans, Inc.,

427 F.3d 446, 448-49 (7th Cir. 2005) (actually affirming federal jurisdiction under CAFA);

DiTolla, 2006 U.S. App. LEXIS 28684, at *9-10.

The United States Court of Appeals for the D.C. Circuit, like many other circuits, has not

yet addressed this issue.  Because the issue of burden under CAFA is one of first impression

before the Court, UAL urges the Court to consider the legislative history in passing CAFA,

which states:

> Pursuant to new subsection 1332(d)(6), the claims of the individual class
> members in any class action shall be aggregated to determine whether the amount
> in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and
> costs). The Committee intends this subsection be interpreted expansively. If a
> purported class action is removed pursuant to these jurisdictional provisions, the
> named plaintiff(s) should bear the burden of demonstrating that the removal was
> improvident (i.e., that the applicable jurisdictional requirements are not satisfied).
> And if a federal court is uncertain about whether "all matters in controversy" in a
> purported class action "do not in the aggregate exceed the sum or value of
> $5,000,000," the court should err in favor of exercising jurisdiction over the case.

Sen. Rep. No. 109-14, at 42 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 42 (emphasis added).

Ultimately, this argument should not divert attention from the law set forth at length above,

which holds that regardless of who bears the burden, the Court can determine whether it has federal jurisdiction based on an examination of the Complaint and the Notice of Removal.

### 2. Wexler's Complaint Is The Key Determinant In Establishing Jurisdiction Under CAFA.

Regardless of whether CAFA shifts the burden to Wexler to demonstrate that removal was improvident, the allegations pled by Wexler in her Complaint establish federal jurisdiction under CAFA. See 28 U.S.C. § 1332(d) et seq. Wexler alleges both that "the Class numbers thousands of people," (Compl., ¶ 10), and that complete diversity exists between the parties. (Compl., ¶¶ 6-8). She alleges that her $917 disgorgement claim (which is to be trebled under the DC Consumer Act) is a "typical" damage claim. (Compl., ¶ 11).

Wexler only contends that UAL does not meet the $5 million jurisdictional minimum under CAFA. (Memo in Opposition, p. 10). Yet, she does not dispute the detailed calculations set forth in UAL's Notice of Removal demonstrating that, when the class claims here are aggregated, the amount-in-controversy exceeds $5 million. (Notice of Removal, ¶¶ 12-14). UAL has established that the amount-in-controversy surpasses the jurisdictional minimum. See, e.g., Brill, 427 F.3d at 449 (case cited by Wexler in which federal jurisdiction was proper under CAFA where plaintiff sought unspecified amount of damages under the Telephone Consumer Protection Act because "recovery exceeding $5 million for the class as a whole [was] not 'legally impossible'").

Wexler again contends that UAL improperly included "speculative" punitive damages, attorneys' fees and the cost of complying with injunctive relief in determining the amount-in-controversy under CAFA. (Memo in Opposition, p. 10). As a matter of law, each of the litany of damages Wexler seeks in her Complaint, (Compl., ¶¶ 28, 46-48, Wherefore Clause; Notice of Removal, ¶¶ 12- 14), are also properly included in determining the amount-in-controversy under

CAFA. <u>See, e.g.</u>, <u>Frazier v. Pioneer Americas, LLC</u>, 455 F.3d 542, 545 (5th Cir. 2006) (federal jurisdiction proper under CAFA where the amount-in-controversy included attorneys' fees); <u>Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.</u>, 455 F. Supp. 2d 1323, 1327 (M.D. Ala 2006) (federal jurisdiction proper under CAFA where plaintiff sought reimbursement, punitive damages and injunctive relief); <u>Home Depot, Inc.</u>, 2006 WL 1727749, at *1-2 (federal jurisdiction proper under CAFA where plaintiff sought relief under Illinois' Consumer Fraud Act and where the amount-in-controversy included attorneys' fees and the cost incurred by the defendant in complying with injunctive relief). Accordingly, using the Complaint and undisputed Notice of Removal, UAL has demonstrated that the CAFA's jurisdictional minimum has been met and that removal is proper under CAFA.

      **C.**     **UAL Has Properly Removed This Case Under Federal Question Jurisdiction Pursuant To 28 U.S.C. § 1331 Because Wexler's Claims Turn On Substantial <u>Questions Of Federal Law.</u>**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because resolution of Wexler's claims "implicate significant federal issues," and "turn on substantial questions of federal law." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312 (2005); <u>see</u> <u>also</u> 14 C.F.R. § 253 <u>et seq</u>. The <u>Kingsley</u> case relied upon by Wexler concerned whether the plaintiff's claims were "completely preempted" by the ADA for jurisdictional purposes, or whether a federal defense based on the ADA could give rise to federal question jurisdiction. <u>Kingsley v. Lania</u>, 221 F. Supp. 2d 93, 96 (D. Mass. 2002). The <u>Kingsley</u> case did not concern a situation where the plaintiff's claim (not the defendant's defense) directly implicated "federal claims or issues." <u>Id.</u>

UAL does not argue for federal question jurisdiction under the doctrine of "complete preemption." Nor does UAL assert that jurisdiction is proper because the ADA is a federal

defense to Wexler's claims.  Instead, UAL's position is that Wexler's claims, especially the breach of contract claim and paragraph 41, raise "substantial questions of federal law," such as whether Wexler received proper notice under 14 C.F.R. § 253 et seq. of UAL's restrictions on fares and penalties in its contract of carriage.

Here, the United States Supreme Court's ruling in Grable, 545 U.S. 308, is instructive in resolving the issue of federal question jurisdiction.  In Grable, the Internal Revenue Service (the "IRS") had confiscated petitioner's land to satisfy a federal tax delinquency.  545 U.S at 310.  Respondent purchased this land at a federal tax sale.  Id.  Five years later, petitioner brought a quiet title action against respondent in state court.  Id. at 311.  Petitioner alleged that respondent's title was invalid because the IRS did not comply with the notice provision of 26 U.S.C. § 6335, a federal statute governing the IRS's notification of seized property to the former property owner.  Id.  Respondent removed the case to federal court because "the claim of title depended on the interpretation of the notice statute in the federal tax law."  Id.  The United States District Court for the Western District of Michigan declined to remand the case back to state court, finding that the plaintiff's claim "pose[d] a significant question of federal law" sufficient to confer federal question jurisdiction on the Court.  Id.  The Sixth Circuit affirmed the district court and petitioner appealed to the United States Supreme Court.  Id. at 311-312.  The United States Supreme Court affirmed.  In his written opinion, Justice Souter also wrote:

> [A] federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

Id. at 312 (internal citation omitted).

Like <u>Grable</u>, whether Wexler and the purported members of the putative class were properly given notice of the terms of the contract of carriage under federal regulations is an essential question in resolving Wexler's claims.  More specifically, Count IV for breach of contract centers on UAL's allegedly improper "notification" to putative class members of fare restrictions, cancellation policies and penalties associated with nonrefundable tickets.  Wexler specifically alleges that, "[b]y imposing an undisclosed Cancellation Policy, which effectively eliminated paying passengers' flights <u>without any notice</u> thereof, Defendants breached said contracts to Plaintiff and members of the Class."  (Compl., ¶ 41) (emphasis added).  UAL's policies relating to fare restrictions, cancellations and penalties associated with nonrefundable tickets are set forth in UAL's contract of carriage—and like in <u>Grable</u>, as determination as to whether proper notice of those terms was provided to Wexler and her class is subject to federal regulations by the DOT governing proper notice.  <u>See</u> 14 C.F.R. § 253 <u>et seq.</u> [2]  In other words, Wexler's claim directly turns on substantial federal questions that give rise to federal question jurisdiction.

## II.    This Court Should Grant UAL's Motion To Dismiss In Its Entirety.

### A.    Wexler Effectively Concedes That Counts I Through III And V Are Preempted By The ADA And Should Be Dismissed.

Wexler does not dispute or even try to distinguish the exhaustive case law cited by UAL which unquestionably requires dismissal of her claims for violation of the DC Consumer Act, fraud, negligent misrepresentation or quasi-contract/unjust enrichment as preempted under the

---

[2]    As UAL further noted in its Memo in Support, the DOT has authority to enforce its notice regulations (<u>see, e.g.</u>, 14 C.F.R. §§ 253.1, 253.4, 253.6, 253.7, 253.8) and to govern a dispute such as the one before this Court between Wexler and UAL, (Memo in Support, p. 15, n.9).  Indeed, in the ADA, Congress specifically reserved for the DOT to regulate what terms could be incorporated by reference in an airline's ticket.  In her response, Wexler fails to address these DOT regulations, as well as the underlying rulemaking process that allowed for public comment prior to their promulgation.  <u>See</u> 49 U.S.C. § 41707.

ADA. Instead, in complete disregard of the Supreme Court's holding in <u>Amer. Airlines, Inc. v.</u> <u>Wolens</u>, 513 U.S. 219, 228, 233 (1995), Wexler attempts to preserve her statutory claim and tort claims by bootstrapping them to the breach of contract claim by stating: "the tort claims and quasi-contract claims are closely related to the breach of contract claim . . . ." (Memo in Opposition, p. 13). As cited at length in UAL's Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Complaint (the "Memo in Support"), there is no such exception—the unequivocal rule is that state statutory and tort claims concerning an airline's "prices, routes or services" must be dismissed as preempted under the ADA. (Memo in Support, pp. 12-14).

Wexler devotes her entire, albeit abbreviated, argument in "Point II" of her brief to Count IV, her breach of contract claim. This is not surprising because after the Supreme Court's opinion in <u>Wolens</u>, a breach of contract claim is the only type of claim that arguably could be asserted relating to UAL's prices, routes or services. Nevertheless, Wexler's breach of contract claim does not satisfy the <u>Wolens</u> rule, and it too must be dismissed as preempted by the ADA.

### B.    Wexler's Breach Of Contract Claim Is Preempted By The ADA.

To be clear, UAL does not dispute — and indeed acknowledged in its Motion to Dismiss and Memo in Support (Motion to Dismiss, p. 4; Memo in Support, p. 15) — the general rule articulated in <u>Wolens</u>, is that the ADA does not "shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." 513 U.S. at 228.

This general rule, however, does not mean that all breach of contract claims are immune from preemption under the ADA. The Supreme Court in <u>Wolens</u> also acknowledged that when resolution of a breach of contract claim requires a court to look beyond the contract and resort to "enlargement or enhancement based on state laws or policies external to the agreement," the

claim should still be preempted by the ADA.  Id. at 233; see Smith v. Comair, Inc., 134 F.3d 254, 258 (4th Cir. 1998) (ADA preempted breach of contract claim because resolution required resort to defenses based on federal regulations outside the contract); see also Delta Air Lines, Inc. v. Black, 116 S.W.2d 745, 756 (Tex. 2003) (ADA preempted defendant's contract claims where defendant's breach of contract "claims [could] only be adjudicated by reference to laws and policies external to its contract with Delta.").  Notably, UAL directed this Court to both the Smith and Black cases in its Memo in Support, yet, Wexler made no attempt to distinguish either case.

In her breach of contract claim, Wexler does not even cite to a single provision of the contract that she claims was breached and she does not seek to enforce any provision.  Rather, she seeks to avoid the contract by asserting that she was not given proper notice of the terms of UAL's contract of carriage.[3]  (Comp., ¶ 41).  As explained above, the question of what constitutes proper notice is controlled by DOT regulations set forth in 14 C.F.R.§ 253 et seq., and should be decided by the DOT to ensure uniform application of the regulations throughout the country for all airlines.[4]  See, e.g., 14 C.F.R. §§ 253.1 and 253.2.  Accordingly, like the breach of contract claims found preempted by both the Smith and Black courts, Wexler's breach of contract claim here also is preempted because the regulations are outside the four corners of the contract.

---

[3]     The contract of carriage is available on UAL's web site at: http://united.com/page/article/0,6722,2743,00.html.

[4]     Wexler also puts state statutory and tort common laws at issue in her breach of contract claim by incorporating the allegations from her DC Consumer Act, fraud and negligent misrepresentation claim into her breach of contract claim.  (Compl., ¶ 39).  Wexler further states that her "tort claims and quasi-contract claims are closely related to the breach of contract claim . . .", thereby again confirming that her contract claim should be preempted because it cannot be resolved without resort to state statutory and common law claims and policies external to the contract.  (Memo in Opposition, p. 13).

## CONCLUSION

For all the reasons stated in UAL's Notice of Removal and herein, this Court has subject matter jurisdiction over Wexler's Complaint.  Moreover, for the reasons stated in UAL's Motion to Dismiss Plaintiff's Complaint and supporting papers and herein, Wexler's Complaint should be dismissed in its entirety with prejudice as preempted by the ADA.

Respectfully submitted,


/s/ Lawrence A. Wojcik

Of Counsel:

Lawrence A. Wojcik (admitted pro hac vice)
Raj N. Shah (admitted pro hac vice)
DLA Piper US LLP
203 North LaSalle Street
Suite 1900
Chicago, Illinois 60601-1293
(312) 368-4000
(312) 236- 7516 (fax)



Edward S. Scheideman (D.C. Bar No. 475128)
DLA PIPER US LLP
1200 Nineteenth Street, N.W.
Washington, D.C.  20036-2412
(202) 861-3900
(202) 223-2085 (fax)

Counsel for Defendants United Air Lines, Inc.
and UAL Corporation

## CERTIFICATE OF SERVICE

Lawrence A. Wojcik, an attorney, certifies that on December 29, 2006, he caused **DEFENDANTS, UNITED AIR LINES, INC. AND UAL CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO REMAND ACTION TO SUPERIOR COURT AND REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT and ADDENDUM OF UNREPORTED CASES CITED IN MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO REMAND ACTION TO SUPERIOR COURT AND REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be filed electronically with the court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties indicated below.  Parties may access this filing through the Court's CM/ECF system.  He further certifies that on December 29, 2006, he mailed by United States Postal Service, the aforementioned documents to the non-registered participants listed below.

s/ Lawrence A. Wojcik

### ECF Registered Participants

- **Nat Nicola Polito**
  nnpolito@verizon.net

- **Edward Smith Scheideman**
  edward.scheideman@piperrudnick.com

### Non-Registered Participants

**Eric B. Fisher**
MORGENSTERN JACOBS & BLUE, LLC
885 Third Avenue
New York, NY 10022

**Laura J. Lefkowitz**
MORGENSTERN JACOBS & BLUE, LLC
885 Third Avenue
New York, NY 10022

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SARA WEXLER, on behalf of herself and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>UNITED AIR LINES, INC. (a Delaware Corporation), and UAL Corporation (a Delaware Corporation),<br><br>               Defendants. | Case No. 1:06 CV 01917<br><br>Judge Gladys Kessler |

**DEFENDANTS, UNITED AIR LINES, INC. AND UAL CORPORATION'S
ADDENDUM OF UNREPORTED CASES CITED IN MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
CROSS-MOTION TO REMAND ACTION TO SUPERIOR COURT
AND REPLY IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

| CASES | TAB |
|---|---|
| Ballard v. Corinthian Colleges, Inc., No. C06-5256 FDB, 2006 WL 1806190, *1 (W.D. Wash. June 28, 2006) | 1 |
| Garcia v. Dawahare, No. 2:06-CV-00695-KJD-LRL, 2006 WL 2583745, *1 (D. Nev. Sept. 6, 2006) | 2 |
| Hahn v. Auto-Owners Ins. Group, No. 3:04 CV 380, 2006 WL 2796479, *1 (E.D. Tenn. Sept. 27, 2006) | 3 |
| Home Depot v. Rickher, No. 06-8006, 2006 WL 1727749, *1 (7th Cir. 2006) | 4 |

**TAB 1**

Westlaw.

Slip Copy

Page 1

Slip Copy, 2006 WL 1806190 (W.D.Wash.)
**(Cite as: Slip Copy)**

**H**

Briefs and Other Related Documents
Ballard    v.    Corinthian    Colleges,
Inc.W.D.Wash.,2006.Only the Westlaw citation is
currently available.
    United States District Court, W.D. Washington,
at Tacoma.
    Sunita BALLARD, Tasha Bowen, Debra Doyle,
Erika Forbes, Rebecca Klingman, Devra Sawyer
a\k\a Alani Worrell, Lisa Simmons, and Cindy
Wells, Plaintiffs,
v.
CORINTHIAN COLLEGES, INC., a Delaware
corporation, Elton Education, Inc., a Washington
corporation d/b/a Bryman College; Timothy Allen;
a Washington State resident, Defendants.
**No. C06-5256 FDB.**

June 28, 2006.

Nigel S. Malden, Carol J. Cooper, Davies Pearson
PC, Tacoma, WA, for Plaintiffs.
Gregory Douglas Shelton, Lisa Christine Williams,
Williams Kastner & Gibbs, Seattle, WA, for
Defendants.

ORDER DENYING PLAINTIFFS' MOTION FOR
REMAND
FRANKLIN D. BURGESS, District Judge.
**\*1** This matter comes before the Court on Plaintiffs'
Motion for Remand to State Court. After reviewing
all materials submitted by the parties and relied
upon for authority, the Court is fully informed and
hereby denies the motion for remand for the reasons
stated below.

**INTRODUCTION AND BACKGROUND**

This action is related to and mirrors three other
cases currently before this Court, *Fisher et al v.*
*Corinthian Colleges, Inc.,* C05-5412; *Reed v.*
*Corinthian Colleges, Inc., et al.,* C05-5601; and

*Anderson et al. V. Corinthian Colleges Inc., et al.,*
C06-5157. In each of the related cases this Court
has found federal jurisdiction due to complete
diversity between the parties and the amount in
controversy exceeds $75,000. See, 28 U.S.C. §
1332(a)(1). In *Anderson* the Court found Timothy
Allen was fraudulently joined and dismissed him
from the action. Elton Education, Inc. was
determined to be a nominal party and ignored for
the purposes of determining diversity jurisdiction.

Defendant Corinthian Colleges, Inc. (hereafter,
Corinthian) owns and operates career focused
schools across the U.S. and Canada, including the
Tacoma campus of Bryman College. Plaintiffs in
this case all enrolled in and completed a nine-month
medical assisting program at the Tacoma campus of
Bryman College. Plaintiffs filed the instant action in
Superior Court of the State of Washington. The
named defendants are Corinthian, Elton Education,
Inc., d/b/a Bryman College, Timothy Allen.
Corinthian is a Delaware corporation with its
principal place of business in California. Elton
Education, Inc. is a previous owner of the Tacoma
campus, operating under the name of Elton
Technical Institute. Corinthian acquired Elton
Education, Inc. in June, 2003. Since the purchase,
Elton Education has been administratively dissolved
and has no offices in Washington. All of Elton
Education's assets and liabilities are controlled,
managed and belong to Corinthian. Timothy Allen
is a Washington resident. Allen is President of
Bryman College's Tacoma campus. Allen is not a
corporate officer of Corinthian.

The complaint asserts causes of action for (1)
intentional misrepresentation/fraud, (2) negligent
misrepresentation, (3) violation of Washington's
Consumer Protection Act, RCW 19.86 *et seq.* and
(4) breach of contract. Plaintiffs allege that these
misrepresentations induced their enrollments and
regarded, among other things, the nature and quality
of the school and its programs and the marketability
and placement of the school's graduates.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 2

Slip Copy, 2006 WL 1806190 (W.D.Wash.)
**(Cite as: Slip Copy)**

Defendants removed the action to this Court on the basis of original jurisdiction under 28 U.S.C. § 1332(a)(1), asserting that the non-diverse defendants Allen and Elton Education were fraudulently joined to defeat jurisdiction..

In response, Plaintiffs have filed a motion for remand on the sole basis [FN1] that "the defense has failed to prove that the amount in controversy meets the federal court's minimum jurisdictional requirements of $75,000 (exclusive of attorneys' fees and costs), per plaintiff, under 28 U.S.C.A. § 1332." In support of this position, counsel for Plaintiffs has submitted a post-removal declaration asserting "Plaintiffs shall not seek recovery of more than $75, 000 (exclusive of attorneys' fees and costs) as total damages in this case." The declaration itemizes the damage claims for (a) refund of tuition, (b) compensation for time loss while completing schooling, and (c) treble damages for violation of Washington Consumer Protection Act. The declaration fails to provide a dollar amount for (a) the claims for time loss compensation for a reasonable period of time following graduation, (b) the claim for general damages, and (c) the recovery of attorney's fees.

> FN1. Plaintiffs do not contend there is a lack of pure diversity, apparently conceding the fraudulent joinder of Timothy Allen. See, *Anderson et al. V. Corinthian Colleges Inc., et al.,* C06-5157.

**\*2** The Defendants have filed a reply that setting forth a calculation that demonstrates the requested damages per individual plaintiff, exclusive of general damages and attorney's fees, approaches or exceeds the $75,000 threshold. The nearly fifty other plaintiffs in the related cases have made demands far exceeding the threshold; having claimed $50,000 in general damages.

## MOTION FOR REMAND

The removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have

original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for any district ... where such action is pending." 28 U.S.C. § 1441(a). One instance in which the district courts of the United States have " original jurisdiction" is where there is complete diversity between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). The proper procedure for challenging removal to federal court is a motion to remand. A federal court must order remand if there is any defect which causes federal jurisdiction to fail, or if there is any defect in the removal procedure. 28 U.S.C. § 1447(c). The removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence. *Id.* at 567; *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403-04 (9th Cir.1996).

The jurisdictional minimum may be satisfied by claims of general and specific damages, attorney's fees, and by punitive damages. *Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir.2005); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 946 (9th Cir.2001); *Galt v. Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir.1998). In diversity cases where the amount in controversy is in dispute, a reviewing court may look beyond allegations in the complaint and consider other evidence relevant to the amount in controversy at the time of removal. The court may consider facts presented in the removal petition as well as any summary jadgment type evidence relevant to the amount in controversy at the time of removal. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir.2004). The court can consider the amount in controversy based on the damages that can reasonably be anticipated at the time of removal. *Simmons v. PCR Technology,* 209 F.Supp.2d 1029, 1035 (N.D.Cal.2002); *Matheson v. Progressive Speciality Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir.2003). In determining the amount in controversy, the court may consider damage requests and awards in similar cases. *Kroske,* at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 1806190 (W.D.Wash.)
**(Cite as: Slip Copy)**

980; *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993).

Despite Plaintiff' assertion to the contrary, the calculations for the declared amount of damages (tuition, lost time and CPA violations) either approaches or exceeds the $75,000 threshold for jurisdiction. Based on the claims in the related cases, an additional $50, 000 is in controversy as general damages. Further, the Ninth Circuit considers a request for an award of attorney's fees when assessing the amount in controversy. See, *Galt,* at 1155-56; *Simmons,* at 1034. These amounts taken together clearly exceed the $75,000 jurisdictional threshold.

**\*3** Post-removal stipulations reducing the amount in controversy below the jurisdictional limit do not defeat federal jurisdiction if the amount in controversy was satisfied at the time of removal. See, *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 292 (1938); *Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 872 (6th Cir.2000); *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992). The post-removal declaration of Plaintiffs' counsel will not defeat jurisdiction.

## CONCLUSION

For the reasons set forth above, Plaintiffs motion for remand should be denied. Timothy Allen and Eton Education, Inc. are sham defendants. The amount in controversy exceeds $75,000 per individual Plaintiff. The Court has diversity jurisdiction and the action was properly removed to this Court.

ACCORDINGLY,

IT IS ORDERED:

1. Plaintiffs' Motion for Remand [Dkt. # 7] is DENIED.

W.D.Wash.,2006.
Ballard v. Corinthian Colleges, Inc.
Slip Copy, 2006 WL 1806190 (W.D.Wash.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1860568 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion Remand (May 25, 2006) Original Image of this Document (PDF)
• 2006 WL 1860564 (Trial Motion, Memorandum and Affidavit) Corinthian Colleges, Inc.'s Motion to Compel Arbitration of Debra Doyle (May 11, 2006) Original Image of this Document (PDF)
• 3:06cv05256 (Docket) (May 9, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 2**

Westlaw.

Slip Copy

Page 1

Slip Copy, 2006 WL 2583745 (D.Nev.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Garcia v. DawahareD.Nev.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Nevada.
Myriam GARCIA, Plaintiff,
v.
Mark DAWAHARE, Farmers New World Life
Insurance Company, Defendants.
**No. 2:06-CV-00695-KJD-LRL.**

Sept. 6, 2006.

Lawrence Mittin, Craig P. Kenny & Associates, Las
Vegas, NV, for Plaintiff.
William D. Naeve, Cotkin, Collins & Ginsburg,
Santa Ana, CA, for Defendants.

### ORDER
KENT J. DAWSON, District Judge.
*1 Presently, the Court has before it Plaintiff's
Motion for Remand (# 4). Defendant Farmers New
World Life Insurance Company ("Farmers") filed a
response in opposition (# 9).

### I. Background.

In June 2003, Plaintiff's husband, Loreto Garcia,
purchased a life insurance policy from Defendant
Farmers. Defendant Dawahare was the insurance
agent who assisted Loreto Garcia in purchasing the
policy. Plaintiff was the named primary beneficiary
of the subject life insurance policy which was in the
amount of $100,000.

On January 31, 2005, Loreto Garcia died. The death
certificate listed the cause of death as
cadiopulmonary arrest due to a consequence of
cardiomyopathy. Plaintiff timely notified
Defendants of her husband's death. On June 16,
2005, and after investigating Plaintiff's claim for
almost five months, Defendant Farmers sent

Plaintiff a letter stating that her husband had made
material misrepresentations on his application about
his past medical history. Given these alleged
material misrepresentations, Defendant Farmers
considered the policy null and void from its
inception date and returned to Plaintiff all of the
premiums that were paid.

Due to the denial of the policy, Plaintiff filed the
instant action in state court on October 10, 2005. In
the complaint, Plaintiff brought a breach of
fiduciary duty claim against Defendant Dawahare.
Against Defendant Farmers, Plaintiff brought
claims for breach of contract, bad faith, and
violation of Nevada's Unfair Trade Practices Act.
Based on events revealed during discovery,
Defendant Farmers re-evaluated and then reversed
its prior decision declaring Loreto Garcia's policy
null and void due to alleged material
misrepresentations. On January 26, 2006,
Defendant Farmers paid Plaintiff the life insurance
proceeds of $100,000 plus interest of $3,500. On
May 31, 2006, Plaintiff dismissed Defendant Mark
Dawahare. With the dismissal of Defendant
Dawahare, the parties were completely diverse.

Accordingly, Defendant Farmers filed its Notice of
Removal on June 7, 2006. Farmers premised the
removal on original jurisdiction based on diversity
of citizenship. On June 13, 2006, Plaintiff filed her
Motion for Remand. Plaintiff does not dispute that
complete diversity is now present. Rather, she
claims that Defendant Farmers has failed to
demonstrate that the amount in controversy is in
excess of $75,000.

### II. Analysis.

The defendant in a removal action has the burden of
establishing that removal is proper. *See Gaus v.
Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992).
Federal courts strictly construe the removal statutes
against removal jurisdiction. *See id.* Doubts as to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2583745 (D.Nev.)
**(Cite as: Slip Copy)**

Page 2

removability are usually resolved against the right of removal and in favor of remanding the case to state court. *See id.*

Removal is only appropriate for cases that might have originally been brought in federal court. *See* 28 U.S.C. § 1441(a); *Caterpiller, Inc. v. Williams,* 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over suits between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Generally, the amount in controversy is determined from the face of the pleadings. *See Crum v. Circus Circus Enters.,* 231 F.3d 1129, 1131 (9th Cir.2000); *Singer v. State Farm Mut. Auto. Ins., Co.,* 116 F.3d 373, 375 (9th Cir.1997) (stating that the district court simply reads the ad damnum clause of the complaint to determine whether the amount in controversy requirement had been met). The sum claimed by the plaintiff controls so long as the claim is made in good faith. *See Singer,* 116 F.3d at 375 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-90 (1938)). Rule 8 of the Nevada Rules of Civil Procedure, however, prohibits the pleading of damages in a specific amount over $10,000. *See* Nev. R. Civ. P. 8(a). When the amount in controversy is not facially apparent from the complaint, the removing defendant must support federal jurisdiction by setting forth facts that support a finding of the requisite amount. *See Singer,* 116 F.3d at 377. The removing defendant must prove the existence of the amount in controversy by a preponderance of evidence. *See Sanchez v. Monumental Life Ins. Co .,* 102 F.2d 398, 403-04 (9th Cir.1996).

**\*2** Defendant Farmers argues that the amount in controversy requirement for a diversity action is met even if the Court were to rely on only the remaining claims.[FN1] Plaintiff's remaining claims are primarily an extra-contractual claim for bad faith and a claim under Nevada's Unfair Trade Practices Act. In relation to these claims, Plaintiff seeks general, special, and punitive damages. Given the face value of the underlying life insurance policy, $100,000, Plaintiff's demand for general, special and punitive damages clearly satisfies the jurisdictional amount requirement. *See Gibson v.*

*Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir.2001) (stating that it is well established that punitive damages are part of the amount in controversy in a civil action); *see also BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 581 (1996) (stating that the Court had previously upheld punitive damage awards that were four and ten times the amount of compensatory damages). Additionally, Plaintiff is seeking her attorney's fees which her counsel has already estimated at over $35,000. *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir.1998) (holding that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy); *Farmers Home Mut. Ins. v. Fiscus,* 725 P.2d 234, 237 (Nev.1986) (upholding an award of attorneys' fees under Nev.Rev.Stat. 18.010(2)(b) against an insurance company that the district court found to have breached the implied covenant of good faith and fair dealing by the manner in which it denied the insured's claim). Defendant Farmers has met its burden that the amount in controversy of just the remaining claims clearly exceeds $75,000.

> FN1. It is not clear (and Plaintiff fails to cite any authority otherwise) that the court is limited to the remaining claims when addressing whether the amount in controversy exceeds $75,000. *See Singer,* 116 F.3d at 375 (quoting *St. Paul Mercury Indem. Co.,* 303 U.S. at 288-90).

Moreover, Plaintiff's counsel has effectively admitted that Plaintiff is seeking more than $75,000 in damages. On page 4 of the Motion to Remand, counsel states that if Plaintiff's claims are proven " any jury will award Plaintiff more than $75,000 given Defendant's bad faith handling of this life insurance claim." Also, Plaintiff's counsel has already made two settlement demands via Offers of Judgment in the amounts of $500,000 and then later $125,000. These offers clearly show that the Plaintiff is seeking more than $75,000.

Finally, Plaintiff has failed to reply to Defendant Farmers' opposition. In its opposition, Defendant Farmers sets forth the arguments and evidence

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2583745 (D.Nev.)
**(Cite as: Slip Copy)**

necessary to met the amount in controversy requirement of 28 U.S.C. § 1332(a). By failing to filing a reply brief, Defendant Farmers' arguments and evidence are essentially uncontested. The Court therefore interprets Plaintiff's failure to file a reply brief as consent that Defendant Farmers has demonstrated by a preponderance of evidence that Plaintiff's claims are seeking more than $75,000.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (# 4) is **DENIED.**

D.Nev.,2006.
Garcia v. Dawahare
Slip Copy, 2006 WL 2583745 (D.Nev.)

Briefs and Other Related Documents (Back to top)

• 2:06cv00695 (Docket) (Jun. 7, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 3**

Westlaw.

Slip Copy

Slip Copy, 2006 WL 2796479 (E.D.Tenn.)
**(Cite as: Slip Copy)**

Page 1

Briefs and Other Related Documents
Hahn v. Auto-Owners Ins. Group E.D.Tenn.,2006.Only the Westlaw citation is currently available.
    United States District Court, E.D. Tennessee.
    Terry S. HAHN, on behalf of, herself and all other similarly situated in the State of Tennessee, Plaintiff,
v.
AUTO-OWNERS INSURANCE GROUP,
Defendant.
**No. 3:04-CV-380.**

Sept. 27, 2006.

Janet Leach Hogan, Hogan & Hogan, Knoxville, TN, for Plaintiff.
Alan H. Abes, Dinsmore & Shohl, Cincinnati, OH, Joseph Tucker, Dinsmore & Shohl, LLP, Louisville, KY, for Defendant.

### *MEMORANDUM AND ORDER*
THOMAS A. VARLAN, District Judge.
**\*1** This civil action is before the Court on plaintiff's Motion to Remand [Doc. 25], in which plaintiff seeks an order remanding this case to Knox County Chancery Court. In support of her motion, plaintiff argues that the amount in controversy requirement of 28 U.S.C. § 1332(a)(1) has not been met in this case. [Doc. 26.] Defendant has filed a response opposing the motion [Doc. 36] and plaintiff has filed a reply brief [Doc. 37.] Additionally, plaintiff and defendant have each filed sur-replies [Docs. 40, 41].

The Court has carefully considered the parties' briefs [Docs. 26, 36, 37, 40, 41] and the related pleadings in light of the relevant law. For the reasons set forth herein, plaintiff's motion [Doc. 25] will be **DENIED.**

### I. Relevant Facts

Plaintiff, Terry Hahn, filed this class action lawsuit on July 14, 2004, in Knox County Chancery Court against defendant, Auto-Owners Insurance Group, bringing a variety of claims arising from defendant's alleged failure to compensate plaintiff and members of the class for water damage to their homes resulting from improperly installed and/or defective synthetic stucco exteriors ("EIFS"). [Doc. 26 at 1-2]. Plaintiff has asserted claims against defendant for breach of express contract, breach of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, breach of the fiduciary relationship between defendant and plaintiff and other class members, and declaratory and injunctive relief. [Doc. 1, Ex. 1 at 2-3.] In her complaint, plaintiff seeks the following damages:
Compensatory damages for breach of "expressed [sic] agreements" between defendant and plaintiff and other class members adequately accounting for " all past and future claims for covered losses applicable to this Class of Plaintiffs;"
"[A]ctual damages in an amount to be proven at trial as a result of the wrongful conducted [sic] alleged" resulting from defendant's violation of the Tennessee Consumer Protection Act;
"[T]reble damages, where appropriate, for all losses and injuries suffered as a result of Defendant's illegal actions, with the amount of damages ... to be determined at trial;"
Compensatory and/or punitive damages for defendant's breach of "fiduciary duties to the Plaintiff and Class members;" and
Costs and reasonable attorney's fees awarded to plaintiff.

[Doc. 1, Ex. 1 at 16-17.]

On August 20, 2004, defendant timely filed a notice of removal with this Court, relying on 28 U.S.C. §§ 1332, 1441, and 1446 and citing diversity of citizenship. [Doc. 1.] On November 9, 2005, plaintiff filed a motion to remand the case to state court. [Doc. 25.] Plaintiff argues that the amount in controversy does not exceed $75,000 as required by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2796479 (E.D.Tenn.)
**(Cite as: Slip Copy)**

28 U.S.C. § 1332, thereby depriving this Court of original subject matter jurisdiction. [Doc. 26.]

## II. Analysis

A federal district court has original diversity jurisdiction if an action involves citizens of different states and the amount in controversy exceeds $75,000 exclusive of costs and interest. 28 U.S .C. § 1332(a)(1). In calculating the amount in controversy, compensatory and punitive damages claimed by a plaintiff are included, *Wood v. Stark Tri-County Bldg. Trades Council,* 473 F.2d 272, 274 (6th Cir.1973), as are any statutory penalties and statutory attorney's fees sought by the plaintiff. *Clark v. National Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975). The Sixth Circuit places "the burden on a defendant seeking to remove an action to federal court to show by a preponderance of the evidence that the amount in controversy requirement has been met ." *Hayes v. Equitable Energy Resources, Co.,* 266 F.3d 560, 572 (6th Cir.2001) (citing *Gafford v. General Elec. Co.,* 997 F.2d 150, 158 (6th Cir.1993). Where, as here, a plaintiff does not assert an exact amount of damages, but instead seeks to recover " 'some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves that the amount in controversy ' more likely than not' exceeds $75,000." *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 2006 WL 2465629 at *2 (6th Cir.2006) (quoting *Gafford,* 997 F.2d at 158).

*2 In determining the amount in controversy, the claims are considered "from the vantage point of the time of removal." *Id.* The Sixth Circuit has interpreted this to mean that "[c]laims present when a suit is removed but subsequently dismissed from the case thus enter into the amount-in-controversy calculation." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 293 (1938)). In making this calculation, a federal court "should consider the plaintiff's motives; should look at prior lawsuits between the parties, if any; should look at awards in similar lawsuits between other parties; should consider any other evidence the defendant

may have; and should exercise its common sense." *Graham v. Champion Intern. Corp.,* 1997 WL 33487768 at *3 (E.D.Tenn.1997); *accord, Taylor v. Alterra Healthcare Corp.,* 2006 WL 2360781 at *2 (E.D.Mich.2006).

While plaintiff admits that she has "sued for additional damages based on the Tennessee Consumer Protection Act and other remedies," she submits in her motion to remand that the cost to repair her house is only $7,950 and implies that this amount will somehow act as a cap to her recovery of damages. [Doc. 26 at 2.] In its reply brief, defendant notes that plaintiff has "expressly declined to limit her compensatory damages to $7,950 because she may repair other areas of her home as indicated in her inspection report" and argues that plaintiff has made it clear that this estimate is only a minimum amount that "does not necessarily come close to fixing her fundamental problem of elevated moisture readings, underlying wood rot and improper application of the EIFS." [Doc. 36 at 7.] Defendant has also cited eight cases in which plaintiffs suing to recover for EIFS-related damage to their homes recovered at least $75,000 in compensatory damages. [Doc. 36 at 8-10.] Defendant has called the Court's attention to these cases and the similarity of the circumstances and supporting facts. Additionally, defendant argues that plaintiff's request for attorneys' fees in connection with her Tennessee Consumer Protection Act claim and for punitive damages place the amount in controversy well over $75,000. [Doc. 36 at 10, 15-16].

Plaintiff's motion to remand also relies heavily upon an attached affidavit, in which plaintiff offers to stipulate that she will not seek more than $75,000 in damages. [Doc. 26, Ex. 5.] However, because the amount in controversy is determined at the time of removal, "a post-removal stipulation reducing the amount in controversy below the jurisdictional limit does not require remand to state court." *Rogers v. Wal-Mart Stores, Inc.,* 230 F .3d 868, 872 (6th Cir.2000).

Perhaps if plaintiff were just seeking recovery for the estimated cost of repairs to her house, the Court would not have jurisdiction. However, plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2796479 (E.D.Tenn.)
**(Cite as: Slip Copy)**

seeks much more than repair costs. Plaintiff has asserted claims for breach of express contract, breach of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, breach of the fiduciary relationship between defendant and plaintiff and other class members, and declaratory and injunctive relief. [Doc. 1, Ex. 1 at 2-3.] Defendant is correct in noting that nowhere in plaintiff's complaint does she limit her damages to any amount. Instead, she requests damages "in an amount to be proven at trial." [Doc. 1, Ex. 5 at 16.] Recovery for all the damages plaintiff has alleged in her complaint could easily meet the jurisdictional requirement of 28 U.S.C. § 1332. Defendant has made an adequate showing that plaintiff's allegations "more likely than not" will meet the jurisdictional requirement. Plaintiff's motion will therefore be denied.

### III. Conclusion

*3 For the reasons stated herein, plaintiff's Motion to Remand [Doc. 25] will be **DENIED.**

IT IS SO ORDERED.

E.D.Tenn.,2006.
Hahn v. Auto-Owners Ins. Group
Slip Copy, 2006 WL 2796479 (E.D.Tenn.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3295437 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion to Remand (Nov. 9, 2005) Original Image of this Document (PDF)
• 3:04cv00380 (Docket) (Aug. 20, 2004)
• 2004 WL 3041316 (Trial Pleading) Answer of Defendant Auto-Owners Insurance Group (Aug. 19, 2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB 4**

Westlaw.

Not Reported in F.3d                                                                                   Page 1

Not Reported in F.3d, 2006 WL 1727749 (C.A.7 (Ill.))
**(Cite as: Not Reported in F.3d)**

**H**
Briefs and Other Related Documents
The Home Depot, Inc. v. RickherC.A.7,2006.Only
the Westlaw citation is currently available.
United States Court of Appeals,Seventh Circuit.
THE HOME DEPOT, INC., Petitioner,
v.
John M. RICKHER, Respondent.
**No. 06-8006.**

May 22, 2006.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division. No.
05 C 2152. John F. Grady, Judge.

George R. Dougherty, Grippo & Elden, Chicago,
IL, Dwight J. Davis, S. Stewart Haskins, II,
Catharine B. Wooten, King & Spalding, Atlanta,
GA, for Petitioner.
John G. Jacobs, Jonah Orlofsky, Chicago, IL, for
Respondent.

Before Hon. RICHARD A. POSNER, Hon. ANN
CLAIRE WILLIAMS, and Hon. DIANE S. SYKES
, Circuit Judges.

**\*1** The Home Depot requests permission to appeal
the district court's order remanding this case to state
court pursuant to the Class Action Fairness Act, 28
U.S.C. section 1453(c)(1). CAFA's amendment to
section 1332(d)(2) states that district courts "shall
have original jurisdiction of any class action in
which the matter in controversy exceeds ...
$5,000,000" and the parties are from different
states. (The parties do not dispute that there is
diversity.) Home Depot alleges that the district
court erred in determining that the amount in
controversy in this case does not exceed $5 million.
For the following reasons, we grant the petition for
permission to appeal and reverse the district court's
order remanding this case to state court. We also
grant the petitioner's request for leave to file a reply

in support of the petition.

Plaintiff John Rickher alleged that Home Depot
violated the Illinois Consumer Fraud Act in
association with its sale of damage waivers to tool
rental customers in Illinois. Rickher sought to
represent a class of persons who rented tools or
equipment from Illinois Home Depot stores within
three years of the date the complaint was filed.
Rickher did not request a specific amount of
damages, but alleged that he and the class were
injured by paying damage waivers that they would
not have paid had the charges not been
automatically included in the rental charges. Home
Depot filed a notice of removal, stating that the
amount in controversy exceeded $5 million. The
court asked for more information, which Home
Depot provided. Rickher did not dispute any of
Home Depot's allegations in support of federal
jurisdiction, and even now does not take a position
on the matter.

To meet the amount-in-controversy requirement, "
the removing litigant must show a reasonable
probability that the stakes exceed the minimum."
*Brill v. Countrywide Home Loans, Inc.* 427 F.3d
446, 449 (7th Cir.2005); *see Smith v. American
Gen. Life & Accident Ins. Co.,* 337 F.3d 888, 892
(7th Cir.2003). "The question is not what damages
the plaintiff will recover, but what amount is 'in
controversy' between the parties." *Brill,* 427 F.3d
at 448. "Once the proponent of jurisdiction has set
out the amount in controversy, only a 'legal
certainty' that the judgment will be less forecloses
federal jurisdiction." *Id.; see St. Paul Mercury
Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58
S.Ct. 586, 82 L.Ed. 845 (1938);
*Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d
955 (7th Cir.1998). The amount in controversy
includes monetary damages, attorney's fees and "the
cost a defendant incurs in complying with injunctive
relief." *Tropp v. Western-Southern Life Ins. Co.,*
381 F.3d 591, 595 (7th Cir.2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.3d

Not Reported in F.3d, 2006 WL 1727749 (C.A.7 (Ill.))
**(Cite as: Not Reported in F.3d)**

Dan McAreavey, Home Depot's director of tool rental operations and merchandising, filed a declaration discussing the amount in controversy raised by Rickher's complaint. McAreavey stated that the amount of Home Depot's revenue from damage waivers in Illinois from March 2002 to the time of his affidavit totaled $3.82 million. That amount is not disputed by the parties. The district court properly rejected McAreavey's argument that the entire rental contract could be found void, and Home Depot does not challenge that finding in its petition. Home Depot also alleged that it would incur costs if required to modify its rental agreement program and that it would incur attorney's fees, but did not provide any information regarding the amount of these costs.

**\*2** Primarily at issue is McAreavey's claim that Home Depot could incur damages of up to $1.2 million per year if Rickher successfully prohibits Home Depot from future sales of damage waivers. The district court found that Home Depot had not shown that the entire $1.2 million a year was in controversy because Home Depot did not show that it would be enjoined from selling *all* damage waivers. Home Depot argues that it does not have to show that it is likely that an injunction would prohibit all damage waiver sales, but only that the amount of damages is "in controversy" between the parties. As we stated in *Brill,* the defendant must show "what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." Here, Rickher claimed that Home Depot's sale of damage waivers is " unconscionable" and that the waivers are "of little if any value." If Rickher were to succeed on his claims, it follows that Home Depot would be enjoined from selling the damage waivers; Home Depot has shown by a reasonable probability that this would cost it $1.2 million per year. Rickher has not disputed this amount. As a result, more than $5 million is "in controversy" between the parties.

Accordingly, we GRANT the petition for permission to appeal and REVERSE the district court's order remanding this case to state court.

C.A.7,2006.

The Home Depot, Inc. v. Rickher
Not Reported in F.3d, 2006 WL 1727749 (C.A.7 (Ill.))

Briefs and Other Related Documents (Back to top)

• 06-8006 (Docket) (Feb. 8, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.